## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Zakirjan,<br>　　　Detainee,<br>　　　Guantánamo Bay Naval Station<br>　　　Guantánamo Bay, Cuba;<br><br>Abu Bakker Qassim,<br><br>　　　as Next Friend of Zakirjan;<br><br>　　　　　　Petitioners/Plaintiffs,<br><br><br><br><br>　　v.<br><br><br>GEORGE W. BUSH,<br>　　　President of the United States<br>　　　The White House<br>　　　1600 Pennsylvania Ave., N.W.<br>　　　Washington, D.C. 20500;<br><br>DONALD RUMSFELD,<br>　　　Secretary, United States<br>　　　Department of Defense<br>　　　1000 Defense Pentagon<br>　　　Washington, D.C. 20301-1000;<br><br>ARMY BRIG. GEN. JAY HOOD,<br>　　　Commander, Joint Task Force - GTMO<br>　　　JTF-GTMO<br>　　　APO AE 09360; and<br><br>ARMY COL. MIKE BUMGARNER,<br>　　　Commander, Joint Detention<br>　　　　Operations Group - JTF-GTMO,<br>　　　JTF-GTMO<br>　　　APO AE 09360,<br><br>　　　　　Respondents/Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PETITION FOR WRIT OF HABEAS CORPUS**

CASE NUMBER  1:05CV02053

JUDGE: Henry H. Kennedy

DECK TYPE: Habeas Corpus/2255

DATE STAMP: 10/19/2005

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Zakirjan ("Petitioner") seeks the Great Writ. A citizen of Russia, he acts on his own behalf and through his Next Friend, Abu Bakker Qassim. Petitioner Zakirjan is a civilian who was wrongly detained by the President of the United States under the purported authority of Executive Order of November 13, 2001,[1] and was, on information and belief, later determined not to be an "enemy combatant" by a Combatant Status Review Tribunal, but who is nevertheless being held virtually incommunicado in military custody at the United States Naval Station at Guantánamo Bay, Cuba ("Guantánamo"), without basis, without charge, without access to counsel and without being afforded any fair process by which he might challenge his detention. Petitioner is being held by color and authority of the Executive, and in violation of the Constitution, laws and treaties of the United States as well as international law. Accordingly, this Court should issue a Writ of Habeas Corpus compelling Respondents either to release Petitioner Zakirjan or to establish in this Court a lawful basis for Petitioner Zakirjan's detention. This Court should also order injunctive and declaratory relief.

Pursuant to the President's authority as Commander-in-Chief, his authority under the laws and usages of war, or under the Executive Order of November 13, 2001, Respondents George W. Bush, President of the United States, Donald H. Rumsfeld, U.S. Secretary of Defense, Army Brigadier General Jay Hood, Commander of Joint Task Force-GTMO, and Army Colonel Mike Bumgarner, Commander, Joint Detention Operations Group, Joint Task Force-GTMO, are either ultimately responsible for, or have been charged with the responsibility of maintaining the custody and control of, the detained Petitioner at Guantánamo.

---

[1] See 66 Fed. Reg. 57,833.

1

## I.
## JURISDICTION

1.       Petitioners bring this action under 28 U.S.C. §§ 2241(c)(1) and (c)(3) and 2242.

Petitioners further invoke this Court's jurisdiction under 28 U.S.C. §§ 1331, 1350, 1651, 2201,

and 2202; 5 U.S.C. § 702; Articles I and II of, and the Fifth, and Sixth Amendments to, the

United States Constitution.  Because they seek declaratory relief, Petitioners also rely on Fed. R.

Civ. P. 57.

2.       This Court is empowered under 28 U.S.C. § 2241 to grant this Writ of Habeas

Corpus, and to entertain the Petition filed by Abu Bakker Qassim, the Next Friend of Petitioner

Zakirjan, under 28 U.S.C. § 2242.  This Court is further empowered to declare the rights and

other legal relations of the parties herein by 28 U.S.C. § 2201, and to effectuate and enforce

declaratory relief by all necessary and proper means by 28 U.S.C. § 2202, as this case involves

an actual controversy within the Court's jurisdiction, and to issue all writs necessary or

appropriate in aid of its jurisdiction by 28 U.S.C. § 1651.

## II.
## PARTIES

3.       Petitioner Zakirjan is a Russian citizen who is presently incarcerated at

Guantánamo and held in Respondents' unlawful custody and control.

4.       Petitioner Abu Bakker Qassim is a friend of Petitioner Zakirjan's, who, like

Petitioner Zakirjan, is currently held against his will in Camp Iguana notwithstanding his

designation by the United States government as a "non-enemy combatant."  He is a Chinese

citizen.  Because Petitioner Zakirjan has been denied access to legal counsel and to the courts of

the United States and, as a result of his incarceration, has been unable to contact any family

members in his home country of Russia or elsewhere, Petitioner Abu Bakker Qassim acts as his Next Friend.

5.        Respondent George W. Bush is the President of the United States and Commander-in-Chief of the United States Military. Petitioner Zakirjan is being detained pursuant to President Bush's authority as Commander-in-Chief, allegedly under the laws and usages of war or, alternatively, the Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism, 66 Fed. Reg. 57,833 (November 13, 2001) ("Executive Order"). President Bush is responsible for Petitioner Zakirjan's unlawful detention and is sued in his official capacity.

6.        Respondent Donald Rumsfeld is the Secretary of the United States Department of Defense. Pursuant to the President's authority as Commander-in-Chief, under the laws and usages of war or, alternatively pursuant to the Executive Order, Respondent Rumsfeld has been charged with the responsibility of maintaining the custody and control of Petitioner Zakirjan. He is sued in his official capacity.

7.        Respondent Brigadier Gen. Jay Hood is the Commander of Joint Task Force-GTMO, the task force running the detention operation at Guantánamo Bay. He has supervisory responsibility for Petitioner Zakirjan and is sued in his official capacity.

8.        Respondent Army Col. Mike Bumgarner is the Commander of the Joint Detention Operations Group and the JTF-GTMO detention camps, including the U.S. facility where Petitioner Zakirjan is presently held. He is the immediate custodian responsible for Petitioner Zakirjan's detention and is sued in his official capacity.

9.        Respondents are directly responsible for any activities undertaken by or under the supervision of any agents or employees acting on their behalf, or of agents or employees of

3

private contractors ("contractor employees") with whom any agency under Respondents' authority or supervision has contracted for the provision of services at Guantánamo. All references to Respondents' actions in this Petition include activities performed by Respondents' agents or employees, other government agents or employees or contractor employees.

### III.
### STATEMENT OF FACTS

10. Upon information and belief, Petitioner Zakirjan is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind under any definition adopted by the government in any civil or military proceeding.

11. Upon information and belief, Petitioner Zakirjan is not, nor has he ever been, an "enemy combatant" who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who were engaged in an armed conflict against the United States there." Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2639 (2004) (internal quotations omitted).

12. Upon information and belief, at the time of his seizure and detention, Petitioner Zakirjan was not a member of the Taliban Government's armed forces or Al Qaeda, and did not cause or attempt to cause any harm to American personnel or property.

13. On information and belief, Petitioner Zakirjan has been found not to be an "enemy combatant" by a Combatant Status Review Tribunal.

14. Despite these facts and this finding, Petitioner Zakirjan remains incarcerated at the United States Naval base at Guantánamo, Cuba, a territory over which the United States exercises exclusive jurisdiction and control.

15. Petitioner Zakirjan seeks to enforce his right to a judicial determination by an appropriate and lawful authority that there is a factual and legal basis for his continued detention,

4

including any determination by Respondents – although none has been made, and on the contrary Respondents have determined the opposite – that he is either an "enemy combatant" as defined by the United States Supreme Court in Hamdi or an "enemy combatant" as that term is defined and used by the Executive in the Combatant Status Review Tribunals.

16.    Petitioner Zakirjan has not been afforded any procedures that would satisfy his rights under the most fundamental common law notions of due process, the United States Constitution, the laws and treaties of the United States, or international law.

17.    Upon information and belief, Petitioner Zakirjan desires to pursue in United States courts every available legal challenge to the lawfulness of his detention.

### The Joint Resolution

18.    In the wake of the September 11, 2001 attacks on the United States, the United States, at the direction of President Bush, began a massive military campaign against the Taliban government, then in power in Afghanistan.  On September 18, 2001, a Joint Resolution of Congress authorized President Bush to use force against the "nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks on September 11, 2001, or [that] harbored such organizations or persons."  Joint Resolution 23, Authorization for Use of Military Force, S.J. Res. 23, 107th Cong., 115 Stat. 224 (2001) ("Joint Resolution").

19.    Upon information and belief, Petitioner Zakirjan is not, and has never been, a member of Al Qaeda or any other terrorist group, and has not committed any violent act against any American person or espoused any violent act against any American person or property.  He had no involvement, direct or indirect, in the terrorist attacks on the United States on September 11, 2001, or any act of international terrorism attributed by the United States to Al Qaeda or any other terrorist group.  He is not properly subject to the detention order issued by President Bush.

5

As he did not participate in the armed conflict at any point in time, he is not properly subject to President Bush's authority as Commander-in-Chief, under the laws and usages of war or under the Joint Resolution.

### The Executive Order

20.    On November 13, 2001, Respondent Bush issued an Executive Order authorizing Respondent Rumsfeld to detain indefinitely anyone Respondent Bush has "reason to believe":

i.    is or was a member of the organization known as al Qaeda;
ii.   has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threaten to cause, or have as their aim to cause, injury to or adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
iii.  has knowingly harbored one or more individuals described in subparagraphs (i) and (ii).

See Exec. Order, 66 Fed. Reg. 57,833, §2 (November 13, 2001). President Bush must make this determination "in writing." Id. The Executive Order was neither authorized nor directed by Congress, and is beyond the scope of the Joint Resolution of September 18, 2001.

21.    The Executive Order purports to vest President Bush with the sole discretion to identify individuals who fall within its purview. It establishes no standards governing the exercise of his discretion. Once a person has been detained, the Executive Order contains no provision for that person to be notified of the charges he may face. The Executive Order authorizes detainees to be confined indefinitely without charges. It contains no provision for a detainee to be notified of his rights under domestic and international law, and provides neither the right to counsel, nor the rights to notice of consular protection or to consular access at the detainee's request. It provides no right to appear before a neutral tribunal to review the legality of a detainee's continued detention and contains no provision for recourse to an Article III court. In fact, the Executive Order expressly bars review by any court. The Executive Order authorizes

6

indefinite and unreviewable detention, based on nothing more than President Bush's written determination that an individual is subject to its terms.

22.    The Executive Order was promulgated in the United States and in this judicial district, the decision to incarcerate Petitioner Zakirjan was made by Respondents in the United States and in this judicial district, the decision to detain Petitioner Zakirjan at Guantánamo was made in the United States and in this judicial district, and the decision to continue detaining Petitioner Zakirjan, was, and is, being made by Respondents in the United States and in this judicial district.

23.    President Bush has never certified or determined in any manner, in writing or otherwise, that Petitioner Zakirjan is subject to the Executive Order.

24.    Petitioner Zakirjan is not properly subject to the Executive Order.

25.    Petitioner Zakirjan has not been, and is not being, detained lawfully either pursuant to the Executive Order, President Bush's authority as Commander-in-Chief and/or under the laws and usages of war. Upon information and belief, Petitioner Zakirjan was not arrested or detained by the United States in the course of an armed conflict. Petitioner Zakirjan is not properly detained under President Bush's authority as Commander-in-Chief or under the laws and usages of war.

### Guantánamo Bay Naval Station

26.    On or about January 11, 2002, the United States military began transporting prisoners captured in Afghanistan to Camp X-Ray at the United States Naval Base in Guantánamo Bay, Cuba. In April 2002, all prisoners were transferred to a Camp Delta, a more permanent prison facility at Guantánamo. Currently, prisoners are housed in Camp Delta and Camp Five, an additional maximum-security interrogation and detention center.

7

27.     On information and belief, between August 18, 2005 and August 29, 2005,

Petitioner Zakirjan was transferred from a maximum-security interrogation and detention center

to another United States military facility in Guantánamo Bay, Cuba called Camp Iguana, where

he remains held today, along with other detainees also determined by Respondents not to be

"enemy combatants." The total amount of time that Petitioner has been held in Guantánamo Bay

in the custody and control of Respondents is unknown to counsel, but known to Respondents.

28.     Prisoners incarcerated at Guantánamo are entitled to test the legality of their

detention in the federal courts. Rasul v. Bush, 124 S.Ct. 2686, 2698 (June 28, 2004).

### The Conditions of Detention at Guantánamo

29.     Since gaining control of Petitioner Zakirjan, the United States military has held

him virtually incommunicado.

30.     Upon information and belief, Petitioner Zakirjan has been or will be forced to

provide involuntary statements to Respondents' agents, employees, and/or contract employees at

Guantánamo, and has been or will be interrogated repeatedly by agents of the United States

Departments of Defense and Justice, and the Central Intelligence Agency, though he has not

been charged with an offense and has not been notified of any pending or contemplated charges.

He has not appeared before a lawful military or civilian tribunal, and has not been provided

access to counsel or the means to contact and secure counsel. He has not been adequately

informed of his rights under the United States Constitution, the regulations of the United States

Military, the Geneva Convention, the International Covenant on Civil and Political Rights, the

American Declaration on the Rights and Duties of Man, the 1954 Convention Relating to the

Status of Refugees or international law. Indeed, Respondents have taken the position that

8

Petitioner Zakirjan should not be informed of these rights. As a result, Petitioner Zakirjan lacks any ability to protect or to vindicate his rights under domestic and international law.

31.    Upon information and belief, Petitioner Zakirjan has been held under conditions that violate his constitutional and international rights to dignity and freedom from torture and from cruel, inhuman and degrading treatment or punishment. See, e.g., Press Release, Human Rights, United Nations Human Rights Experts Express Continued Concern About Situation of Guantánamo Bay Detainees, U.N. Doc. HR/4812 (Feb. 4, 2005);[2] Press Release, International Committee of the Red Cross, The ICRC's Work at Guantánamo Bay, (Nov. 30 2004) (on file with author);[3] Press Release, International Committee of the Red Cross, US Detention Related to the Events of September 11, 2001 and Its Aftermath - the Role of the ICRC, (Jul. 26, 2004) (on file with author);[4] Press Release, Amnesty International, United States of America: Human Dignity Denied: Torture and Accountability in the 'War on Terror', at 22 (Oct. 27, 2004) (on file with author);[5] see also Barry C. Scheck, Abuse of Detainees at Guantánamo Bay, The Nat'l Assoc. of Criminal Def. Lawyers Champion, at 4-5 (Nov. 2004). Indeed, many of these violations – including isolation for up to 30 days, 28-hour interrogations, extreme and prolonged stress positions, sleep deprivation, sensory assaults, removal of clothing, hooding, and the use of dogs to create anxiety and terror – were actually interrogation techniques approved for use at Guantánamo by the most senior Department of Defense lawyer. See Action Memo from William J. Haynes II, General Counsel, DOD, on Counter-Resistance Techniques to the

---

[2]  Available at http://www.un.org/News/Press/docs/2005/hr4812.doc.htm.

[3]  Available at http://www.icrc.org/Web/Eng/siteeng0.nsf/iwpList581/C5667B446C9A4DF
7C1256F5C00403967.

[4]  Available at http://www.icrc.org/Web/Eng/siteeng0.nsf/html/6CPK3V?OpenDocument.

[5]  Available at http://web.amnesty.org/library/Index/ENGAMR511452004.

Secretary of Defense (Nov. 27, 2002);[6] Pentagon Working Group Report on Detainee

Interrogations in the Global War on Terrorism: Assessment of Legal, Historical, Policy and

Operational Considerations, at 62-65 (Apr. 4, 2003).[7]

32.    In a confidential report to the United States government, the International

Committee of the Red Cross ("ICRC") charged the United States military with intentional use

during interrogations of psychological and physical coercion on prisoners at Guantánamo that is

"tantamount to torture." See Neil A. Lewis, Red Cross Finds Detainee Abuse in Guantánamo,

N.Y. Times, Nov. 30, 2004, at A1. The report includes claims that doctors and other medical

workers at Guantánamo participated in planning for interrogations. See id.; see also M. Gregg

Bloche and Jonathan H. Marks, When Doctors Go to War, New England Journal of Medicine,

Jan. 6, 2005, 352.1, at 3-4. Since details of the ICRC's report emerged, new revelations of abuse

and torture at Guantánamo have appeared, including FBI memos detailing torture and "highly

aggressive interrogation techniques" including 24-plus hour interrogations involving temperature

extremes, dogs, prolonged isolation, and loud music. See Press Release, Amnesty International,

Guantánamo: An Icon of Lawlessness, at 3-5 (Jan. 6, 2005) (on file with author);[8] see also Neil

A. Lewis, Fresh Details Emerge on Harsh Methods at Guantánamo, N.Y. Times, Jan. 1, 2005, at

A11; Carol D. Leonnig, Further Detainee Abuse Alleged; Guantánamo Prison Cited in FBI

Memos, Wash. Post, Dec. 26, 2004, at A1; Neil A. Lewis and David Johnston, New F.B.I.

---

[6] Available at http://www.defenselink.mil/news/Jun2004/d20040622doc5.pdf.

[7] Additional details of the cruel and degrading conditions suffered by detainees at Guantánamo are set out at length in a statement by numerous released British detainees. See Shafiq Rasul, Asif Iqbal & Rhuhel Ahmed, Composite Statement: Detention in Afghanistan and Guantánamo Bay, 300, *(2004)* http://www.ccr-ny.org/v2/reports/docs/Gitmo-compositestatementFINAL23july04.pdf. The Department of Defense also informed the Associated Press that a number of interrogators at Guantánamo have been demoted or reprimanded after investigations into accusations of abuse at the facility. See Report Details Guantánamo Abuses, Associated Press, Nov. 4, 2004.

[8] Available at http://web.amnesty.org/library/index/ENGAMR510022005

Memos Describe Abuses of Iraq Inmates, N.Y. Times, Dec. 21, 2004, at A1; Dan Eggen and R.

Jeffrey Smith, FBI Agents Allege Abuse of Detainees at Guantánamo Bay, Wash. Post, Dec. 21,

2004, at A1; Neil A. Lewis, F.B.I. Memos Criticized Practices at Guantánamo, N.Y. Times, Dec.

7, 2004, at A19. Even more recently, the Associated Press has reported allegations that female

Guantánamo interrogators have used sexual taunting, including smearing fake menstrual blood

on a detainee's face, to try to break Muslim detainees. See Paisley Dodds, Associated Press,

Gitmo Soldier Details Sexual Tactics, Jan. 27, 2005.[9]

33.     The unlawful and unconstitutional interrogation techniques used by Respondents

at Guantánamo include not only physical and psychological abuse but also other impermissible

conduct contrary to due process requirements, including, upon information and belief, having

agents of the Government present themselves as lawyers for the detainees during meetings with

the detainees, for the purpose of extracting information from the detainees. See Sam Hannel,

Lawyers Describe Guantánamo Detainees, Seattle Post-Intelligencer, Jan. 19, 2005.

34.     Respondents, acting individually or through their agents, have stated that

whatever limitations apply on coercive interrogation techniques used by United States military

officials under the auspices of the Department of Defense do not apply to interrogations

conducted by agents of the CIA or other entities under President Bush. See Eric Lichtblau,

Gonzales Says '02 Policy on Detainees Doesn't Bind CIA, N.Y. Times, Jan. 19, 2005, at A17;

Dan Eggen and Charles Babington, Torture by U.S. Personnel Illegal, Gonzales Tells Senate,

Wash. Post, Jan. 18, 2005, at A4.

35.     In published statements, President Bush and Secretary Rumsfeld, and

predecessors of Hood and Bumgarner, have proclaimed that the United States may hold the

---

[9] Available at http://www.cis.ksu.edu/~schmidt/misc/27janAP.html.

detainees under their current conditions indefinitely. See, e.g., Roland Watson, British Team to Question Cuba Detainees - War on Terror, The Times (London), Jan. 18, 2002 ("Donald Rumsfeld, the U.S. Defense Secretary, suggested last night that Al-Qaeda prisoners could be held indefinitely at the base. He said that the detention of some would be open-ended as the United States tried to build a case against them."); Lynne Sladky, Treatment of Detainees at Guantánamo Scrutinized, Associated Press, Jan. 22, 2002 ("Marine Brig. Gen. Mike Lehnert, who is in charge of the detention mission, defended the temporary cells where detainees are being held . . . . 'We have to look at Camp X-ray as a work in progress . . .' Lehnert told CNN. Lehnert said plans are to build a more permanent prison 'exactly in accordance with federal prison standards . . . .");[10] John Mintz, Extended Detention in Cuba Mulled, Wash. Post, Feb. 13, 2002 at A16 ("As the Bush Administration nears completion of new rules for conducting military trials of foreign detainees, U.S. officials say they envision the naval base at Guantánamo Bay, Cuba, as a site for the tribunals and as a terrorist penal colony for many years to come.").

36.    According to the Department of Defense, even detainees who are adjudged innocent of all charges by a military commission may nevertheless be kept in detention at Guantánamo indefinitely. See Department of Defense Press Background Briefing on Military Commissions (2003).[11]

37.    Counsel for Respondents have also consistently maintained that the United States has reserved the right to hold the detained Petitioners under their current conditions indefinitely. See In re Guantánamo Detainee Cases, Nos. 02-CV-0299 (CKK), et al., (D.D.C.), Tr. of Dec. 1,

---

[10]   Available at http://www2.ljworld.com/news/2002/jan/22/treatment_of_detainees/.

[11]   Available at http://www.defenselink.mil/transcripts/2003/tr20030703-0323.html (last visited Feb. 14, 2005).

2004 Or. Argument on Mot. to Dismiss at 22-24 (statements of Principle Deputy Associate Att'y

Gen. Brian Boyle); see also Dana Priest, Long-Term Plan Sought for Terror Suspects, Wash.

Post, Jan. 2, 2005, at A1. Moreover, the Government has recently acknowledged plans to begin

constructing a new, more permanent facility at Guantánamo. Christopher Cooper, In

Guantánamo, Prisoners Languish in a Sea of Red Tape, Wall Street Journal, Jan. 26, 2005, at A1;

Paisley Dodds, Associated Press, Guantánamo Takes on the Look of Permanency, Jan. 9, 2005.[12]

### Rendition

38.    During interrogations, detainees have also been threatened with rendition or

transfer to countries that routinely practice torture. Upon information and belief, the United

States has secretly transferred detainees to such countries without complying with the applicable

legal requirements for extradition. This practice, known as "rendition" or "extraordinary

rendition," is used to facilitate interrogation by subjecting detainees to torture. See Jane Mayer,

Outsourcing Torture: The Secret History of American's "Extraordinary Rendition" Program, The

New Yorker, Feb. 14, 2005, at 106.

39.    The United States government's practice of rendition has been well documented

by various major American and international news organizations, including, inter alia, the

Washington Post, The Los Angeles Times, and the British Broadcasting Corporation (the

"BBC"). According to news accounts,

>           Since September 11, the U.S. government has secretly transported dozens
> of people suspected of links to terrorists to countries other than the United
> States bypassing extradition procedures and legal formalities, according to
> Western diplomats and intelligence source. The suspects have been taken
> to countries, . . . whose intelligence services have close ties to the CIA and
> where they can be subjected to interrogation tactics -- including torture
> and threats to families -- that are illegal in the United States, the sources

---

[12]  Available at http://news.orb6.com/stories/ap/20050109/guantanamo_three_years.php.

> said. In some cases, U.S. intelligence agents remain closely involved in
> the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, U.S. Behind Secret Transfer of Terror Suspects, Wash. Post,

Mar. 11, 2002, at A1; see also Dana Priest, Long Term Plan Sought for Terror Suspects, Wash.

Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between

the United States and other countries, such as Egypt . . ., that agree to have local security services

hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison

officers.").

    40.    Upon information and belief, Petitioner Zakirjan, a Russian citizen, is at risk of

being rendered, expelled or returned without lawful procedures to a country that engages in

torture during interrogations and incarceration. See Press Release, Amnesty International,

Released Guantánamo Detainees "Disappear" in Russia, (Aug. 30, 2005) (reporting that Russian

inmates transferred from Guantánamo Bay to the Russian Federation faced "human rights

violations on their return, including torture, ill-treatment and incarceration in conditions

amounting to cruel, inhuman and degrading treatment);[13] Press Release, Amnesty International,

Uighurs Held in Guantánamo Bay, (Dec. 4, 2003), (on file with author) ("Other detainees in

Guantánamo may also be facing return to possible human rights violations if returned to their

country. Such countries include Yemen, Saudi Arabia, and Russia.").[14]

---

[13] Available at http://web.amnesty.org/pages/rus-300805-action-eng.

[14] Available at http://web.amnesty.org/library/print/ENGAMR511472003.

## IV.
## CAUSES OF ACTION

<u>FIRST CLAIM FOR RELIEF</u>
<u>(COMMON LAW DUE PROCESS AND DUE PROCESS CLAUSE OF THE FIFTH
AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -
UNLAWFUL DEPRIVATION OF LIBERTY)</u>

41.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully

herein.

42.    By the actions described above, Respondents, acting under color of law, have

violated and continue to violate common law principles of due process as well the Due Process

Clause of the Fifth Amendment to the Constitution of the United States.  President Bush has

ordered the prolonged, indefinite, and arbitrary detention of individuals, without due process of

law, and the remaining Respondents have implemented those orders.  Respondents' actions deny

Petitioner Zakirjan the process accorded to persons seized and detained by the United States

military in times of armed conflict as established by, <u>inter alia</u>, the Uniform Code of Military

Justice, Army Regulation 190-8, Articles 3 and 5 of the Third and Fourth Geneva Conventions,

and international law as reflected, expressed, and defined in multilateral treaties and other

international instruments, international and domestic judicial decisions, and other authorities.

43.    To the extent that Petitioner Zakirjan's detention purports to be authorized by the

Executive Order, that Order violates the Fifth Amendment on its face and as applied to

Petitioner.

44.    Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive

relief, as well as any other relief the court may deem appropriate.

15

## SECOND CLAIM FOR RELIEF
## (DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES - UNLAWFUL CONDITIONS OF CONFINEMENT)

45.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

46.    By the actions described above, Respondents, acting under color of law, have violated and continue to violate the right of Petitioner Zakirjan to be free from unlawful conditions of confinement, in violation of the Due Process Clause of the Fifth Amendment to the Constitution of the United States.

47.    Accordingly, Petitioner Zakirjan is entitled to declaratory and injunctive relief as well as any other relief the court may deem appropriate.

## THIRD CLAIM FOR RELIEF
## (GENEVA CONVENTIONS - ARBITRARY DENIAL OF DUE PROCESS)

48.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

49.    By the actions described above, Respondents, acting under color of law, have denied and continue to deny Petitioner Zakirjan the process accorded to persons seized and detained by the United States military in times of armed conflict as established by specific provisions of the Third and Fourth Geneva Conventions.

50.    Violations of the Geneva Conventions are direct treaty violations, are violations of international law, and constitute an enforceable claim under 28 U.S.C. § 2241 (c)(3).

51.    Respondents are liable for this conduct described above, insofar as they set the conditions, directly and/or indirectly facilitated, ordered, acquiesced, confirmed, ratified, and/or conspired to violate the Geneva Conventions.

16

52.      Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FOURTH CLAIM FOR RELIEF
### (INTERNATIONAL HUMANITARIAN AND HUMAN RIGHTS LAW - ARBITRARY DENIAL OF DUE PROCESS)

53.      Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

54.      By the actions described above, Respondents have denied and continue to deny Petitioner Zakirjan the due process accorded to persons seized and detained by the United States military in times of armed conflict as establish by international humanitarian and human rights law as reflected, expressed, and defined in multilateral treaties and other international instruments and domestic judicial decisions, and other authorities.

55.      Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

### FIFTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - TORTURE)

56.      Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

57.      By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about acts that deliberately and intentionally inflicted severe physical and psychological abuse and agony upon Petitioner Zakirjan in order to obtain coerced information or confessions from him, punish or intimidate Petitioner Zakirjan or for other purposes. Among other abuses, Petitioner Zakirjan has been held in conditions of isolation; placed in constant vulnerability to repeated interrogation and severe beatings; kept in cages with

17

no privacy; shackled with heavy chains and irons; placed in solitary confinement for minor rule infractions for prolonged periods of time; interrogated while shackled and chained in painful positions; exposed to extremes of temperature; subjected to violent behavior or the threat of violence; threatened with rendition to countries that practice torture; sexually humiliated; denied access to counsel and family; deprived of adequate medical care; and subjected to repeated psychological abuse.

58.    The acts described herein constitute torture in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated international law prohibiting torture as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

59.    Respondents are liable for said conduct because they directed, ordered, confirmed, ratified, and/or conspired together and with others to commit the acts of torture against Petitioner Zakirjan.

60.    Petitioner Zakirjan was forced to suffer severe physical and psychological abuse and agony and is entitled to habeas, declaratory, and injunctive relief, and other relief to be determined at trial.

SIXTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE - WAR CRIMES)

61.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

62.    By the actions described above, Respondents' acts directing, ordering, confirming, ratifying, and/or conspiring to bring about the torture and other inhumane treatment of Petitioner Zakirjan constitute war crimes and/or crimes against humanity in violation of the

law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated, among others, the Fourth Geneva Convention, Common Article III of the Geneva Conventions and Additional Protocols I and II of the Geneva Conventions as well as international law prohibiting war crimes as reflected, expressed, and defined in other multilateral treaties and international instruments, international and domestic judicial decision, and other authorities.

63.    As a result of Respondents' unlawful conduct, Petitioner Zakirjan has been and is forced to suffer severe physical and psychological abuse and agony, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

## SEVENTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE – CRUEL, INHUMAN OR DEGRADING TREATMENT)

64.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

65.    The acts described herein had the intent and the effect of grossly humiliating and debasing Petitioner Zakirjan, forcing him to act against his will and conscience, inciting fear and anguish, and breaking his physical or moral resistance.

66.    The acts described herein constitute cruel, inhuman or degrading treatment in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated international law prohibiting cruel, inhuman or degrading treatment as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

19

67.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to cause the cruel, inhuman or degrading treatment of Petitioner Zakirjan.

68.    Petitioner Zakirjan was forced to suffer severe physical and psychological abuse and agony and is entitled to declaratory and injunctive relief, as well as other relief to be determined at trial.

## EIGHTH CLAIM FOR RELIEF
### (ALIEN TORT STATUTE - ARBITRARY ARREST AND PROLONGED ARBITRARY DETENTION)

69.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

70.    The acts described herein constitute arbitrary arrest and detention of Petitioner Zakirjan in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated international law prohibiting arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

71.    Respondents are liable for said conduct in that they directed, ordered, confirmed, ratified, and/or conspired together and with others to bring about the arbitrary arrest and prolonged arbitrary detention of Petitioner Zakirjan in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated international law prohibiting arbitrary arrest and prolonged arbitrary detention as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

20

72.    As a result of Respondents' unlawful conduct, Petitioner Zakirjan has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to habeas, declaratory, and injunctive relief, and such other relief as the court may deem appropriate.

NINTH CLAIM FOR RELIEF
(ALIEN TORT STATUTE- ENFORCED DISAPPEARANCE)

73.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

74.    By the actions described above, the Respondents directed, ordered, confirmed, ratified, and/or conspired to bring about the enforced disappearance of Petitioner Zakirjan in violation of the law of nations under the Alien Tort Statute, 28 U.S.C. § 1350, in that the acts violated international law prohibiting enforced disappearances as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities.

75.    As a result of Respondents' unlawful conduct, Petitioner Zakirjan has been and is deprived of his freedom, separated from his family, and forced to suffer severe physical and mental abuse, and is therefore entitled to declaratory and injunctive relief and such other relief as the court may deem appropriate.

TENTH CLAIM FOR RELIEF
(ARTICLE II OF THE UNITED STATES CONSTITUTION-
UNLAWFUL DETENTION)

76.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

21

77.     Petitioner Zakirjan is not, nor has he ever been, an enemy alien, lawful or unlawful belligerent, or combatant of any kind. The Executive lacks the authority to order or direct military officials to detain civilians who are seized far from the theater of war or occupied territory or who were not "carrying a weapon against American troops on a foreign battlefield." Hamdi v. Rumsfeld, 124 S.Ct. 2633, 2642 n.1 (June 28, 2004).

78.     By the actions described above, President Bush has exceeded and continues to exceed the Executive's authority under Article II of the United States Constitution by authorizing, ordering and directing that military officials seize Petitioner Zakirjan and transfer him to military detention, and by authorizing and ordering their continued military detention at Guantánamo. All of the Respondents acted and continue to act without lawful authority by directing, ordering, and/or supervising the seizure and military detention of Petitioner Zakirjan.

79.     The military seizure and detention of Petitioner Zakirjan by the Respondents is ultra vires and illegal because it violates Article II of the United States Constitution. To the extent that the Executive asserts that Petitioner's detention is authorized by the Executive Order, that Order exceeds the Executive's authority under Article II and is ultra vires and void on its face and as applied to Petitioner.

80.     To the extent that Respondents assert that their authority to detain Petitioner Zakirjan derives from a source other than the Executive Order, including without limitation the Executive's inherent authority to conduct foreign affairs or to serve as Commander-in-Chief of the United States Armed Forces, whether from Article II of the Constitution or otherwise, Respondents lack that authority as a matter of fact and law.

81.     Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

22

## ELEVENTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS UNLAWFUL DETENTION)

82.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

83.     Army Regulation 190-8 prohibits the detention of civilians who were seized away from the field of battle or outside occupied territory or who were not engaged in combat against the United States. See, e.g., Army Regulation 190-8 at 1-6(g) ("Persons who have been determined by a competent tribunal not to be entitled to prisoner of war status may not be executed, imprisoned, or otherwise penalized without further proceedings to determine what acts they have committed and what penalty should be imposed.").

84.     By arbitrarily and capriciously detaining Petitioner Zakirjan in military custody in the manner described above, Respondents have acted and continue to act ultra vires and unlawfully in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

85.     Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

## TWELFTH CLAIM FOR RELIEF
## (VIOLATION OF THE APA - ARBITRARY AND CAPRICIOUS DENIAL OF DUE PROCESS)

86.     Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

87.     By the actions described above, Respondents, acting under color of law, have arbitrarily and capriciously denied and continue to deny Petitioner Zakirjan the process accorded to persons seized and detained by the United States military in times of armed conflict as

established by Army Regulation 190-8 in violation of the Administrative Procedures Act, 5 U.S.C. § 706(2).

88.    Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief as well as any other relief the court may deem appropriate.

THIRTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE APA – TORTURE AND CRUEL, INHUMAN OR DEGRADING TREATMENT)

89.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

90.    By the actions described above, the Respondents have acted and continue to act arbitrarily and capriciously by directing, ordering, confirming, ratifying, and/or conspiring to unlawfully subject Petitioner Zakirjan to torture and/or cruel, inhuman or degrading treatment in violation of Army Regulation 190-8 and the Administrative Procedures Act, 5 U.S.C. § 706(2).

91.    Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FOURTEENTH CLAIM FOR RELIEF
(VIOLATION OF THE RIGHT TO COUNSEL AND TO ACCESS TO THE COURTS)

92.    Petitioner incorporates by reference all preceding paragraphs as if set forth fully herein.

93.    Respondents, purportedly acting from a concern for national security, consistently have contrived to intrude upon Petitioner Zakirjan's right to consult with counsel by conditioning counsel's access to Petitioner on unreasonable terms, including classification/declassification procedures, all in violation of Petitioner Zakirjan's attorney-client privilege, his work product privilege, and the Fifth and Sixth Amendments to the United States Constitution.

24

94.    Accordingly, Petitioner Zakirjan is entitled to habeas, declaratory, and injunctive relief, as well as any other relief the court may deem appropriate.

FIFTEENTH CLAIM FOR RELIEF
(DUE PROCESS CLAUSE - RENDITION)

95.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

96.    Upon information and belief, Petitioner Zakirjan is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution.

97.    Accordingly, Petitioner Zakirjan is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

SIXTEENTH CLAIM FOR RELIEF
(CONVENTION AGAINST TORTURE AND
CONVENTION RELATING TO THE STATUS OF REFUGEES - RENDITION)

98.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

99.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture. The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a direct violation of Petitioner's rights under the Covenant Against Torture and the Convention Relating to the Status of Refugees, 19 U.S.T. 6259 (Jan. 31, 1967), 189 U.N.T.S. 150 entered into force Apr. 22, 1954.

25

100.    Accordingly, Petitioner Zakirjan is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

## SEVENTEENTH CLAIM FOR RELIEF
## (ALIEN TORT STATUTE- RENDITION)

101.    Petitioners incorporate by reference all preceding paragraphs as if set forth fully herein.

102.    Upon information and belief, Petitioner is at risk of being rendered, expelled or returned without lawful procedures to a country that engages in torture.  The transfer of the Petitioner to a country that creates a foreseeable and direct risk that he will be subjected to torture constitutes a violation of Petitioner's rights under international law, which may be vindicated under the Alien Tort Statute.

103.    Accordingly, Petitioner Zakirjan is entitled to declaratory and injunctive relief, as well as any other relief the court may deem appropriate.

26

## V.
## PRAYER FOR RELIEF

WHEREFORE, Petitioners pray for relief as follows:

1.      Designate Abu Bakker Qassim as Next Friend of Petitioner Zakirjan;

2.      Grant the Writ of Habeas Corpus and order Respondent to release Petitioner Zakirjan from his current unlawful detention;

3.      Order that Petitioner Zakirjan be brought before the Court or before a Magistrate Judge assigned by the Court to conduct proceedings under the supervision of the Court to vindicate his rights;

4.      Order that Petitioner Zakirjan cannot be transferred to any other country without the specific written agreement of Petitioner and Petitioner's counsel while this action is pending;

5.      Order that Petitioner Zakirjan cannot be delivered, returned, or rendered to a country where there is a foreseeable and imminent risk that Petition will be subject to torture;

6.      Order Respondents to allow counsel to meet and confer with Petitioner Zakirjan, in private and unmonitored attorney-client conversations;

7.      Order Respondents to cease all interrogations of Petitioner Zakirjan, direct or indirect, while this litigation is pending;

8.      Order Respondents to cease all acts of torture and cruel, inhuman and degrading treatment of Petitioner Zakirjan;

9.      Order and declare the Executive Order of November 13, 2001 is _ultra vires_ and unlawful in violation of Article II of the United States Constitution, the Fifth Amendment to the United States Constitution, the Uniform Code of Military Justice, the Administrative Procedures Act, 5 U.S.C. § 702, the treaties of the United States and international law;

27

10.     Order and declare that the prolonged, indefinite, and restrictive detention of

Petitioner Zakirjan without due process is arbitrary and unlawful and a deprivation of liberty

without due process in violation of common law principles of due process, the Due Process

Clause of the Fifth Amendment to the United States Constitution, the regulations of the United

States military, the treaties of the United States, and international humanitarian law; and

11.     Grant such other relief as the Court may deem necessary and appropriate to

protect Petitioner Zakirjan's rights under the common law, the United States Constitution,

federal statutory law, and international law.

Dated:        October 17, 2005                Respectfully submitted,

                                              Counsel for Petitioners:

                                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                              By: _____
                                                   Jonathan I. Blackman (NY No. JB 3846)

                                              One Liberty Plaza
                                              New York, New York 10006
                                              (212) 225-2000

Of Counsel:
   Christopher P. Moore (NY No. CM 4936)
   Patrick A. Sheldon (NY No. PS 1598)

                                              By: _____
                                                   Barbara Olshansky (NY0057)
                                                   Tina Monshipour Foster (NY No. TF 5556)
                                                   Gitanjali S. Gutierrez (NY No. GG 1234)
                                              CENTER FOR CONSTITUTIONAL RIGHTS
                                              666 Broadway, 7th Floor
                                              New York, New York 10012
                                              Tel.:  (212) 614-6437
                                              Fax.  (212) 614-6499

## CERTIFICATION OF REPRESENTATION WITHOUT COMPENSATION

Counsel for Petitioner Zakirjan certify, pursuant to L. Cv. R. 83.2(g), that they are

representing Petitioner without compensation.

Dated:      October 17, 2005              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                          By:_____
                                              Jonathan I. Blackman (NY No. JB 3846)

                                          One Liberty Plaza
                                          New York, New York 10006
                                          Tel.; (212) 225-2000
                                          Fax.: (212) 225-3999

Of Counsel:
    Christopher P. Moore (NY No. 4936)
    Patrick A. Sheldon (NY No. 1598)

                                          By:  _____
                                              Barbara Olshansky (NY0057)
                                              Tina Monshipour Foster (NY No. TF 5556)
                                              Gitanjali S. Gutierrez (NY No GG 1234)
                                          CENTER FOR CONSTITUTIONAL RIGHTS
                                          666 Broadway, 7th Floor
                                          New York, New York 10012
                                          Tel.: (212) 614-6437
                                          Fax: (212) 614-6499

29