UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

------------------------------------------------------------------------X
:
ZAKIRJAN, :
    Detainee, :
    Guantánamo Bay Naval Station, :
    Guantánamo Bay, Cuba; : Case No. 05 Cv 2053 (HHK)
:
                Petitioner/Plaintiff, :
             - against - :
:
GEORGE W. BUSH, *et al*., :
:
                Respondents/Defendants. :
:
------------------------------------------------------------------------X

**MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTÁNAMO**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioner Zakirjan (hereinafter "Petitioner"), acting on his own behalf and through his Next Friend, Abu Bakker Qassim, respectfully moves for an order requiring Respondents to provide counsel for Petitioner and the Court with 30-days' advance notice of any intended removal of Petitioner from Guantánamo Bay Naval Base in Cuba ("Guantánamo"). On information and belief, Respondents have contemplated or are contemplating removal of Petitioner from Guantánamo to foreign territories for torture or indefinite imprisonment without due process of law. Petitioner requests advance notice of any intended removal of him from Guantánamo in order to enable his counsel to contest any such removal and preserve the jurisdiction of the Court in this matter.

1

**BACKGROUND**

Petitioner is a citizen of Russia who is being detained at the Guantánamo Bay Naval Base in Cuba. See October 14, 2005 Declaration of Sabin Willett in Support of Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ¶ 6 ("Willett Decl."). The total amount of time that Petitioner has been held in Guantánamo Bay in the custody and control of Respondents is unknown to counsel, but known to Respondents. See Petition for Writ of Habeas Corpus ¶ 27, 05-CV-2053 (HHK), dated October 17, 2005 (the "Petition").

On June 28, 2004, the Supreme Court determined that "the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of [the detainees at Guantánamo Bay] who claim to be wholly innocent of wrongdoing." Rasul v. Bush, 124 S. Ct. 2686, 2699 (June 28, 2004). Shortly thereafter, the Department of Defense issued an order creating the Combatant Status Review Tribunal ("CSRT") to evaluate the status of each detainee at Guantánamo. See In re Guantánamo Detainee Cases, 355 F. Supp. 2d 443, 450 (D.D.C. 2005).

The Department of Defense has publicly stated that the CSRT completed the process of reviewing the "enemy combatant" status of all detainees held at Guantánamo in March 2005. See Defense Department Special Briefing on Combatant Status Review Tribunals, Presenter: Secretary of The Navy Gordon England (March 29, 2005) ("[t]he Combatant Status Review Tribunals for all of the DOD detainees at Guantánamo are completed");[1] Defense Department Special Briefing on Administrative Review Boards for Detainees at Guantánamo

---

[1] Available at http://www.defenselink.mil/transcripts/2005/tr20050329-2382.html.

Bay, Cuba, Presenter: Director, Office for the Administrative Review of the Detention of Enemy Combatants, Rear Adm. James McGarrah, (July 8, 2005) ("we finished the Combatant Status Review Tribunals back in March of this year").[2]

Upon information and belief, the government has determined that Petitioner is <u>not</u> an "enemy combatant."  See Willett Decl. ¶¶ 4-5; Petition ¶ 13.  Accordingly, in or about August 2005, Petitioner Zakirjan was transferred from a maximum-security interrogation and detention center in Guantánamo to another United States military facility in Guantánamo called Camp Iguana, where he remains held today, along with other detainees also determined by Respondents not to be "enemy combatants."  See Willett Decl. ¶¶ 4-6; Petition ¶ 27.  Upon information and belief, the government holds at Camp Iguana only those prisoners whom it concedes are not enemy combatants.  See Willett Decl. ¶ 5.  Despite the government's apparent conclusion that Petitioner is not an "enemy combatant," and therefore poses no threat, he remains detained in Guantánamo against his will.

On October 19, 2005, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §§ 2241 and 2242, charging that Petitioner is being detained in violation of the Constitution, laws and treaties of the United States, and in violation of international law.  See generally Petition.

Petitioner has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law.  Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal

---

[2] Available at http://www.defenselink.mil/transcripts/2005/tr20050708-3322.html.

process.  This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," has reportedly been used to facilitate interrogation by subjecting detainees to torture.  <u>See</u> Jane Mayer, <u>Outsourcing Torture: The Secret History of America's "Extraordinary Rendition" Program</u>, The New Yorker, Feb. 14, 2005, at 106 (the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'").

The United States government's practice of rendition has been well documented by various major American and international news organizations, including, <u>inter alia</u>, the Washington Post, The Los Angeles Times, and the British Broadcasting Corporation (the "BBC").  According to news accounts:

> Since September 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence source.  The suspects have been taken to countries, . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said.  In some cases, U.S. intelligence agents remain closely involved in the interrogations, the sources said.

Rajiv Chanrasekaran & Peter Finn, <u>U.S. Behind Secret Transfer of Terror Suspects</u>, Wash. Post, Mar. 11, 2002, at A1; <u>see also</u> Dana Priest, <u>Long Term Plan Sought for Terror Suspects</u>, Wash. Post, Jan. 2, 2005, at A1 ("The transfers, called 'renditions,' depend on arrangements between the United States and other countries, such as Egypt . . . , that agree to have local security services hold certain terror suspects in their facilities for interrogation by CIA and foreign liaison officers.").

4

The countries to which detainees may be brought are known to practice torture. See, e.g., Megan K. Stack & Bob Drogin, Detainee Says U.S. Handed Him Over For Torture, L.A. Times, Jan. 13, [2005], at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners."). Upon information and belief, a number of detainees have been transferred to countries – including Pakistan and Kuwait – where they have been imprisoned and denied access to the courts. See also Dana Priest, Long-Term Plan Sought For Terror Suspects, Wash. Post, Jan. 2, 2005, at A1 (Reporting that the United States government has contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries").

For example, Guantánamo detainee Mamdouh Habib was reportedly rendered to Egypt by the United States before being moved to Cuba. During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod." And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, Outsourcing Torture. The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of

torture.  See Dep't of State, Country Reports On Human Rights Practices, Egypt 2004, dated February 28, 2005 (finding "numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent.").[3]

Here, Petitioner, who is a Russian citizen, may be faced with the additional risk of mistreatment or incarceration upon return to his home country.  See Press Release, Amnesty International, Released Guantánamo Detainees "Disappear" in Russia, (Aug. 30, 2005) (reporting that Russian inmates transferred from Guantánamo Bay to the Russian Federation may face incarceration and human rights violations on their return); Press Release, Amnesty International, Uighurs Held in Guantánamo Bay, (Dec. 4, 2003), (on file with author) ("Other detainees in Guantánamo may also be facing return to possible human rights violations if returned to their country.  Such countries include Yemen, Saudi Arabia, and Russia."); U.S. State Department, Country Reports on Human Rights Practices, Russia, at 4-5 (Feb. 28, 2005);[4] see also Willett Decl. ¶ 6 (according to Petitioner's Next Friend, "the government's resettlement efforts on behalf of [Petitioner] Zakirjan 'are not going smoothly with his country'").

**ARGUMENT**

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction."  SEC v. Vision Commc'ns., Inc., 74 F.3d 287, 291 (D.C. Cir. 1996); See Envtl. Def. Fund v. EPA, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioner's request meets the most fundamental purpose of preliminary injunctive relief, "to

---

[3] Available at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm

[4] Available at http://www.state.gov/g/drl/rls/hrrpt/2004/41704.htm.

6

preserve the status quo between the parties pending a final determination of the merits of the action." 13 James WM. Moore, Moore's Federal Practice § 65.20 (3d ed.2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. See Abdah v. Bush, No. Civ. A. 04-1254 (HHK), 2005 WL 711814, at *3 (D.D.C. Mar. 29, 2005) (citing Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Petitioner will suffer irreparable harm if the injunction is denied. Petitioner stands to suffer immeasurable and irreparable harm – from torture to possible death – at the hands of a foreign government.[5] Moreover, transfer to another country, even if "only" for continued imprisonment, could "effectively extinguish [Petitioner's] habeas claims by fiat. Such transfer[] would eliminate any opportunity for Petitioner[] to ever obtain a fair adjudication of [his] 'fundamental right to test the legitimacy of [his] detention.'" Abdah, 2005 WL 711814, at *4 (quoting Lee v. Reno, 15 F. Supp. 2d 26, 23 (D.D.C. 1998)). Respondents "may not act to deprive this court of its jurisdiction over the very 'corpus' of this case; indeed, the 'federal courts

---

[5] See supra at 3-6; see also Douglas Jehl and David Johnston, Rule Change Lets C.I.A. Freely Send Suspects Abroad, N.Y. Times, March 6, 2005,; Michael Hirsh, Mark Hosenball and John Barry, Aboard Air CIA, Newsweek, Feb. 28, 2005 at 32; Dana Priest, Jet is an Open secret in Terror on War, Wash. Post, Dec. 27, 2004 at A01; Douglas Jehl, Pentagon Seeks to Shift inmates from Cuba Base, N.Y. Times, March 11, 2005, at A6; Scott Pelley, CIA Use of Rendering to Get Information from Suspects, 60 Minutes, March 6, 2005; Michael Scheur, A Fine Rendition, N.Y. Times, March 11, 2005 at A 6.

7

may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals.'" Id. (quoting Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004)).

No harm will be suffered by Respondents if the injunction is granted. Respondents, who have already held Petitioner for months, if not years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request. See id. at *5 ("[b]eyond [the government's] vague premonitions . . . the court does not have any indication that notifying Petitioners' counsel 30 days ahead of planned transfers of their clients will intrude upon executive authority.").

Petitioner is likely to succeed on the merits of his claims. Transfer of Petitioner without notice and leave of court is forbidden by Fed. R. App. 23(a), which requires that "pending review of a decision in a habeas corpus proceeding commenced before a court . . . the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this Rule." "The Rule was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." Abdah at *5 (internal quotations omitted). In light of this Court's ruling in Abdah that "Petitioners' transfer to another nation would assuredly deprive the court of its jurisdiction," Petitioner here has demonstrated "a clear likelihood of success in blocking a transfer made absent notice to, and

8

approval from, the court." Id.[6]

In addition, the only evidence currently before the Court indicates that the Combatant Status Review Tribunal – which was created and overseen by the government – has already determined that Petitioner Zakirjan is <u>not</u> an "enemy combatant," thereby removing any basis whatsoever for his continued detention.  See Petition ¶ 13.  It is therefore critical that Respondents be required to provide notice to the Court and Petitioner's counsel prior to transferring Petitioner beyond the jurisdiction of this Court, so that the Court is afforded an opportunity to address Petitioner's claim of innocence.  See Rasul, 124 S. Ct. at 2699 (upholding the jurisdiction of federal courts "to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing.").

<u>Public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from the Court's jurisdiction</u>.  No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture or detain him indefinitely.  As this Court held in Abdah, "this factor tilts in Petitioner['s] favor, because the public has a strong interest in ensuring that its laws do not subject individuals to indefinite detention without due process; it is always in the public interest to prevent the violation of a party's constitutional rights."  Abdah at *6 (quoting G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir. 1994)).

---

[6] But see Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (judicial review of habeas petition not precluded where government "deliberately [tried to] shield[] [Petitoiner] from constitutional scrutiny by keeping him outside the United States.").

**CONCLUSION**

For the foregoing, the Petitioner respectfully requests that the Court enter an order requiring Respondents to provide counsel for Petitioner and the Court with 30-days' advance notice of any intended removal of Petitioner from Guantánamo Bay Naval Base in Cuba.

Dated:  October 28, 2005                    Respectfully submitted,

                                            Counsel for Petitioner:

                                            CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                            By:_____/s/_____
                                                   Jonathan I. Blackman (NY3846)
                                            One Liberty Plaza
                                            New York, New York 10006
                                            (212) 225-2000

Of Counsel:
  Christopher P. Moore (NY4936)
  Patrick A. Sheldon (NY1598)


                                            Barbara Olshansky (NY0057)
                                            Tina Monshipour Foster (NY5556)
                                            Gitanjali S. Gutierrez (NY1234)
                                            CENTER FOR CONSTITUTIONAL RIGHTS
                                            666 Broadway, 7th Floor
                                            New York, New York 10012
                                            Tel.:  (212) 614-6437
                                            Fax:  (212) 614-6499

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
-------------------------------------------------------------------X
                                                                   :
ABUR BAKKER QASSIM, as Next Friend of                              :
ZAKIRJAN                                                           :   Case No. 05 Cv 2053 (HHK)
                                                                   :
                    Petitioner/Plaintiff,                          :
                                                                   :
          v.                                                       :
                                                                   :
GEORGE W. BUSH, et al.,                                            :
                                                                   :
                    Respondents/Defendants.                        :
                                                                   :
                                                                   :
-------------------------------------------------------------------X
```

**PROPOSED ORDER**

The Court, having considered Petitioner's Motion for Order Requiring Respondents to Provide Counsel for Petitioner and the Court with 30-Days' Advance Notice of Any Intended Removal of Petitioner from Guantánamo,

IT IS HEREBY ORDERED that the Motion is granted; and

IT IS FURTHER ORDERED that Respondents shall not remove Petitioner from Guantánamo to a foreign territory without providing counsel and the Court 30-days' advance notice.

Dated: _____

_____
United States District Judge