# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

-----------------------------------------------------------------X
          :

ZAKIRJAN,          :
      Detainee,      :
      Guantánamo Bay Naval Station,  :
      Guantánamo Bay, Cuba;   :
         :

ABU BAKKER QASSIM,    :     Case No. 05 Cv 2053 (HHK)
     as Next Friend of Zakirjan;  :
         :

          Petitioners/Plaintiffs,  :

      - against -     :

GEORGE W. BUSH, *et al.*,    :

        Respondents/Defendants.  :
         :

-----------------------------------------------------------------X

## PETITIONER'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTÁNAMO

Petitioner Zakirjan (hereinafter "Petitioner"), acting on his own behalf and through his Next Friend, Abu Bakker Qassim, submits this reply memorandum in further support of his Motion for Order Requiring Respondents to Provide 30-Days' Advance Notice of Any Intended Removal of Petitioner from Guantánamo ("Preliminary Injunction Motion"). Respondents now concede, as they must, that Petitioner is <u>not</u> an "enemy combatant." There nevertheless remains a serious risk that Respondents will "transfer [Petitioner] to the control of [a foreign] government,"[1] where he could face further interrogation, torture or indefinite

---

[1] Respondents' Memorandum In Opposition To Petitioner's Motions For Temporary Restraining Order And Preliminary Injunction Barring Transfer Or Release Or Requiring Advance Notice Of Transfer Or Release ("Opp.") at 8, n.8.

detention without any legal process.  Respondents state that such transfer will take place; they refuse, however, to disclose when, to what country or under what circumstances.  Without the relief requested, Petitioner's transfer could occur in the dark of night, without prior consultation with Petitioner – a man Respondents now concede to be innocent – or the review of this Court. Respondents have failed to demonstrate any cognizable harm they would suffer from the modest relief requested herein, while the harm to Petitioner from being rendered into foreign custody is obvious and palpable.

**PRELIMINARY STATEMENT**

Respondents have made a truly grave mistake.

It is now undisputed that Respondents abducted Petitioner from a foreign land and detained him for years virtually *incommunicado* based solely upon charges they concede to be untrue.  Having mistaken Petitioner for an "enemy combatant," Respondents seized and shipped him to a military base in Guantánamo Bay, Cuba, where he was interrogated and, upon information and belief, subjected to physical and emotional harm in violation of United States and international law.

Although Respondents now admit that Petitioner was wrongly accused and must be released, they have the audacity to assert that they possess the <u>sole</u> authority to determine Petitioner's fate, without the participation of Petitioner himself, or the review of this Court. Respondents' intended transfer of Petitioner to the "control" of a foreign government – the identity of which they refuse to disclose – could result in further interrogation, torture or indefinite detention without legal process.  No person – particularly Petitioner, who finds himself under the control of the United States government based solely upon suspicions proven to be false – should be subjected to such harm.  Petitioner is not, as Respondents would have it, an object to be discarded when and how they see fit, but an innocent man who should be permitted,

2

at the very least, an <u>opportunity</u> to contest the legality of any transfer that may put him in harm's way.

It is of course common for courts to determine whether refugees under the government's control should be transferred to the control of foreign governments. <u>See, e.g.</u>, <u>Lindstrom v. Graber</u>, 203 F.3d 470, 474-76 (7th Cir. 2000) (All Writs Act permits court to stay extradition pending appeal of habeas corpus petition); <u>Michael v. INS</u>, 48 F.3d 657, 664 (2d Cir. 1995) (All Writs Act permits federal Courts of Appeals to stay deportation orders pending appeal of habeas corpus petition).  The case for judicial review of Respondents' proposed transfer of Petitioner is even stronger:  unlike the typical person challenging extradition or requesting withholding of removal, Petitioner finds himself a refugee not by choice, but as the result of being abducted and imprisoned by the United States government based solely upon its mistaken belief that he was an "enemy combatant."  It is difficult to imagine a more perverse rule of law than that proposed by Respondents here, which would provide the very party who abducted and wrongly imprisoned Petitioner with the sole, unreviewable discretion to determine whether the risks of torture or persecution associated with his transfer or repatriation are "acceptable."

By the Preliminary Injunction Motion, Petitioner requests merely that he be provided 30 days' advance notice of any intended removal from Guantánamo.  There is no basis in law or logic to deny such a simple request, which could in no way harm Respondents.  This relief is necessary to ensure that Petitioner is, at a very minimum, afforded an opportunity to challenge the legality of any transfer that may cause him further unnecessary and unwarranted harm.  In contrast, Respondents would suffer no harm from being required to provide advance notice of any intended transfer:  if the specific transfer proposed by Respondents is deemed lawful by the Court it will not be enjoined; if, on the other hand, the Court concludes that the

proposed transfer would unjustifiably endanger Petitioner's health or well-being then it could be enjoined <u>before</u> Petitioner suffers irreparable harm.

Indeed, for these very reasons, this Court has ordered in related matters that the government provide advance notice of any intended removal of Guantánamo detainees who the government continues to believe are enemy-combatants.  <u>See, e.g.</u>, <u>Abdah v. Bush</u>, No. Civ. A. 04-1254 (HHK), 2005 WL 711814 (D.D.C. Mar. 29, 2005); <u>Al-Joudi v. Bush</u>, No. Civ. A. 05-301 (GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005).  There is no basis whatever for Respondents' apparent position that <u>non</u>-enemy combatants, such as Petitioner, are somehow entitled to <u>less</u> protection than enemy combatants.

## ARGUMENT

### RESPONDENTS SHOULD BE REQUIRED TO PROVIDE 30 DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTÁNAMO

In light of Respondents' recent admission that there is no legal basis for Petitioner's continued detention, the issues before the Court have been substantially narrowed: why does Petitioner continue to be detained against his will, how long will such detention continue and in what manner do Respondents intend to release him.

Obviously, Petitioner does not seek by the instant motion to unnecessarily delay his long-overdue release.  He nevertheless remains understandably concerned about Respondents' continued control over him, including their plans to forcibly transfer him to the control of a foreign government, and what harm he may suffer as a result of Respondents' unilateral efforts to do so.  Petitioner thus seeks merely to shed light upon such basic information as when, to what country and under what circumstances he is to be transferred, before his removal from the Court's jurisdiction becomes a *fait accompli*.

I.        **Petitioner Is Entitled To Advance Notice Of His Removal Under Fed. R. Civ. P. 65**

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here:  (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture.  See Abdah, 2005 WL 711814, at *3 (citing Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998)).  "These four factors 'interrelate on a sliding scale' and must be considered in relation to one another, for 'if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak.'" Abdah, 2005 WL 711814, at *3 (quoting Serono Labs., Inc., v. Shalala, 158 F.3d 1313, 1317-18 (D.C.Cir.1998)).

Where the balance of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation."  Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (quoting Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953).  "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant.  There is substantial equity, and need for judicial protection, whether or not the movant has shown a mathematical probability of success."  Washington Metro., 559 F.2d at 844.

A.    <u>Petitioner Will Suffer Irreparable Harm If The Injunction Is Denied</u>

It is beyond dispute that the transfer of Petitioner to the control of a foreign government – and any thus any harm flowing from such transfer – is imminent.  <u>See</u> Opp. at 3 (confirming Petitioner is <u>not</u> an enemy combatant and that "respondents are actively engaged in efforts to determine an appropriate destination country" for his transfer); <u>c.f.</u> <u>O.K. v. Bush</u>, 377 F. Supp. 2d 102, 118 (D.D.C. 2005) (no irreparable harm where "Petitioners [did] not cite any evidence that the interrogators have taken steps to carry out their threat to transfer the petitioner, or that a transfer of petitioner is otherwise imminent").

There are two obvious and substantial threats to Petitioner:

<u>First</u>, Petitioner faces the possibility of a "transfer to a country where [he] may be tortured or indefinitely confined, which undeniably would constitute irreparable harm." <u>Al-Joudi</u>, 2005 WL 774847, at *4; <u>id.</u> (noting that the government has in some instances "transferred [detainees] to countries that our own State Department has acknowledged torture prisoners, including Pakistan, Saudi Arabia and Morocco"); Preliminary Injunction Motion at 3-6.  Here, Petitioner, who is a Russian citizen, may be faced with the additional risk of mistreatment or incarceration upon return to his <u>home</u> country.  <u>See</u> Press Release, Amnesty International, <u>Released Guantánamo Detainees "Disappear" in Russia</u>, (Aug. 30, 2005) (reporting that Russian inmates transferred from Guantánamo Bay to the Russian Federation may face incarceration and human rights violations on their return); Petition for Writ of Habeas ¶ 40; Preliminary Injunction Motion at 6; October 14, 2005 Declaration of Sabin Willett ¶ 6 (noting that "government's resettlement efforts on behalf of [Petitioner] Zakirjan 'were not going smoothly with his country'").

Defendants attempt to mitigate these concerns by submitting two declarations of government officials concerning the United States' general policies concerning the transfer of Guantánamo detainees to foreign countries.  See Opp. at 9-10 (asserting that generalized declarations of Pierre-Richard Prosper and Matthew C. Waxman "make clear that it is the policy of the United States not to repatriate or transfer any detainee to a country when the United States believes, based on a number of factors and considerations, it is more likely than not that the individual will be tortured there").  "These declarations concerning general policy and practice, however, do not entirely refute Petitioner['s] claims or render them frivolous."  Abdah 2005 WL 711814, at * 4; see also Al-Joudi, 2005 WL 774847, at *4 ("While the Government presents declarations that attempt to mitigate these concerns, they neither refute Petitioners' claims nor render them frivolous").[2]

Although Respondents claim that Petitioner cannot complain of any potential harm because they intend only to "release" him, see Opp. at 8-9, they refuse to disclose any specific circumstances concerning this imminent "release" – including when, to what country and under what circumstances Petitioner will be transferred – or why he still remains imprisoned despite the fact that Respondents determined no less than seven months ago that he is not an enemy combatant.  See Preliminary Injunction Motion at 2-3.  The finding of Judge Bates in Al-

---

[2]  Like the declarations previously submitted on behalf of Respondents in related proceedings, Respondents state here that it is the "longstanding policy of the United States not to transfer a person to a country if it determines that it is more likely than not that the person will be tortured or, in appropriate cases, that the person has a well-founded fear of persecution and would not be disqualified from persecution protection on criminal – or security-related grounds."  Declaration of Pierre-Richard Prosper, dated Mar. 8, 2005, at 3; see also Declaration of Matthew C. Waxman, dated June 2, 2005, at 3 (recognizing Respondents' duty to comply with terms of Article 3 of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment).  Respondents would suffer no harm from an order requiring that they provide advance notice that they have complied with these duties with respect to their intended removal of Petitioner.

Anazi v. Bush, 370 F. Supp. 2d 188, 197-98 (D.D.C. 2005) that petitioners in that matter failed to "explain how they could possibly obtain any evidence [of possible United States involvement in the ongoing detention or torture of transferred detainees] in the 30-day window they would have before a transfer" is thus of no moment:  absent the relief Petitioner seeks here, he has no way of knowing where Respondents intend to send him, and therefore no ability to investigate the legality of that transfer.

"To be clear, a transfer for release would consist of, in the first instance, a transfer to the control of the government of the destination country."  Opp. at 8, n.8 (citing Waxman Decl. ¶ 3); see id. at 15 (same).  Respondents recognize, as they must, that "the foreign nation to which the former Guantánamo detainee is repatriated or transferred may itself detain the individual as a function of its own law enforcement, criminal justice, or other interests, as would be its prerogative."  Id. at 14, n.11.  It is thus critical that the country chosen for Petitioner's repatriation or transfer not be one in which he finds himself subjected to further interrogation, torture or indefinite imprisonment.  See Preliminary Injunction Motion at 7-8; Abdah, 2005 WL 711814, at * 4; Al-Joudi, 2005 WL 774847, at *4.

As the Court noted in Kurnaz v. Bush, No. Civ. 04-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) "[w]hile the Court has no occasion to decide at this time whether this or any other type of transfer could be subject to an injunction, several examples offered by petitioners raise sufficiently serious concerns to justify the limited remedy of advance notice":

> For instance, a petitioner could be transferred to the custody of a different United States custodian in a foreign country, such as the United States military base in Afghanistan.  Alternatively, he could be transferred to the custody of a foreign government, but held under the direction and control of the United States government.  Or, he could be transferred to the custody of a country where he has never had occasion to violate that country's laws, again raising a possible question as to the governmental claim of an 'independent law enforcement' interest.

8

Id. at *2 (internal citations omitted). These same concerns justify entry of an order requiring advance notice of transfer here.

Second, Petitioner faces the threat of irreparable harm based on the potential elimination of this Court's jurisdiction over this case. As this Court has recognized, transfer of Petitioner to another country, could "effectively extinguish [Petitioner's] habeas claims by fiat. Such transfer[] would eliminate any opportunity for Petitioner[] to ever obtain a fair adjudication of [his] 'fundamental right to test the legitimacy of [his] executive detention.'" Abdah, 2005 WL 711814, at *4 (quoting Lee v. Reno, 15 F. Supp. 2d 26, 32 (D.D.C. 1998)).[3] It follows therefore that, absent the relief sought by the instant motion, Petitioner's ability to challenge the legality of the transfer itself may also be eliminated. See id.; see also Opp. at 14, n. 11 ("foreign nation to which the former Guantánamo detainee is repatriated or transferred may itself detain the individual . . . as would be in its prerogative."). Respondents "may not act to deprive this court of its jurisdiction over the very 'corpus' of this case; indeed, the 'federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the protection of their rights in those tribunals.'" Abdah, 2005 WL 711814, at *4 (quoting Abu Ali, 350 F. Supp. 2d 28, 54 (D.D.C. 2004)).

In response, Respondents argue that providing Petitioner with an opportunity to challenge the legality of any proposed transfer would be futile because there are no circumstances under which the Court would have the authority to "Enjoin[] [the] Transfer or Repatriation of an Individual Being Released Upon a Determination That He is No Longer an Enemy Combatant." Opp. at 12. As this Court explained in Abdah, "Respondents are correct

---

[3]  But see Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (judicial review of habeas petition not precluded where government "deliberately [tried to] shield[] [Petitioner] from constitutional scrutiny by keeping him outside the United States.").

that <u>if</u> there are no circumstances under which Petitioners could obtain a court order preventing a contemplated transfer, a preliminary injunction should not be granted."  2005 WL 711814, at *4 (emphasis in original).  However, the Court concluded that "Respondents are wrong . . . in arguing that there are in fact no such circumstances present, and that consequently there is no legal basis for judicial involvement in transfer or repatriation decisions regarding Petitioners." <u>Id.</u> at *4.

Respondents concede, as they must, that "release" involves in the first instance, transfer to the control of a foreign government.  <u>See</u> Opp. at 8.  The same potential harm of which petitioners in <u>Abdah</u> complained will thus remain here unless and until Respondents agree, or are otherwise ordered, to disclose the identity of the country to which they intend to transfer Petitioner.

It is axiomatic that the "release" of an innocent man consequent to the grant of habeas relief may not be engineered to cause him harm.  It would be no more appropriate for the warden of a prison to "release" an innocent man by pushing him off a cliff, than it would be to permit the government to "release" Petitioner by transferring him to a foreign government for further unwarranted interrogation, torture or indefinite detention without judicial process. Inherent within the Court's jurisdiction to entertain Petitioner's habeas claim is a duty to ensure that his "release" is not simply an exercise of transferring him from one prison cell to another. <u>See</u> <u>id.</u> at *4, n.3 ("[I]t seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another."); <u>see also</u> <u>Lindstrom</u>, 203 F.3d at 474 ("The object of the habeas corpus proceeding,

a proceeding directed against the warden of the American jail in which [petitioner] is being held .

. . was . . . to prevent [petitioner] from being sent back to Norway") (emphasis added).[4]

      In arguing that separation of powers principles bar "judicial involvement in the

transfer or repatriation of individuals formerly detained by the Military as enemy combatants, or

for an advance notice requirement to support and facilitate such involvement," Opp. at 16,

Respondents place significant emphasis on the "analogous context of extradition." Id. at 17.

Specifically, Respondents point to the Rule of Non-Inquiry, pursuant to which courts have, under

certain circumstances, refrained from examining the fairness of a requesting nation's laws or the

treatment that awaits the fugitive. See Opp. at 17-20 (citing, inter alia, United States v. Kin-

Hong, 110 F.3d 103 (1st Cir. 1997); Ahmad v. Wigen, 910 F.2d 1063 (2d Cir. 1990); Escobedo

v. United States, 623 F.2d 1098, 1107 (5th Cir. 1980); Peroff v. Hylton, 563 F.2d 1099, 1102

(4th Cir. 1977); Hoxha v. Levi, 371 F. Supp. 2d 651, 659-61 (E.D. Pa. 2005) on appeal, No. 05-

3149 (3d. Cir.); Matter of Extradition of Sandhu, 886 F. Supp. 318, 321 (S.D.N.Y. 1993)). Thus,

Respondents assert that Petitioner should not be permitted in this case to "turn to the courts to

second-guess any Executive judgments about matters such as custodial conditions or the

adequacy of legal procedures in a foreign country, nor the credibility and adequacy of a foreign

government's assurances." Opp. at 19 (citation omitted).

      Respondents' reliance on the extradition analogue is misplaced. Petitioner is not

a fugitive fleeing from criminal proceedings here or elsewhere. He is not charged with any

crime or wrong doing by the United States; by Respondents' own admission, Petitioner "has

---

[4] Respondents' position that habeas relief is limited solely to release from custody, see Opp. at
8-9 (citing Al-Anazi, 370 F. Supp. 2d at 198), is therefore misplaced.

been determined to no longer be classified as an enemy combatant."[5]  Opp. at 8.  Nor have there

been any allegations whatsoever that criminal charges are pending against him in any other

jurisdiction.  In fact, far from being a fugitive who entered the United States on his own volition

attempting to avoid criminal proceedings afar, Petitioner is an innocent man who the United

States government abducted, transported into its own jurisdiction and now seeks to send to a

country of its choosing.

        Courts <u>do</u>, in any event, have jurisdiction to consider habeas corpus petitioners

challenging extradition orders.  <u>See</u> <u>Ward v. Rutherford</u>, 921 F.2d 286 (D.C. Cir. 1990) ("actions

taken by magistrates in international extradition matters are subject to habeas corpus review by

an Article III district judge, with appellate review available thereafter."); <u>see also</u> <u>DeSilva v.

DiLeonardi</u>, 181 F.3d 865, 870 (7th Cir. 1999) ("person resisting extradition must seek a writ of

habeas corpus under 28 U.S.C. § 2241"); <u>In re Extradition of Drayer</u>, 190 F.3d 410, 412, n.2 (6th

Cir. 1999) ("[t]he district court properly noted the appropriate habeas remedy was pursuant to 28

U.S.C. § 2241….") <u>cert. denied</u>, 528 U.S. 1176 (2000); <u>Matter of Extradition of Howard</u>, 996

F.2d 1320, 1325 (1st Cir. 1993) ("putative extraditee customarily can challenge an order for

extradition only by collateral attack, typically through habeas corpus").  Specifically, habeas

corpus review extends to "whether the magistrate had jurisdiction, whether the offense charged is

within the [extradition] treaty, and by a somewhat liberal extension, whether there was any

---

[5]  Although Respondents characterize Petitioner as an "NLEC," i.e., "no longer enemy
combatant," the definition of "enemy combatant" makes that terminology a semantic shuffle.
Anyone who "<u>was</u> part of supporting Taliban or al Qaeda forces, or associated forces that are
engaged in hostilities against the United States or its coalition partners," <u>is</u> an "enemy
combatant."  <u>See</u> Deputy Secretary of Defense, Memorandum for the Secretary of the Navy,
Order Establishing Combatant Status Review Tribunal, (Jul. 7, 2004) (emphasis added).  Thus,
if a person did in the past support those groups, then he is today an "enemy combatant."  A
decision that he is not, today, an "enemy combatant," necessarily confirms that he did not, in
the past, support such groups or engage in such acts.  "NLEC" is a misnomer; Petitioner never
was an "enemy combatant."

evidence warranting the finding that there was reasonable ground to believe the accused guilty."
Fernandez v. Phillips, 268 U.S. 311, 312 (1925) (citations omitted).  Indeed, many of the cases
upon which Respondents rely note the availability of such habeas corpus review.  See, e.g.,
United States v. Kin-Hong, 110 F.3d 103, 117 (1st Cir. 1997) ("[t]he existence of 'any evidence
warranting the finding that there was reasonable ground to believe the accused guilty' was one of
only three issues that the Fernandez court said might permissibly be reached on habeas.");
Ahmad v. Wigen, 910 F.2d 1063, 1064 (2d Cir. 1990) ("on an appeal from the denial of habeas
corpus in an extradition proceeding, we are concerned only with whether the appellant's alleged
offense fell within the terms of an extradition treaty, and whether an official with jurisdiction
was presented with sufficient evidence to warrant a finding that there was a reasonable ground to
believe that the appellant was guilty"); Escobedo v. United States, 623 F.2d 1098, 1101 (5th Cir.
1980) (quoting the scope of review described in Fernandez).  Thus, even under the extradition
analogue put forth by Respondents, Petitioner would be entitled to the relief he seeks here:  an
opportunity to challenge the legality of the government's proposed transfer of him to the control
of a foreign government.

       Finally, Respondents make much ado about Petitioner's reliance upon Fed. R.
App. P. 23(a) for the proposition that this Court should not permit the transfer of detainees
beyond its jurisdiction, claiming that the Federal Rules of Appellate procedure do not apply to
cases involving a non-enemy combatant such as Petitioner (a designation which Respondents
conceded for the first time in their opposition to this motion) in which no direct appeal has been
taken.  See Opp. at 12-13.  Respondents' position that Fed. R. App. P. 23(a) could not under any
circumstances apply to this case is entirely inconsistent with its position in related matters that
cases involving non-enemy combatants should be stayed pending the appeals of In re

Guantánamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005), and Khalid v. Bush, 355 F.

Supp. 2d 311 (D.D.C. 2005), and constitutes a waiver of any such argument here.  Compare

Respondents' Opp. to Pet. Saddiq Doe's Mot. For Imm. Prod. of the Body and Grant of Writ, or,

in the Alt., Grant of Interim Release, Kiyemba v. Bush, Civ. No. 05-1509 (RMU) (asserting that

determination of petitioner's status as non-enemy combatant does not warrant lifting of the stay

pending the In re Guantánamo Detainee Cases and Khalid appeals); with Opp. at 12-13

(asserting Fed. R. App. P. 23(a) cannot apply to cases involving non-enemy combatant).  Clearly,

Respondents cannot be heard to say that this Court must stay all proceedings involving non-

enemy combatants based upon the related In re Guantánamo Detainee Cases and Khalid appeals,

but is nevertheless powerless to prevent the transfer of any detainees pending the resolution of

those appeals.

  Petitioner of course agrees that the In re Guantánamo Detainees and Khalid

appeals provide no basis whatsoever to stay this matter – or any other matter involving a non-

enemy combatant – and that he should therefore be released immediately.  It is critical, however,

that the Court be permitted an opportunity to determine that such release is conducted in a

manner so as to ensure his safety and well-being.  By this motion, Petitioner seeks no more.

  B.  Respondents Will Suffer No Harm If The Injunction Is Granted

  In stark contrast to the actual bodily harm and loss of opportunity for legal redress

that Petitioner faces, Respondents can articulate no actual harm that they will suffer if required to

provide advance notice of Petitioner's removal:

> The Court fails to see any injury whatsoever that the Government would
> suffer from granting the requested preliminary injunction.  Petitioners
> request only 30 days' notice of transfer – a narrow and discrete request
> that would impose no burden on the Government.  Beyond 'vague
> premonitions' that such relief would harm the executive's ability to
> conduct foreign policy, there is no concrete evidence that such notice

14

> actually will intrude upon executive authority.  For example, granting
> Petitioners' request for 30 days' notice of transfer would not require the
> Court to second-guess foreign policy decisions of the Executive, would
> not require the Government to divulge information relating to its
> negotiations with foreign governments, and would not prevent the
> Government from speaking with one voice.

Al-Joudi, 2005 WL 774847, at *5; see also, Abdah, 2005 WL 711814, at *5 (Beyond…vague

premonitions…the court does not have any indication that notifying Petitioners' counsel 30 days

ahead of planned transfers of their clients will intrude upon executive authority.").

Nor would an order requiring advance notice "trample on the separation of

powers."  Opp. at 20.  Rather, it would simply encourage Respondents to include Petitioner and

his counsel in the process of locating a suitable country for transfer, in an attempt to render such

notice moot:  obviously, Petitioner would not challenge any release which he himself had pre-

approved.

C.      Petitioner Has Raised Serious Questions Going To The Merits, Making
        Them A Fair Ground For Litigation

"To justify granting a preliminary injunction, Petitioner[] need not show 'a

mathematical probability of success.'"  Al-Joudi, 2005 WL 774847, at *5 (quoting Washington

Metro. Area Transit Comm'n, 559 F.2d at 844).  Rather, in cases such as this, where the balance

of hardships tips decidedly toward the movant, it will "ordinarily be enough that the [movant]

has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make

them a fair ground for litigation and thus for more deliberative investigation."  Washington

Metro., 559 F.2d at 844.

Petitioner has properly invoked the jurisdiction of this Court.  See Rasul v. Bush,

124 S. Ct. 2686, 2698 (2004).  Respondents' suggestion that the habeas claim has somehow been

"mooted" is of course belied by Petitioner's continued detention.  Although the government has

known for over seven months (and perhaps several years) that there is no basis for detaining

Petitioner, he nevertheless remains imprisoned.  So long as Petitioner remains under the

government's control, this court maintains jurisdiction to hear Petitioner's claims concerning that

control, including any intended transfer.  See id. at 2695 ("the writ of habeas corpus does not act

upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be

unlawful custody.").

Respondents' refusal to provide advance notice is a blatant effort to remove any

possible legal redress that Petitioner may have concerning the merits of their decision to forcibly

transfer him to the control of a foreign government.  Respondents should not be permitted to

avoid judicial review by refusing to disclose the very circumstances under which Petitioner's

transfer or repatriation will occur.  See Abdah, 2005 WL 711814 at *4 ("[F]ederal courts may

and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue

in the Federal courts for the protection of their rights in those tribunals.") (quotations omitted).

In light of this Court's ruling in Abdah that "Petitioners' transfer to another nation would

assuredly deprive the court of its jurisdiction," Petitioner here has demonstrated "a clear

likelihood of success in blocking a transfer made absent notice to, and approval from, the court."

Id. at *5

>    D.    There Is A Clear Public Interest In Preventing The United States Government
>           From Rendering Individuals To Foreign Countries For Detention And Torture

Public policy favors requiring Respondents to provide advance notice of any

intended removal, so that the Court and Petitioner are afforded an opportunity to address any

proposed transfers that may unnecessarily endanger Petitioner.  See Preliminary Injunction

Motion at 9.  "This factor tilts in Petitioner['s] favor, because the public has a strong interest in

ensuring that its laws do not subject individuals to indefinite detention without due process; it is

always in the public interest to prevent the violation of a party's constitutional rights.'" <u>Abdah,</u> 2005 WL 711814, at *6 (quoting <u>G & V Lounge, Inc. v. Mich. Liquor Control Comm'n</u>, 23 F.3d 1071, 1079 (6th Cir. 1994)).

There is no merit to Respondents' argument that requiring advance notice could frustrate their ability to conduct foreign policy and/or impair the effectiveness of the war on terrorism. "Respondents simply conflate the public interest with their own position." <u>Id.</u> at * 6; <u>Al-Joudi</u>, 2005 WL 774847, at *6 (same). Indeed, Respondents' argument that providing notice would impede foreign relations or the war on terrorism is particularly unavailing here, where the detainee to be released is <u>not</u> an enemy combatant; the government does not, because it cannot, explain how it could possibly be harmed by an order requiring it to provide advance notice to an innocent man of when and under what circumstances he is to be released.

## II.    Petitioner Is Entitled To Advance Notice Of His Removal Under The All Writs Act

The All Writs Act "empowers a district court to issue injunctions to protect its jurisdiction," <u>SEC v. Vision Commc'ns, Inc.</u>, 74 F.3d 287, 291 (D.C. Cir. 1996), <u>see</u> <u>Envtl. Def. Fund v. EPA</u>, 485 F.2d 780, 784, n.2 (D.C. Cir. 1973). A court may grant a writ under the Act whenever it determines such action necessary "to achieve the ends of justice entrusted to it." <u>Adams v. United States</u>, 317 U.S. 269, 273 (1942). Should the court find adequate "alternative remedies" unavailable, <u>Clinton v. Goldsmith</u>, 526 U.S. 529, 537 (1999), or "the traditional requirements of an injunction" inapplicable, <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1101 n. 13 (11th Cir. 2004), it may employ the Act to order the relief Petitioner seeks.

Under <u>Rasul</u>, this Court has the jurisdiction to determine the legality of Petitioner's detention and, "[a]ccordingly, the Court must also have authority to preserve this jurisdiction if it can be shown that respondents are acting to circumvent it." <u>Kurnaz</u>, 2005 WL

839542, at *2 (citing All Writs Act, 28 U.S.C. § 1651(a); <u>Al-Marri v. Bush</u>, No. 04-2035, slip.

op. at 10 n. 11 (D.D.C. Apr. 4, 2005) (quoting <u>SEC v. Vision Commc'ns, Inc.</u>, 74 F.3d 287, 291

(D.C. Cir. 1996) (All Writs Act "empowers a district court to issue injunctions to protect its

jurisdiction")); <u>Abu Ali v. Ashcroft</u>, 350 F. Supp. 2d 28, 54 (D.D.C.2004) (federal courts "may

and should take such action as will defeat attempts to wrongfully deprive parties" of their right to

sue in federal court) (internal citation omitted); <u>Lindstrom v. Graber</u>, 203 F.3d 470, 474-76 (7th

Cir. 2000) (All Writs Act permits court to stay extradition pending appeal of habeas corpus

petition); <u>Michael v. INS</u>, 48 F.3d 657, 664 (2d Cir. 1995) (All Writs Act permits federal Court

of Appeals to stay a deportation order pending review of its legality).

       As noted above, there are several types of transfer that "raise sufficient[] concerns

to justify the limited remedy of advance notice," including the possibility that Petitioner "could

be transferred to the custody of a different United States custodian in a foreign country, . . . to the

custody of a foreign government, but held under the direction and control of the United States

government. . . , [o]r . . . to the custody of a country where he has never had occasion to violate

that country's laws." <u>See</u> <u>supra</u> at  8 (quoting <u>Kurnaz</u> at *2).  Closer scrutiny of Respondents'

intended transfer of Petitioner is therefore "appropriate in order to preserve the petitioner's right

to obtain review of the legality of his detention," as well as the transfer itself.  <u>Id.</u>

*     *     *

       For the foregoing reasons, Petitioner also requests that the Temporary Restraining

Order issued by the Court on November 7, 2005 be amended to require 10 days' advance notice

of any intended removal for purposes of release from detention prior to the Court's ruling on the

Preliminary Injunction Motion.  Upon moving for the Temporary Restraining Order,

18

Respondents had not yet conceded that Petitioner was a non-enemy combatant to be transferred for release. Petitioner seeks this minimal protection to ensure he has an opportunity to raise with the Court any concerns he might have regarding any such removal or, in the alternative, to arrange for family or friends to be present upon his arrival in the receiving country.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court grant Petitioner's Preliminary Injunction Motion, requiring Respondents to provide 30 days' advance notice of any intended removal of Petitioner from Guantánamo.  In addition, Petitioner respectfully requests that the Court amend the Temporary Restraining Order dated November 7, 2005 to require 10 days' advance notice of any intended removal for purposes of release from detention prior to the Court's ruling on the Preliminary Injunction Motion.


Dated:  November 10, 2005                  Respectfully submitted,

                                           Counsel for Petitioner:

                                           CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                           By:_____/s/_____
                                                 Jonathan I. Blackman (NY3846)
                                           One Liberty Plaza
                                           New York, New York 10006
                                           (212) 225-2000

Of Counsel:
  Christopher P. Moore (NY4936)
  Patrick A. Sheldon (NY1598)


                                           Barbara Olshansky (NY0057)
                                           Tina Monshipour Foster (NY5556)
                                           Gitanjali S. Gutierrez (NY1234)
                                           CENTER FOR CONSTITUTIONAL RIGHTS
                                           666 Broadway, 7th Floor
                                           New York, New York 10012
                                           Tel.:  (212) 614-6437
                                           Fax:  (212) 614-6499

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

---------------------------------------------------------------X
                              :

ZAKIRJAN,                         :
        Detainee,                  :
        Guantánamo Bay Naval Station,  :
        Guantánamo Bay, Cuba;      :
                         :
ABU BAKKER QASSIM,         :      Case No. 05 Cv 2053 (HHK)
      as Next Friend of Zakirjan;   :
                         :
           Petitioners/Plaintiffs,   :
                         :
        - against -            :
                         :
GEORGE W. BUSH, *et al.*,      :
                         :
          Respondents/Defendants.  :
                         :
---------------------------------------------------------------X

**[PROPOSED] ORDER**

      The Court, having considered Petitioner's Motion for Order Requiring Respondents to

Provide Counsel for Petitioner and the Court with 30-Days' Advance Notice of Any Intended

Removal of Petitioner from Guantánamo (#5) (the "Motion for Preliminary Injunction");

Petitioner's Motion for Temporary Restraining Order Preventing Respondents from Removing

Petitioner from Guantánamo Until Petitioner's Motion for Preliminary Injunction is Decided (#8)

(the "Motion for Temporary Restraining Order"); Respondents' Memorandum In Opposition to

Petitioner's Motions for Temporary Restraining Order and Preliminary Injunction Barring

Transfer or Release or Requiring Advance Notice of Transfer or Release (#9); and Petitioner's

Reply Memorandum In Support of Motion for Order Requiring Respondents to

Provide Counsel for Petitioner and the Court with 30 Days' Advance Notice of Any Intended

Removal of Petitioner from Guantánamo; the Order previously entered in this matter on

November 7, 2005, is, this _____ day of November, 2005, AMENDED as follows:

  IT IS HEREBY ORDERED, that petitioner's Motion for Temporary Restraining Order

is GRANTED; and it is further

  ORDERED, that respondents shall not remove petitioner from Guantánamo Bay Naval

Base until petitioner's Motion for Preliminary Injunction is decided unless such removal is for

the purpose of releasing petitioner from detention, in which case respondents shall provide 10

days' advance notice of such removal to petitioner's counsel and the Court.


Dated: _____


        _____

         United States District Judge