UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ZAKIRJAN, *et al.*,

    Petitioner/Plaintiff,

v.

GEORGE W. BUSH, *et al.*,

    Respondents/Defendants.

Case No. 05 Cv 2053  (HHK) (LFO)

**PETITIONER'S OPPOSITION TO RESPONDENTS' MOTION
FOR ORDER TO SHOW CAUSE WHY CASE SHOULD NOT
BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND"
<u>STANDING OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS</u>**

Petitioner Zakirjan (hereinafter "Petitioner"), acting on his own behalf and through his Next Friend, Abu Bakker Qassim, respectfully requests that the Court deny Respondents' Motion For Order To Show Cause Why Case Should Not Be Dismissed For Lack Of Proper "Next Friend" Standing Or, In The Alternative, To Stay Proceedings Pending Related Appeals.  Petitioner also requests, pursuant to Local Civil Rule 7(f), that the Court schedule a status hearing at its earliest convenience.[1]

**PRELIMINARY STATEMENT**

Remarkably, Respondents take the position that Petitioner, despite his uncontested innocence, does not wish to be represented by undersigned counsel, but prefers instead to continue languishing in a prison cell in Cuba and to trust his fate to Respondents, who admit that they imprisoned him without cause and continue to do so <u>eight months</u> after clearing

---

[1] By Order dated November 21, 2005, Respondents' Motion For Order To Show Cause Why Case Should Not Be Dismissed For Lack Of Proper "Next Friend" Standing Or, In The Alternative, To Stay Proceedings Pending Related Appeals was "transferred to Judge Louis F. Oberdorfer, with his consent, for consideration and decision." Declaration of Lia Monahon, dated Dec. 2, 2005 (the "Monahon Decl.") Ex. A.  Unless otherwise noted, all subsequent Exhibits are attached to the Monahon Decl.

him of any wrongdoing.[2]  Moreover, despite Petitioner's protracted illegal detention, Respondents have the audacity to suggest that this Court put his case on hold while <u>unrelated</u> cases complete their appeals.  The Court should deny the motions to show cause and to stay the proceedings, each of which is a meritless effort to deny Petitioner his day in court.

    While Respondents pretend that they do not, in theory, oppose Petitioner being represented by counsel, the instant motion and their stonewalling with respect to communications with counsel belie such claims.  Respondents claim both that Petitioner has failed to show that the undersigned attorneys represent him, and that Mr. Qassim's "next friend" status is somehow improper.  While Respondents' claims are both false, it is clear that the issue could be resolved once and for all without further litigation were Respondents to simply permit counsel to confer with Petitioner.  However, Respondents refuse to grant Petitioner even a telephone call with the undersigned counsel, revealing their true intent to use motion practice to further delay Plaintiff's release.

    Petitioner has in any event demonstrated standing to seek habeas relief.  First, Petitioner, acting on his own behalf, has expressly requested that the undersigned counsel represent him in these proceedings, thus mooting the sole basis for Respondents' motion for an order to show cause why Petitioner's case should not be dismissed for lack of proper "next friend" standing.  <u>See</u> Manning Decl. ¶ 10 .  Second, Petitioner's decision to request habeas relief in the first instance through his next friend was consistent with the written notifications provided to him <u>by Respondents</u>, which expressly state that Petitioner "may ask a friend . . . to file [a habeas] petition with the Court."  Ex. A of the Second Declaration of Frank Sweigart ("Sweigart Decl.").  This, of course, is exactly what Petitioner did here.  Respondents cannot be heard to say

---

[2]  This time period is in addition to the undisclosed time Petitioner was imprisoned prior to having his non-enemy-combatant status determined by Respondents.

that Petitioner's case must be dismissed because he was so naïve as to take Respondents for their word.

The Motion for Stay must also fail. Despite Respondents' vague and unsupported allegations that Petitioner's claim for habeas relief somehow depends on the outcome of cases dealing strictly with enemy combatants and different legal theories, the cases on appeal are <u>not</u> related. While Petitioner can assert many different grounds upon warranting his release, his primary basis for relief is found in the law of habeas corpus itself. Under this law, it is Respondents' burden to demonstrate a lawful basis for his continued imprisonment. Because Respondents have already conceded that Petitioner is <u>not</u> an enemy combatant and should be released, they cannot meet this burden; the habeas petition will thus inevitably succeed, regardless of the outcome in either of the purportedly "related" appeals.

At its root, the instant motion is simply the most recent in a barrage of delay tactics designed to prevent the Court from hearing Petitioner's habeas case on its merits and granting Petitioner the relief to which he is so plainly entitled. Respondents' efforts in this light are not only baseless, but, if entertained, would thwart the very purpose of habeas relief: to free innocent men.

## BACKGROUND

Petitioner is a citizen of Russia who is being detained at the Guantánamo Bay Naval Base in Cuba. <u>See</u> October 14, 2005 Declaration of Sabin Willett in Support of Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief ¶ 6 ("Willett Decl."). The total amount of time that Petitioner has been held in Guantánamo Bay in the custody and control of Respondents is unknown to counsel, but known to Respondents. <u>See</u> Petition for Writ of Habeas Corpus ¶ 27, dated October 17, 2005 (the "Petition").

Although Respondents determined <u>more than eight months ago</u> that Petitioner is <u>not</u> an enemy combatant and must be released, he remains imprisoned against his will.[3] See Respondents' Memorandum In Opposition To Petitioner's Motions For Temporary Restraining Order And Preliminary Injunction Barring Transfer Or Release Or Requiring Advance Notice Or Transfer Or Release, dated November 3, 2005 ("Opp. Br.") at 3 ("confirm[ing] . . . that [Petitioner] was determined in his CSRT [Combatant Status Review Tribunal] to be no longer classified as an enemy combatant."); Defense Department Special Briefing on Combatant Status Review Tribunals, Presenter: Secretary of The Navy Gordon England (March 29, 2005) ("[t]he Combatant Status Review Tribunals for all of the DOD detainees at Guantánamo are completed"); Defense Department Special Briefing on Administrative Review Boards for Detainees at Guantánamo Bay, Cuba, Presenter: Director, Office for the Administrative Review of the Detention of Enemy Combatants, Rear Adm. James McGarrah, (July 8, 2005) ("we finished the Combatant Status Review Tribunals back in March of this year").

In light of Respondents' acknowledgement that Petitioner is not an enemy combatant and must be released, Petitioner's counsel sent an email to Respondents on Monday November 14, 2005 requesting a telephone meeting with Petitioner, based in part upon

---

[3] Respondents first conceded that Petitioner is not an enemy combatant on November 3, 2005, in papers submitted in opposition to Petitioners' motions for an order requiring Respondents to provide 30-days' advance notice to the Court and counsel of any intended removal of Petitioner from Guantánamo (the "Motion for Preliminary Injunction") and for a temporary restraining order preventing Respondents from transferring Petitioner until the Motion for Preliminary Injunction was decided (the "Motion for TRO"). See Opp. Br. at 3. On November 7, 2005, the Court granted Petitioner's Motion for TRO, providing that "respondents shall not remove petitioner from Guantánamo Bay Naval Base until petitioner's motion for preliminary injunction is decided unless such removal is for the purpose of releasing petitioner from detention." On November 21, 2005, the Court granted Petitioner's Motion for Preliminary Injunction, providing that "respondents shall provide petitioners' counsel and the court with 30 days' notice prior to transporting or removing petitioner from Guantánamo Bay Naval Base, unless such transportation or removal is for the purpose of releasing petitioner Zakirjan from detention."

knowledge that Respondents had consented to telephone meetings between other non-enemy combatants and their counsel. See Monahon Decl. Ex. B; Manning Decl. ¶ 11. Four days passed with no response from Respondents. On Friday November 18, Petitioner's counsel left a voice mail with Respondents and sent a second email, again requesting a telephone meeting with Petitioner. After four days of silence, at approximately 6:00 p.m. on Friday November 18, Respondents sent an email to Petitioner's counsel stating:

> Today we are filing a motion for an order to show cause why the Zakirjan case should not be dismissed for lack of proper next friend standing. In light of our motion, which challenges the jurisdictional basis for the petition, we cannot consent to your request for a telephone meeting with petitioner.

Monahon Decl. Ex. B. It is thus clear that rather than granting the simple request by Petitioner's counsel on November 14 for a telephone meeting with Petitioner, Respondents spent four days drafting the instant motion. If Respondents had simply consented to a telephone meeting between Petitioner and his counsel, Respondents' purported concerns that Petitioner does not in fact wish to be represented could have been put to rest once and for all, thereby obviating the need to burden the Court with this motion practice.[4]

---

[4] Concurrent with this opposition, Petitioner has filed Petitioner's Motion For Entry Of Order Granting Immediate Access Of Petitioner To Counsel By Telephone, in the hope that a simple telephone call between Petitioner and the undersigned counsel will further moot Respondents' Motion for an Order to Show Cause. By proposing a telephone meeting with counsel in the first instance, Petitioner in no way waives his right to subsequent meetings with his counsel in person. See infra, n. 3.

## ARGUMENT

## POINT I

### PETITIONER HAS STANDING TO SEEK HABEAS RELIEF

Respondents' apparent position that Petitioner does not wish to be represented by the undersigned counsel in these proceedings, preferring instead to stay indefinitely in a jail cell in Guantánamo Bay, Cuba without any legal representation is implausible on its face and should be summarily rejected.

As the Petition for Writ of Habeas Corpus clearly states, Petitioner "acts on his own behalf <u>and</u> through his Next Friend, Abu Bakker Qassim." Petition at 1 (emphasis added).[5] Evidence submitted herewith demonstrates beyond reasonable dispute that Petitioner, acting on his own behalf, has expressly requested that the undersigned counsel represent him in these proceedings, thus disposing of the sole basis for Respondents' motion for an order to show cause why Petitioner's case should not be dismissed for lack of proper "next friend" standing moot. Respondents' claim that Abu Bakker Qassim could not act as a proper next friend is in any event baseless. Indeed, the written notifications provided <u>by Respondents</u> to Petitioner expressly state that "you may ask a friend . . . to file [a habeas] petition with the Court," which is precisely what Petitioner did here. Respondents cannot be heard to say that Petitioner's case must be dismissed because he was duped into following their instructions.

---

[5] Petitioner reserves his legal and factual arguments in support of standing for briefing in the unlikely event the Court issues an order to show cause.

A.   **Petitioner Has Requested That The Undersigned Counsel Represent Him In These Proceedings, Thereby Rendering Moot Respondents' Challenge To "Next Friend" Standing**

It is beyond reasonable dispute that Petitioner wishes to be released from Respondents' custody as soon as possible, and that he has requested undersigned counsel to represent him in these proceedings.

On November 14 and November 16, 2005, Susan Baker Manning, counsel to Abu Bakker Qassim, Petitioner's next friend in this matter, spoke directly with Petitioner and confirmed that he wishes the undersigned counsel to represent him in these proceedings. See Declaration of Susan Baker Manning, dated December 7, 2005 (the "Manning Decl.") ¶¶ 6, 10. Ms. Manning's conversations with Mr. Zakirjan took place at Camp Iguana during breaks between meetings with her clients, Mr. Qassim, Mr. Hakim and Mr. Turkistani, each of whom, like Petitioner Zakirjan, has been found by Respondents not to be an enemy combatant. The guards were fully aware of those conversations and made no effort to intervene. Id. ¶ 6

Mr. Zakirjan, who is conversant in English, advised Ms. Manning he has been attempting to obtain a lawyer for a very long time, and that he had been sending his name, ISN number and request for counsel with other inmates who were taken to Camp Echo to meet with lawyers, including Mr. Qassim. Id. ¶ 9 Mr. Zakirjan stated that he was extremely anxious to meet with his lawyers. See id. ¶ 10 (noting that Petitioner is anxious to meet with his attorney Chris Moore, an associate with the law firm of Cleary Gottlieb Steen & Hamilton LLP). Mr. Zakirjan was fully aware that the law firm of Cleary Gottlieb Steen & Hamilton LLP was acting on his behalf to seek his release by means of habeas corpus, and stated that he wishes that firm to continue doing so. See Hamlily v. Bush, No. 05-Cv-0763 (JDB) (discharging order to show cause regarding next friend standing based on counsel's showing that the detainee had directly

7

requested legal representation and authorized the filing of the petition). As the Court noted in Hamily, evidence of a direct request for representation moots any challenge Respondents may have to proper "next friend" standing:

> Petitioner's response to the Order states that the issue of next friend standing is moot because Hamlily has directly requested legal representation and authorized this petition. The Smith affidavit states that, subsequent to the filing of this petition by Aamer, Smith met directly with Hamlily who requested his legal services in this action. Although counsel's filing fails to address several of the serious deficiencies in next friend standing raised in the Court's Order dated October 3, 2005, the Court finds it unnecessary to resolve that issue in light of Hamlily's decision to pursue this matter on his own behalf through legal representation by Smith. The Court therefore agrees that the issue of next friend standing is moot.

Order dated October 31, 2005 at 2-3, Hamlily (docket No. 19) (internal citation omitted).

In addition, although Mr. Zakirjan is a Russian citizen, he stated that he does not wish to return to Russia because of unarticulated "political problems." Manning Decl. ¶ 8. Mr. Zakirjan's fear of being returned to Russia evidences further his desire to obtain legal counsel, without which he may have no opportunity to challenge any attempt to repatriate him to Russia. See Petition ¶ 40 (alleging that "Petitioner Zakirjan, a Russian Citizen, is at risk of being rendered, expelled or returned without lawful procedures" to Russia, where he could face possible human rights violations).

Should Respondents continue to assert Petitioner does not wish to be represented by the undersigned counsel, despite the sworn statement of Ms. Manning to the contrary, the Court should order Respondents to provide counsel with immediate telephone access to Petitioner in order to put this issue to rest once and for all.[6] See Motion for Entry of Order Granting Immediate Access of Petitioner to Counsel by Telephone, dated December 2, 2005.

---

[6] By proposing a telephone meeting with counsel in the first instance, Petitioner in no way waives his right to subsequent meetings with his counsel in person. Indeed, the protective orders that have, on information and belief, been entered in all other pending Guantánamo detainee cases expressly provide

**B.     Petitioner Has Standing To Seek Habeas Relief Through His Next Friend, Abu Bakker Qassim**

As Judge Green has recognized, "Petitioners cannot be expected to exercise this right [of habeas corpus] without the assistance of counsel." Al Odah v. United States, 346 F. Supp. 2d 1, 8 (D.D.C. 2004):

> [Petitioners] have been detained virtually incommunicado for nearly three years without being charged with any crime. To say that Petitioners' ability to investigate the circumstances surrounding their capture and detention is 'seriously impaired' is an understatement. The circumstances of their confinement render their ability to investigate nonexistent. Furthermore, <u>it is simply impossible to expect Petitioners to grapple with the complexities of a foreign legal system and present their claims to this Court without legal representation. Petitioners face an obvious language barrier, have no access to a law library, and almost certainly lack a working knowledge of the American legal system</u>.

Id. (emphasis added). It is thus imperative that Petitioner here be provided with meaningful access to counsel.

In the face of this obvious reality that non-enemy combatants such as Petitioner Zakirjan who continue to be imprisoned without legal basis wish for pro bono counsel to seek habeas relief on their behalf, Respondents seek the drastic remedy of the dismissal of this case based upon their unfounded claim that Mr. Qassim is incapable of acting as a proper "next friend." While this claim is without merit, it could easily be resolved without the need for further litigation if Respondents would simply permit counsel to confer with Petitioner. Respondents refusal to grant this simple request reveals their true intent to use motion practice to further delay Petitioner's release.

---

that counsel has the right to meet <u>twice</u> with Petitioner in person <u>before</u> counsel is obligated in any way to provide evidence of authority to represent. See Declaration of Christopher P. Moore, dated Dec. 2, 2005 Ex. 2. Respondents' position that the protective orders should not be entered due to their challenge to next friend standing is thus nonsensical – the protective orders are designed to permit communication between detainees and their counsel prior to the resolution of any challenges to standing.

Respondents' position is particularly untenable in light of the fact that Petitioner Zakirjan acted consistently with Respondents' <u>own</u> procedures. Following the Supreme Court's ruling that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base," <u>Rasul v. Bush</u>, 124 S. Ct. 2686, 2698 (2004), Respondents purportedly "notified [all detainees] of their right to submit petitions for writ of habeas corpus." Motion at 7. However, Respondents ignore the fact that the very notice they provided to detainees states that detainees "may <u>ask a friend</u>" to file such a petition with the court. Ex. A of the Sweigart Decl. Specifically, Respondents' Enemy Combatant Notification provides that a detainee imprisoned in Guantánamo may:

> ask a civilian judge to look at the lawfulness of [his] detention through a process called a petition for writ of habeas corpus. [He] may <u>ask a friend</u> or family member or a lawyer to file such a petition with the court. If [he does] not have a lawyer or a family member or friend who could file this petition for [him], [he] may file [his] own petition.

Ex. A of the Sweigart Decl. (emphasis added). Petitioner did exactly this: he "ask[ed] a friend," Mr. Qassim, to seek habeas relief on his behalf. The Notification refers simply to a "friend"; it does not say "an individual satisfying the standing requirements under federal law for Next Friend status." Nowhere in the instructions provided to Petitioner do Respondents suggest that only those "friends" with whom Petitioner "has a significant relationship," Motion at 11, may serve as a proper "next friend." Thus, Petitioner Zakirjan did what Respondents advised him he might do; he asked a friend for help.

Mr. Qassim was of course a perfectly understandable choice: like Petitioner Zakirjan, he had been determined by the government not to be an enemy combatant and was transferred to Camp Iguana; however, unlike Petitioner Zakirjan, he had succeeded in obtaining

10

counsel. As "next friend," Mr. Qassim fulfilled his promise to Mr. Zakirjan and filed a habeas corpus petition (through counsel) on Mr. Zakirjan's behalf in order to secure access to counsel and help him challenge the legality of his detention.

Respondents' reliance upon Whitmore v. Arkansas, 495 U.S. 149 (1990) is also misplaced. See Motion at 4-5. According to Respondents, Mr. Qassim cannot serve as an adequate "next friend" because:

> First, a 'next friend' must provide an adequate explanation – such as inaccessibility, mental incompetence, or other disability – why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest.

Motion at 5 (quoting Whitmore, 495 U.S. at 163-64). It is difficult to imagine a case more appropriate for next friend standing under Whitmore than a case such as this, where the detainee seeking habeas corpus relief:

- has been abducted from a foreign jurisdiction, shipped to a military base in Cuba, and held virtually incommunicado for years, thousands of miles away from friends and family;

- is not a U.S. citizen;

- speaks little English, which is not his native language;

- is unfamiliar with the United States legal system;

- has no criminal charges against him;

- has every reason to distrust his captors and keepers;

- has every reason to rely upon the friendship of other detainees, who speak his native language and suffer the same disabilities;

- has every reason to challenge his confinement, which even his captors concede is solely the result of their improper determination that he was an "enemy combatant";

11

- does not have access to a law library;

- is prevented from conferring with his pro bono attorneys; and

- was expressly told by his captors that he "may <u>ask a friend</u>" to file a habeas petition on his behalf.

The "explanation" for Petitioner's decision to request habeas relief through his friend Mr. Qassim in the first instance is obvious: but for his incarceration by Respondents, and their steadfast refusal to permit him to confer directly with his counsel, there would be no need for Mr. Zakirjan to have sought help from Mr. Qassim.[7] Respondents' further assertions that Mr. Qassim is not "truly dedicated to the best interests of the person on whose behalf he seeks to litigate" or that Mr. Qassim may seek to "merely use the litigation as a vehicle for advancing his own agenda or . . . assume he . . . is in tune with the real party's desires and interests" verge on frivolity. Motion at 10 (quoting <u>Whitmore</u> at 164). Like Mr. Zakirjan, Mr. Qassim is a non-enemy combatant who continues to be imprisoned without legal basis. Mr. Qassim's interest in obtaining habeas relief for himself does not in any way conflict with the habeas relief sought on Mr. Zakirjan's behalf, nor would Mr. Qassim benefit at Mr. Zakirjan's expense by helping Mr. Zakirjan to obtain his freedom. That Mr. Qassim and Mr. Zakirjan share the same "desires and interest" hardly warrants a response: it is beyond dispute that each man desires to be freed from unlawful imprisonment, and has an interest in obtaining that freedom as soon as possible.

In addition to contravening their own advice to detainees such as Mr. Zakirjan that a detainee may ask a "friend" to seek habeas relief on his behalf, Respondents' Motion contradicts the position they have taken in other habeas corpus proceedings in this Court. Respondents have explicitly acknowledged the propriety of the "next friend" standing for fellow

---

[7] As noted above, Petitioner has since expressly stated that he wishes undersigned counsel to represent him in these matters. <u>See</u> <u>supra</u> at 7.

12

detainees such as Mr. Qassim in <u>John Does 1-570 v. Bush</u>, No. 05-Cv-0313 (CKK) (D.D.C.). In disputing petitioners' argument in that case that detainees had been denied access to the courts, Respondents stated that the "vast majority of these detainees have filed petitions through other individuals acting as <u>legitimate next friends</u> – family members, an attorney who already represented the detainee in pending military commission proceedings, and <u>fellow detainees</u>." Motion to Dismiss Petition for Writ of Habeas Corpus or, in the Alternative, to Stay Proceedings Pending Related Appeals and Memorandum in Support at 15-16, Monahon Decl. Ex. D (emphasis added).

Nor is there any basis for Respondents assertion that "the phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom habeas relief is sought." Motion at 13. There is no difficulty in identifying Mr. Zakirjan here: his ISN is 672, he is an Uzbek citizen of Russia, approximately 5'6" in height, in approximately his 40's, with a medium build, full beard with mustache and hair shaved very short. Manning Decl. ¶¶ 4, 7; Willett Decl. ¶ 6. He speaks English, Russian and Arabic. Manning Decl. ¶ 7. He has been determined not to be an enemy combatant, and, upon information and belief, is one of approximately nine prisoners currently held in Camp Iguana. Willett Decl. ¶ 6. Respondents clearly have sufficient information to locate Mr. Zakirjan. Indeed, they know exactly who Mr. Zakirjan is, that he is not an enemy combatant and that he should be released. <u>See</u> Opp. Br. at 3.

**C.     Undersigned Counsel Requests Permission To Confer With Petitioner, Which Would Further Moot This Motion**

Soon after Respondents first conceded that Petitioner is not an enemy combatant and should be released, counsel for Petitioner requested that Respondents consent to a telephone meeting with Petitioner. Respondents refused, instead filing their Motion for Order to Show

13

Cause in an effort to prevent any communication whatsoever between Petitioner and his pro bono counsel. See Monahon Decl. Ex. C.

All issues raised by Respondents concerning Petitioner's standing to seek habeas relief could be quickly and properly resolved by allowing the undersigned to visit with Petitioner Zakirjan in Guantánamo – or at the very least to permit a telephone meeting – to determine if he wishes to pursue this proceeding or not. See Motion For Order Granting Petitioner Immediate Access To His Counsel By Telephone.

**POINT II**

**GIVEN RESPONDENTS' DETERMINATION THAT PETITIONER IS NOT AN ENEMY COMBATANT AND SHOULD BE RELEASED, THERE IS NO BASIS FOR STAYING THESE PROCEEDINGS**

Respondents' sole justification for requesting a stay of proceedings is their claim that the appeals in two cases brought by enemy combatants will determine the outcome of Petitioner's habeas petition: In re Guantánamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005) and Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005) (collectively, the "Appeals"). This simply is not true. Both of the Appeals are confined to the factual situations of enemy combatants, and involve issues of law that do not relate in any material way to the claims of Petitioner Zakirjan, who by the government's admission is not an enemy combatant and was never properly detained.

Critically, the Appeals, regardless of their outcome, will not affect the Supreme Court's holding in Rasul that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base." 124 S. Ct. at 2698. Neither of the Appeals involves any claim of power to detain a person who, like Petitioner, was never an enemy combatant, and whose seizure and

detention has never been legal.[8]  See Judge Robertson's August 19, 2005 Order at 5 in Qassim v. Bush, 382 F. Supp 2d 126 (D.D.C. 2005) ("Neither of the twinned cases now pending before the Court of Appeals presents, or appears to have contemplated, the case of a detainee who has been through the [Combat Status Review Tribunal] process and declared no longer an enemy combatant . . . these petitioners are correct, as a formal, legal matter, in their insistence that the issue presented [in] this case not before the Court of Appeals.").  Rather, the Appeals concern exclusively, in the case of Khalid, whether grounds for habeas relief for enemy combatants could be found in the United States Constitution, United States statute, or international law and, in the case of In re Guantánamo Detainees, whether detainees have rights under the Geneva Convention or the Fifth Amendment.  See Motion for Order to Show Cause at 15; see generally Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005), In re Guantánamo Detainees Cases, 355 F. Supp. 2d 443 (D.D.C. 2005).  While Petitioner certainly has such rights, Petitioner need not rely on them here because the government's lack of any legal authority to detain Petitioner provides separate and sufficient basis for requiring Petitioner's immediate release.

> Unlike petitioners in the Appeals – who rely upon Constitutional, federal or international law – Petitioner's claim rests primarily on the Government's threshold obligation to point to some lawful basis for imprisonment.[9]  This obligation arises under the common law of *habeas corpus* that long predated our Constitution and exists independently of it.  "*Habeas corpus* is," as the Supreme Court explained, "a writ antecedent to statute, … throwing its root

---

[8] Respondents admit that Petitioner is not an enemy combatant.  Opp. Br. at 3.  Respondents' use of the Orwellian term "NLEC", an acronym for "no longer enemy combatant" is misleading.  The government's own definition of enemy combatant states that a person is an enemy combatant if he was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners."  A decision that a person is not, today, an enemy combatant therefore necessarily means that he did not, in the past, support such groups or engage in such acts.

[9] As discussed herein, Khalid does not address this issue, because it pertains only to enemy combatants.

15

deep into the genius of our common law." Rasul, 124 S. Ct. at 2692 (quoting Williams v. Kaiser, 323 U.S. 471, 484 n.2 (1945)). This ancient writ is the right to require that the executive "show cause" for imprisonment. See 28 U.S.C. § 2243. Authorities have long acknowledged that the centerpiece of the common-law writ is its first-instance requirement that the Executive justify detention by pointing to law or adjudication. See 1 W. Blackstone, Commentaries on the Laws of England 132-33 (1765) (in order to make imprisonment lawful, there must be a written warrant that "express[es] the causes of the commitment, in order to be examined into (if necessary) upon a *habeas corpus*. If there be no cause expressed, the goaler is not bound to detain the prisoner….[I]t is unreasonable to send a prisoner, and not to signify withal the crimes alleged against him."); 28 U.S.C. § 2243. This rule has been acknowledged by our courts from the beginning of the Republic, and by English courts long before.

In Ex parte Bollman, 8 U.S. 75 (1807), the Supreme Court's grant of habeas relief did not depend on any finding of a violation of the Constitution or statute or regulation. The Court ordered the prisoners discharged simply because the Government had not demonstrated sufficient factual and legal cause for the detentions. Id. at 125, 136-137. The same was true in Ex parte Burford, 7 U.S. 448 (1806), where the Supreme Court issued a writ of habeas corpus and discharged a federal prisoner who had been committed to the custody of federal marshal. The prisoner pointed to no federal statute or constitutional provision violated by his detention. His sole claim was that the Government had not justified detention by some cause in fact or law. The Supreme Court ordered him discharged. Id. at 453.

Here, the government can provide no legally cognizable basis for Petitioner's continued detention. The only justification the government can offer for imprisoning men at Guantánamo Bay is the Executive's purported authority to detain "enemy combatants," and, as

16

discussed above, Respondents have already admitted that Petitioner is <u>not</u> an enemy combatant and thus should never have been detained in the first instance.  Nor can Respondents provide any basis for the continued imprisonment of <u>non</u>-enemy combatants.  Although Respondents have asserted they possess a vague "wind[ing] up" power justifying the continued detention of men that have been imprisoned based upon Respondents' improper determination that they are enemy combatants, Judge Robertson has already rejected that theory, finding it to have "no basis . . . other than the Executive's assertion of it."  <u>See</u> Judge Robertson's August 19, 2005 Order at 3 in <u>Qassim</u>.  Respondents' "wind up" theory was not in any event raised in either of the Appeals, removing any basis whatsoever to stay these proceedings pending decisions in those Appeals.

       The government can have no other motivation for requesting a stay than to further delay Petitioner's release, which it has already delayed by more than eight months.  Respondents have failed to articulate any reasonable basis for a stay, which would be counter to the interests of justice and petitioner's undeniable right to have his Petition heard.  <u>See</u> <u>Rasul</u> 124 S. Ct. at 2698.  Respondent's motion for a stay should therefore be denied.

## CONCLUSION

For the foregoing reasons and for any other reason that may become known to the Court, Petitioner respectfully requests that 1) Respondents' motion for order to show cause why this case should not be dismissed for lack of proper "next friend" standing be denied and 2) Respondents' motion to stay proceedings pending the appeals In re Guantánamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005) and Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005), be denied.

Dated: December 2, 2005

Respectfully submitted,

Counsel for Petitioner Zakirjan:

CLEARY GOTTLIEB STEEN & HAMILTON LLP


By:_____/s/_____
         Jonathan I. Blackman (NY3846)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Of Counsel:
   Christopher P. Moore (NY4936)
   John Van Sickle (NY6487)


CENTER FOR CONSTITUTIONAL RIGHTS
Barbara Olshansky (NY0057)
Tina Monshipour Foster (NY5556)
Gitanjali S. Gutierrez (NY1234)
666 Broadway, 7th Floor
New York, New York 10012
Tel.: (212) 614-6437
Fax: (212) 614-6499