# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOES 1-570,<br>      Unidentified Detainees<br>      Guantanamo Bay Naval Station<br>      Guantanamo Bay, Cuba, | ) )<br>)<br>)<br>)<br>) |  |
|  |  |  |
|       Petitioners, | )<br>) |  |
| v. | ) | Civil Action No. 05-CV-0313 (CKK) |
|  | ) |  |
| GEORGE W. BUSH,<br>   President of the United States, *et al.,* | )<br>) |  |
|       Respondents. | )<br>)<br>) |  |

**MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS
OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS PENDING
RELATED APPEALS AND MEMORANDUM IN SUPPORT**

**INTRODUCTION**

The attorneys purporting to represent "John Does 1-570" are making an unprecedented attempt to pursue a petition for habeas corpus on behalf of nameless "clients" who have not consented to the petition. The attorneys' endeavor to interject themselves as advocates for unidentified detainees held at the United States Naval Base at Guantanamo Bay, Cuba is improper, unnecessary, and should be dismissed. In addition to the fact that the attorneys have not been authorized by the detainees, whom they do not know, to file this habeas petition, this action more closely resembles a Freedom of Information Act ("FOIA") lawsuit than a proper habeas corpus petition in that the petition is primarily aimed at retrieving information – the identities of the detainees. As a result, the petition should be dismissed due to the attorneys' failure to first exhaust the administrative remedies available under FOIA. Alternatively, the petition at most is a thinly veiled attempt by the attorneys to anoint themselves as "next friends" to the unidentified detainees. The attorneys, however, lack a significant relationship with the detainees and fail to establish that the detainees are unable to obtain court access themselves, both of which are prerequisites for litigating as next friends. Thus, the Court has no jurisdiction over this petition because it is not signed and verified by either the detainees seeking relief or their proper next friends.

Further, the petition raises claims that have been briefed and argued by the parties in the coordinated Guantanamo Bay detainee cases, and have been addressed by Judge Leon in the

Khalid and Boumediene cases[1] and by Judge Green in eleven of the pending coordinated cases.[2]

The petition should be dismissed on the merits for the reasons contained in respondents' briefing

in the coordinated cases.  Accordingly, respondents hereby incorporate herein respondents'

Response to Petitions for Writ of Habeas Corpus and Motion to Dismiss or for Judgment as a

Matter of Law and Memorandum in Support, filed in In re Guantanamo Detainee Cases on

October 4, 2004, attached as Exhibit A.  While the petition should be dismissed for the foregoing

reasons, the Court, at a minimum, should stay this action pending the resolution of the appeals of

decisions in the other Guantanamo Bay detainee cases that adjudicated issues common to the

merits issues raised in the petition in this case.

## ARGUMENT

I.    **ATTORNEYS MAY NOT FILE LAWSUITS USING FICTITIOUS NAMES ON BEHALF OF UNKNOWN CLIENTS WHO HAVE NOT CONSENTED TO REPRESENTATION.**

Although not specifically addressed in the rules governing habeas corpus proceedings,

parties instituting an action in federal district court generally are required to identify themselves

by name in their pleadings.  Cf. Fed. R. Civ. P. 17(a) (indicating that "[e]very action shall be

prosecuted in the name of the real party in interest."); Fed. R. Civ. P. 10(a) (mandating that "[i]n

the complaint the title of the action shall include the names of all the parties.").  In exceptional

cases, courts permit plaintiffs to file actions anonymously using fictitious names in order to

---

[1] See Khalid v. Bush, No. 04-CV-1142 (RJL) and Boumediene v. Bush, No. 04-CV-1166 (RJL), 2005 WL 100924 (D.D.C. Jan. 19, 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar. 2, 2005).

[2] See In Re Guantanamo Detainee Cases, No. 02-CV-0299 (CKK), et al., 2005 WL 195356 (D.D.C. Jan. 31, 2005), petition for interlocutory appeal granted, No. 05-8003 (D.C. Cir. Mar. 10, 2005).

2

protect their privacy interests or to avoid physical harm.  See, e.g., Doe v. Frank, 951 F.2d 320,

324 (11th Cir. 1992) ("A plaintiff should be permitted to proceed anonymously only in those

exceptional cases involving matters of a highly sensitive and personal nature, real danger of

physical harm, or where the injury litigated against would be incurred as a result of the disclosure

of the plaintiff's identity.").  In such cases, the plaintiffs nevertheless are "real and specific

aggrieved individuals" whose true identities are known by the attorneys representing them.  See,

e.g., Roe v. Ingraham, 364 F. Supp. 536, 541 n.7 (S.D.N.Y. 1973) (plaintiffs' attorneys knew the

identities of their clients and represented to the court that the fictitious names did actually

represent real and specific people); 2 James Wm. Moore et al., Moore's Federal Practice, §

10.02[2][c][i] (3d ed. 2004) (explaining that "[t]he true identities of plaintiffs using fictitious

names usually are known by the attorneys representing their interest").  Courts often require

anonymous plaintiffs to file their true identities with the court under seal to verify their

legitimacy and to determine the res judicata and collateral estoppel effect of a judgment in the

case.  See Ingraham, 364 F. Supp. at 541 n.7; Moe v. Dinkins, 533 F. Supp. 623, 627 (S.D.N.Y.

1981) (allowing intervenors to use fictitious names because they and their counsel submitted

affidavits signed in their own names attesting that they were real and aggrieved parties-in-

interest).

     In the case at hand, the circumstances do not warrant allowing the attorneys to pursue a

petition for the writ of habeas corpus on behalf of anonymous petitioners.[3]  This action is

---

     [3]  Respondents are aware that Judge Urbina, on behalf of Chief Judge Hogan, granted
Petitioners' Motion to Proceed with a Petition For a Writ of Habeas Corpus Using Fictitious
Names ("Motion to Proceed") on the same day (February 10, 2005) that the petition and Motion
to Proceed were filed and before respondents had an opportunity to oppose the motion.  The
Motion to Proceed appears to have been granted merely as a prerequisite to enable the petition to

fundamentally different from the typical case where a real and identifiable plaintiff who is known

to his attorneys files suit anonymously to protect his privacy or safety.  Here, the attorneys are

making an unprecedented attempt to proceed with fictitious names, not out of concern for the

privacy or physical well-being of the petitioners, but rather because the attorneys themselves

simply do not know the identities of the parties they are purporting to represent.  As

demonstrated, the failure of an attorney to know the names of his own clients is not a valid basis

to allow the case to be litigated with fictitious names.  In fact, the attorneys' failure to know the

names of the petitioners prevents them from verifying to the Court that the petitioners are real

and specific aggrieved parties and precludes the Court from determining the preclusive effect of a

judgment in this case.

     Although the attorneys blame the Government for their failure to know the identities of

the petitioners, this current unauthorized petition using fictitious names is, nevertheless, not

necessary for the detainees to be able to institute habeas proceedings in federal court.  As

discussed *infra*, the detainees held by the Military at Guantanamo Bay are not being held

"virtually incommunicado."  To the contrary, the detainees can send and receive mail, have been

notified of their ability and are availing themselves of the opportunity to submit habeas petitions

to the Court, and have already filed dozens of petitions, with and without next friends, through

---

be filed despite its noncompliance with Local Rule 5.1(e)(1) (requiring that the "first filing on
behalf of a party shall have in the caption the name and full residence address of the party"), and
does not prejudice respondents' ability to oppose both the Motion to Proceed and the propriety of
the petition.  See Doe v. Shakur, 164 F.R.D. 359, 360 (S.D.N.Y. 1996) (explaining that a
preliminary order on an ex parte application allowing plaintiff to file a complaint under seal did
not establish that the entire lawsuit could be prosecuted under a pseudonym nor did it foreclose
defendants from subsequently challenging plaintiff's use of a pseudonym).  Respondents herein
oppose the Motion to Proceed and demonstrate that the petition should be dismissed.

counsel.  See Section III.A., *infra*.  Clearly, the detainees who wish to file habeas petitions can voluntarily avail themselves of one or more of the several avenues available for them to pursue that relief.

The cases cited by the attorneys to support their request to proceed with fictitious names — Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971) and Fludd v. United States Secret Serv., 102 F.R.D. 803 (D.D.C. 1984) — are unavailing.  See Memorandum of Points and Authorities in Support of Petitioners' Motion to Proceed with a Petition for a Writ of Habeas Corpus Using Fictitious Names ("Memorandum in Support of Motion to Proceed") at 11.  Each of those cases allowed counsel to proceed with fictitious names for *defendants* who were unknown to plaintiffs' attorneys.  Here, however, counsel has pointed to no precedent where attorneys were allowed to prosecute a case on behalf of anonymous *plaintiffs* whose specific identities were entirely unknown to the attorneys.  Indeed, such a precedent would be difficult to find given the fact that litigating on behalf of unknown plaintiffs would require the filing of a lawsuit without consent from those plaintiffs, which is another fundamental defect of this habeas petition.  The attorneys pursuing this petition admit they have never met with and do not know the unidentified petitioners.  See Declaration by Attorney Barbara Olshansky, ¶¶ 6, 11.  Accordingly, the petitioners have not authorized these attorneys to represent them or file this petition on their behalf.  Filing a suit without a client's permission is improper, sanctionable conduct, and warrants dismissal of the suit.  See Cimeo v. East Whiteland-Tredyffrin Joint Transportation Authority, 151 F.R.D. 55, 58-59 (E.D. Pa. 1993) (finding that attorney was subject to sanctions under Rule 11 for filing a lawsuit without his client's authorization).  As a

result, the Court should reconsider its initial ruling on petitioners' Motion to Proceed, deny the

motion, and, in any event, dismiss this petition altogether.

**II.    THE PETITION SHOULD BE DISMISSED BECAUSE ITS PRIMARY PURPOSE IS ACCESS TO A LIST OF GUANTANAMO BAY DETAINEES AND NOT THE TRADITIONAL HABEAS RELIEF OF RELEASE FROM CUSTODY.**

Perhaps recognizing the impropriety of conducting litigation on behalf of unknown

individuals who are unaware of the litigation and who have not consented to it, the attorneys

have filed what is, in essence, chiefly a complaint in the nature of a FOIA action for the names of

detainees at Guantanamo Bay, styled as a habeas corpus petition.  As much as the attorneys

would like access to a list of detainees with the hope that, after soliciting them, at least some of

the unidentified detainees might eventually wish to file a habeas corpus petition and select these

attorneys to represent them, principles under FOIA and administrative law indicate that the

attorneys cannot jump the gun and pursue this information in a lawsuit, let alone in a habeas

corpus petition, but first must exhaust the administrative avenue of a legitimate FOIA request.

The attorneys' petition and briefs clearly indicate that the petition is predominantly an

attempt to obtain access to a list of detainees.  The petition's prayer for relief asks the Court to

"[o]rder Respondents to release Petitioners' names and identifying information . . . ."  Petition

for Writ of Habeas Corpus, Prayer For Relief ¶ 4.  If they obtain the detainees' names and

identifying information, the attorneys explain that after they consult with each detainee and

obtain their consent to proceed with a habeas petition, they will file a new petition using the

detainee's true name and "that person will no longer be a petitioner in the above-captioned

matter."  Memorandum in Support of Motion to Proceed at 3 n.3, 12 n.9; see also Olshansky

Decl., ¶ 26.  Accordingly, if the attorneys merely obtained the information they are seeking in

6

this petition and no other relief, and the detainees consented to their representation, there would be no remaining John Doe petitioners in this case and this petition would be dismissed in its entirety.  Clearly, the primary purpose of this petition is the disclosure of information — namely a list or other identification of detainees.

Petitions for habeas corpus, however, are not properly used to obtain information.  To the contrary, the purpose of the writ of habeas corpus is to seek the release of a petitioner from improper custody or to afford the petitioner a new trial.  See, e.g., Herrera v. Collins, 506 U.S. 390, 403 (1993) (explaining that "[t]he typical relief granted in federal habeas corpus is a conditional order of release unless the State elects to retry the successful habeas petitioner"); Allen v. McCurry, 449 U.S. 90, 98 n.12 (1980) (stating that "the unique purpose of habeas corpus [is] to release the applicant for the writ from unlawful confinement.").  While the petition also requests that petitioners be released from their detentions, the additional requests for the information pertaining to the identities of the detainees are improperly included in this habeas petition and illustrate the attorneys' attempt to bypass the initial necessary step of seeking the names through proper administrative process.

Although the Freedom of Information Act provides members of the public with the ability to ultimately file a lawsuit under the Act, before doing so, a plaintiff first must exhaust the administrative remedy of making a FOIA request to the federal agency that has access to the records sought.  See, e.g., Wilbur v. Central Intelligence Agency, 273 F. Supp. 2d 119, 123 (D.D.C. 2003) (finding that "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA."); Muhammad v. U.S. Bureau of Prisons, 789 F. Supp. 449, 450 (D.D.C. 1992) (dismissing inmate's FOIA suit as premature for failure to request the documents directly

7

from the agencies).  To constitute an official FOIA request, the request must comply with published administrative procedures.  See 5 U.S.C. § 552(a)(3)(A)(ii); In Re Motion to Compel Filed By Dudley M. Steele, 799 F.2d 461, 466 (9th Cir. 1986).  Both the Department of Defense and the Navy require a FOIA request to make some reference to the FOIA statute or to implementing FOIA regulations.  See 32 C.F.R. § 286.3 (Department of Defense's definition of a FOIA request requiring "[a] written request . . . that either explicitly or implicitly invokes the FOIA, DoD Directive 5400.7, this part, or DoD Component supplementing regulations or instructions."); 32 C.F.R. § 701.28 (Department of Navy's definition of a FOIA request requiring "[a] written request . . . that either explicitly or implicitly invokes the FOIA by citing DoD FOIA regulations or the instructions in this part.").

The attorneys in this case have not submitted a valid FOIA request.  Although the attorneys sent a letter to the Secretary of the Navy requesting the names of the detainees, see 12/17/04 Letter from B. Olshansky to G. England (attached to Petition as Ex. F), the request was not made specifically under FOIA, it was therefore not treated as a FOIA request, and thus fails to exhaust that administrative remedy.  See Blackwell v. E.E.O.C., No. 2:98-CV-38-BO(2), 1999 WL 1940005, at *2 (E.D.N.C. 1999) (finding that letter was not clearly and prominently identified as a FOIA request and therefore failed to exhaust administrative remedies); Liotta v. Comptroller of the Currency, No. 92-2038 SSH, 1993 WL 37494, at *1-*2 (D.D.C. 1993) (finding that request for documents that did not specifically invoke agency FOIA regulations did not exhaust administrative remedies and thus warranted dismissal of FOIA complaint).  Even though the attorneys have not filed an explicit FOIA lawsuit, as demonstrated, the habeas petition is the functional equivalent of a FOIA suit given that its primary purpose is to obtain information

8

regarding the identities of the detainees.  As a result, the petition should be dismissed because the attorneys have not yet exhausted the administrative remedy of submitting a valid FOIA request seeking the identities of the detainees.

## III.    IF CONSTRUED AS SEEKING PROPER HABEAS RELIEF, THE PETITION SHOULD BE DISMISSED BECAUSE PETITIONERS LACK STANDING.

Even if the Court were to accept that this petition seeks proper habeas relief pursuant to 28 U.S.C. § 2241, this case should be dismissed because the purported petitioners lack standing to litigate this action.  It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue" under Article III of the Constitution.  Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).  The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves."  Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal quotations omitted).  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  In this case, the anonymous "John Doe" detainees are the persons "for whose relief the [petition] is intended," but they have not "signed and verified" the petition.  See Petition.  Thus, petitioners can only acquire proper standing if the petition was filed "by someone acting in [their] behalf," or an appropriate "next friend."  As

9

demonstrated below, the attorneys who filed this petition are not proper next friends because they have failed to demonstrate that the detainees have inadequate access to the court, and because the attorneys lack any relationship with the detainees and cannot be considered to be acting in their best interests.

Next friend standing has most often been invoked "on behalf of detained prisoners who are unable, usually because of mental incompetence or inaccessibility, to seek relief themselves." Whitmore, 495 U.S. at 162. The next friend doctrine was designed to ensure that individuals with only a "generalized interest in constitutional governance" could not "circumvent the jurisdictional limits of Art. III simply by assuming the mantle of 'next friend.'" Id. at 164. See also id. at 166 ("'However friendly . . . and sympathetic for [a prisoner's] situation [they may be]; however concerned [they] may be lest unconstitutional laws be enforced, and however laudable such sentiments are, the grievance they suffer and feel is not special enough to furnish a cause of action in a case like this.'") (quoting Gusman v. Marrero, 180 U.S. 81, 87 (1901)). A next friend does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest." Id. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person. See id. Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he

10

> seeks to litigate, and it has been further suggested that a "next
> friend" must have some significant relationship with the real party
> in interest.

Id. at 163-64 (internal citations omitted).  The putative next friend bears the burden of clearly

establishing his status and justifying the exercise of the court's jurisdiction over the action.  See

id. at 164.  Petitioners have failed to meet their burden with respect to each prong of the

Whitmore test.

> **A.    The Detainees Held by the U.S. Military at Guantanamo Bay Have Adequate
> Access to the Court And Are Able to Litigate Their Own Cause.**

The attorneys who filed this action on behalf of the anonymous "John Doe" detainees

have failed to demonstrate that each detainee is unable to challenge the legality of his detention

in federal court, if he so desires, under the first prong of the Whitmore test.  The attorneys merely

advance the conclusory assertions that respondents "have held Petitioners *incommunicado* and in

physical isolation, and, specifically, have deliberately deprived them of meaningful access to the

courts or counsel."  Petition, ¶ 9.  However, bare allegations are insufficient to establish standing.

"It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in

the pleadings,' but rather 'must affirmatively appear in the record.'"  FW/PBS, Inc. v. City of

Dallas, 493 U.S. 215, 231 (1990) (citations omitted).  The record in this case demonstrates that

petitioners are far from "incommunicado" and without access to the court or counsel.  Indeed,

respondents have taken affirmative steps to ensure that Military detainees are able to send and

receive mail and are aware of their right to file habeas petitions in federal court.

The Military detainees have the opportunity to send mail to family, friends, and other

representatives who can secure counsel on their behalf.  As explained in the Declaration of First

11

Lieutenant Wade M. Brown, attached as Exhibit B, the Military provides each detainee with stationery, envelopes and a pen so that they may write letters and postcards to family and friends which are stamped and mailed by the Military on behalf of the detainees. <u>See</u> Brown Decl., ¶ 5. The Military also processes and delivers mail that is sent to detainees from private individuals outside Guantanamo Bay. <u>See id.</u> In addition, it is standard practice for delegates from the International Committee for the Red Cross ("ICRC") periodically to visit detainees at Guantanamo and to send and deliver mail on the detainees' behalf. <u>See id.</u>, ¶ 6. A detainee's mail privileges cannot be removed for any reason, including disciplinary or interrogation purposes. <u>See id.</u>, ¶ 2. Over 14,000 pieces of detainee mail have entered or exited Guantanamo Bay in the past six months. <u>See id.</u>, ¶ 3. Thus, petitioners' allegation that respondents have caused "virtually complete elimination of any contact between Petitioners and the outside world," Petition, ¶ 18, is demonstrably false. <u>See</u> <u>Coalition of Clergy, Lawyers, and Professors v. Bush</u>, 310 F.3d 1153, 1160 (9th Cir. 2002) (finding that Guantanamo Bay detainees are not held incommunicado and recognizing that detainees can write to friends and family members and that family members have filed habeas petitions).

There is also no basis for the attorneys' claim that "Petitioners have been denied the ability to protect or to vindicate their rights under *Rasul v. Bush* and to challenge their detention by filing petitions for habeas corpus in federal court, and to assert other rights under domestic and international law." Petition, ¶ 36. To the contrary, measures have been instituted that are specifically aimed at informing detainees of their right to file petitions for habeas corpus. In July 2004, shortly after the <u>Rasul</u> decision, the Department of Defense issued a notification to all of its detainees at Guantanamo Bay regarding the upcoming review of their enemy combatant status

12

through the Combatant Status Review Tribunal ("CSRT") process, and advising them of the

jurisdiction of the United States courts to consider petitions challenging the legality of their

detention.  The July notification informed the detainees that they would be informed about the

procedures available to them should they seek to challenge their detention in federal court.  See

Declaration of Commander Teresa A. McPalmer, ¶ 3, Ex. A (attached as Exhibit C).  In

December 2004, DoD began issuing another notification to detainees as they were confirmed to

be enemy combatants through the CSRT process.  This notification informs them that, although

the CSRT had determined them to be enemy combatants, they could nevertheless be released if

an Administrative Review Board ("ARB") determined that they no longer pose a threat to the

United States or its allies.[4]  See id., ¶ 4.  The notification advises detainees of the ARB

procedures,[5] and further informs them of the opportunity to submit a petition for writ of habeas

corpus in federal court:

> You may ask a civilian judge to look at the lawfulness of your
> detention through a process called a *petition for a writ of habeas
> corpus*.  You may ask a friend or family member or a lawyer to file
> such a petition with the court.  If you do not have a lawyer or a

---

[4]  The detainees whom the President has ordered are eligible to be tried by Military
Commission subject to the Military Order of November 13, 2001 are not eligible for
consideration by an ARB.  See McPalmer Decl., ¶ 5.  The notification provided to these
detainees informs them that the CSRT determined them to be enemy combatants and that they
can challenge the lawfulness of their detention by filing a petition for writ of habeas corpus in
federal court.  See id., ¶ 5, Ex. C.

[5]  DoD, through coordination with the Department of State, is also inviting detainees'
home governments to submit information on their behalf for use in the ARB proceedings, and is
requesting that the home governments notify detainees' relatives of the opportunity to submit any
relevant information through the home governments' submissions.  See Memorandum dated
September 14, 2004 regarding Implementation of Administrative Review Procedures for Enemy
Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba, Encl. (4), available online at
<<http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf>>.

13

family member or friend who could file this petition for you, you
may file your own petition.  According to prior court rulings,
petitions may be sent to:

> United States District Court for the District of Columbia
> 333 Constitution Avenue, N.W.
> Washington, DC 20001

> If you do not wish to file a petition, you do not have to do so.
> However, a court will only consider your case if you file a petition.

See id., Ex. B.  After two notifications and the ongoing opportunity to send mail to family,

friends, and the court, the detainees cannot reasonably be "either unaware of their ability to

challenge their detention in the United States Courts, or unable to take advantage of that right."

Petition, ¶ 36.

Nevertheless, the Department of Defense is taking additional measures to provide

detainees with the means to file habeas petitions in federal court, if they choose to do so.  DoD is

currently preparing a supplemental information sheet that is intended to be provided to those

detainees who inquire about the availability of a lawyer for purposes of filing a habeas petition.[6]

See McPalmer Decl., ¶ 6.  DoD is presently undertaking a process to obtain names of attorneys

who are willing to represent detainees in filing habeas petitions.  These names will be placed on

the supplemental notification sheet that will be provided to detainees who ask about a lawyer.

These detainees will be free to choose the attorneys they want to represent them and contact them

---

[6] DoD began the process of preparing this supplemental information sheet prior to the
filing of the instant petition.  See 1/14/05 Letter from B. Boyle to B. Olshansky (attached to
Petition as Ex. G).

14

by mail directly.  See id.  This process will allow detainees to exercise their own prerogative in

deciding whether and how to challenge their detention.[7]

Petitioners' allegations of inaccessibility are also belied by the number of detainees who

have already filed petitions for habeas corpus.  Many detainees are availing themselves of the

opportunity to submit their own *pro se* petitions.  Others have secured counsel to file habeas

petitions directly on their behalf, or obtained the assistance of relatives or friends to act as

legitimate "next friends" who, with the assistance of counsel, have filed habeas petitions.  Within

just a few weeks after the Supreme Court's decision in Rasul, there were pending in this Court 13

habeas lawsuits on behalf of more than 60 Guantanamo detainees.  To date, there are over 40

petitions for habeas corpus pending on behalf of more than 130 detainees.  The vast majority of

these detainees have filed petitions through other individuals acting as legitimate next friends —

family members,[8] an attorney who already represented the detainee in pending military

---

[7] Once detainees or their legitimate next friends have consented to representation by
private counsel in habeas corpus proceedings, DoD has permitted the detainees to personally
meet with attorneys who comply with appropriate security procedures.  See Amended Protective
Order and Procedures for Counsel Access to Detainees at the United States Naval Base in
Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, dated November 8, 2004.

[8] Hicks v. Bush, No. 02-CV-0299 (CKK); Al-Odah v. United States, No. 02-CV-0828
(CKK); Habib v. Bush, 02-CV-1130 (CKK); Kurnaz v. Bush, 04-CV-1135 (ESH); O.K. v. Bush,
No. 04-CV-1136 (JDB); Begg v. Bush, No. 04-CV-1137 (RMC); Khalid v. Bush, No. 04-CV-
1142 (RJL); El-Banna v. Bush, No. 04-CV-1144 (RWR); Gherebi v. Bush, No. 04-CV-1164
(RBW); Boumediene v. Bush, No. 04-CV-1166 (RJL); Anam v. Bush, No. 04-CV-1194 (HHK);
Almurbati v. Bush, No. 04-CV-1227 (RBW); Abdah v. Bush, No. 04-CV-1254 (HHK); Belmar
v. Bush, No. 04-CV-1897 (RMC); Paracha v. Bush, No. 04-CV-2022 (PLF); Al-Marri v. Bush,
No. 04-CV-2035 (GK); Zemiri v. Bush, No. 04-CV-2046 (CKK); Deghayes v. Bush, No. 04-
2215 (RMC); Mustapha v. Bush, No. 05-CV-0022 (JR); Abdullah v. Bush, No. 05-CV-0023
(RWR) (Hani Saleh Rashid Abdullah); Al Mohammed v. Bush, No. 05-CV-247 (HHK); El-
Mashad v. Bush, No. 05-CV-270 (JR); Al-Adahi v. Bush, No. 05-CV-280 (GK); Al Joudi v.
Bush, No. 05-CV-301 (GK); Al-Anazi v. Bush, No. 05-CV-345 (JDB); Batarfi v. Bush, No. 05-
CV-409 (EGS); Kabir v. Bush, No. 05-CV-431 (RJL); Qayed v. Bush, No. 05-CV-454 (RMU);

commission proceedings,[9] and fellow detainees.[10]  Other detainees have filed petitions through

direct contact with an attorney, presumably in most cases by referral from another detainee.[11]

Finally, at least 20 *pro se* petitions are in the process of being sent from Guantanamo Bay to the

Court.  <u>See</u> McPalmer Decl., ¶ 4.

As the record demonstrates, the detainees are not isolated in a manner that necessitates

the extraordinary step of authorizing purported next friends wholly unknown to them to pursue

claims in their behalf.  The attorneys who are seeking next friend status have failed to

demonstrate that the petitioners are "incommunicado" or have inadequate access to the court, as

required by <u>Whitmore</u>.  Thus, petitioners lack proper standing to sue, and this Court should

dismiss the petition for lack of jurisdiction.

**B.     The Attorneys Who Filed The Petition Have *No* Relationship, Much Less a Significant Relationship, With The Anonymous "John Doe" Detainees, and Have Failed to Demonstrate That They Act In Each Detainee's Best Interests.**

The attorneys who filed this petition are also not proper next friends to the "John Doe"

detainees because they have not established a "significant relationship" with each detainee and

cannot demonstrate that they are "truly dedicated to the best interests" of their purported clients,

---

<u>Al-Shihry v. Bush</u>, No. 05-CV-490 (CKK); <u>Aziz v. Bush</u>, No. 05-CV-492 (JR); <u>Al-Oshan v. Bush</u>, No. 05-CV-520 (GK); and <u>Tumani v. Bush</u>, No. 05-CV-526 (RMU).

   [9]  <u>Hamdan v. Rumsfeld</u>, No. 04-CV-1519 (JR).

   [10]  <u>Sliti v. Bush</u>, No. 05-CV-429 (RJL) and <u>M.C. v. Bush</u>, No. 05-CV-430 (ESH).

   [11]  <u>Al Qosi v. Bush</u>, No. 04-CV-1937 (PLF); <u>Abdullah v. Bush</u>, No. 05-CV-0023 (RWR) (Rami Bin Saad Al-Oteibi); <u>Al-Wazan v. Bush</u>, No. 05-CV-329 (PLF); <u>Alhami v. Bush</u>, No. 05-CV-359 (GK); <u>Ameziane v. Bush</u>, No. 05-CV-392 (ESH); and <u>Qassim v. Bush</u>, No. 05-CV-497 (JR).

as required under the second prong of the <u>Whitmore</u> test.[12]  <u>See</u> <u>Whitmore</u>, 495 U.S. at 163-64.

The requirement that a next friend have a "significant relationship" with the real party in interest

is necessary to ensure that a next friend will genuinely pursue the interests of the person in

custody (who at all times remains the real party in interest) and will not merely use the litigation

as a vehicle for advancing a broader agenda.  As then-Justice Rehnquist explained, "however

worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of

making the actual defendant a pawn to be manipulated on a chessboard larger than his own case."

<u>Lenhard v. Wolff</u>, 443 U.S. 1306, 1312 (1979) (Rehnquist, J., in chambers); <u>see also</u> <u>Rosenberg</u>

<u>v. U.S.</u>, 346 U.S. 271, 291-92 (1953) (Jackson, J., concurring with five other Justices) ("That

such disorderly intervention [by strangers to the prisoner] is more likely to prejudice than to help

the representation of accused persons in highly publicized cases is self-evident.").

---

[12]  The majority of Circuits that have been confronted with the issue of next friend
standing have construed <u>Whitmore</u> to require a "significant relationship" as part of the second
prong.  <u>See</u> <u>Hamdi v. Rumsfeld</u>, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus most
faithfully understood as requiring a would-be next friend to have a significant relationship with
the real party in interest."); <u>Coalition of Clergy</u>, 310 F.3d 1153, 1162 (9th Cir. 2002)
("Combining the 'significant relationship' requirement, however, with the 'dedicated to best
interests' consideration . . . meets the concerns the <u>Whitmore</u> Court addressed."); <u>T.W. v.</u>
<u>Brophy</u>, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the <u>Whitmore</u>
case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be
the plaintiff's next friend – that he 'must have some significant relationship with the real party in
interest'"); <u>Amerson v. Iowa</u>, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under <u>Whitmore</u>, the "next
friend has [the] burden to establish . . . that she has some "significant relationship with [the] real
party in interest"); <u>Zettlemoyer v. Horn</u>, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he
<u>Whitmore</u> Court also . . . suggested that the party 'must have some significant relationship with
the real party in interest'").  Although the Eleventh Circuit questioned whether <u>Whitmore</u>
established "some significant relationship" as an independent requirement, it nevertheless noted
the importance of a relationship in demonstrating whether a putative next friend "can show true
dedication to the best interests of the person on whose behalf he seeks to litigate."  <u>Sanchez-</u>
<u>Velasco v. Secretary of the Dep't of Corrections</u>, 287 F.3d 1015, 1026-27 (11th Cir. 2002).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent."). Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers acting as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at 603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

Here, without any relationship with the detainees, the attorneys who purport to represent these unknown clients cannot demonstrate they are "truly dedicated to the[ir] best interests." Whitmore, 495 U.S. at 163. Although the attorneys allege that "[u]pon information and belief, each Petitioner desires to pursue in United States courts every available legal challenge to the lawfulness of his detention," Petition, ¶ 25, there is no reasonable basis for such a broad and

18

conclusory assertion.[13]  In truth, these purported "next friends" have no idea whether individual detainees actually desire to challenge their confinement by attempting to invoke the jurisdiction of the court of the United States – a Nation against which they have lately engaged in or supported hostilities – or which claims they would want to press.  Some detainees might support this action, while others might want nothing to do with our courts or American attorneys.  Furthermore, there is no reason to believe that detainees interested in litigation desire to be represented by the attorneys who filed this petition, with whom they have no relationship at all.  Indeed, the attorneys admit as much, since they are using this litigation to determine whether the detainees wish to seek habeas relief:

> Once counsel obtains the names and identifying information of the detainees, counsel will consult with each detainee, explain his right to file a habeas petition based on his individual circumstances, and *determine whether the detainee wants to proceed with the habeas action*.  At that point, counsel will pair the detainees who want to proceed with attorneys who will represent them on a pro bono basis and who will file claims on behalf of those individuals using the individuals' real names.  *In the unlikely event that any detainee does not wish to file a habeas petition, counsel will promptly notify the Government and the Court.*

Memorandum in Support of Motion to Proceed at 12, n. 9 (emphasis added).

---

[13]  Presumably, this allegation is based on Ms. Olshansky's declaration, which states:  "I have gained a good faith basis for believing that John Does Nos. 1-570 would file petitions challenging their detentions at Guantanamo were they able to do so, and that they are currently unable to do so."  Olshansky Decl., ¶ 2.  Considering that Ms. Olshanky admits that she has not been able to contact every detainee at Guantanamo Bay, or a close family member of every detainee, see id., ¶¶ 6, 11, the source of her "good faith basis" that every detainee desires to avail himself of his right to seek habeas relief through the American legal system is merely her clearly subjective belief.

The attorneys, in particular, the Center for Constitutional Rights, imply that their past involvement in representing other detainees demonstrates that they are acting in the best interests of each detainee at Guantanamo Bay. <u>See</u> Olshansky Decl., ¶¶ 2-7. The attorneys at most assert a "generalized interest in constitutional governance" that does not provide a predicate for "circumvent[ing] the jurisdictional limits of Art. III" under the next friend standing doctrine. <u>Whitmore</u>, 495 U.S. at 164. <u>See also</u> <u>Hamdi</u>, 294 F.3d at 605 (cautioning against permitting lawsuits filed by "someone who seeks simply to gain attention by injecting himself into a high-profile case" as he is "much more likely to be utilizing the real party's injury as an occasion for entry into policy-laden proceedings of all sorts"). Allowing attorneys to seek habeas relief for anonymous clients whom they have never met, and whose intents and desires are completely unknown to them, would open the floodgates to "intruders or uninvited meddlers" running to court in the name of the rights of unwitting strangers who may want to have nothing to do with them. <u>Whitmore</u>, 495 U.S. at 164. This is especially true in cases such as this, involving issues of public moment and concern. Although the attorneys here may be acting with good intentions, "[c]are and concern alone are not enough to create standing." <u>Feldman v. Youth Case of Utah, Inc.</u>, 345 F. Supp. 2d 1269, 1270 (D. Utah. 2004) (citing <u>Bear Lodge Multiple Use Ass'n v. Babbitt</u>, 175 F.3d 814 (10th Cir. 1999)) (denying next friend status to mother of friend of minor detained at youth facility because lacking "clear relationship"). The attorneys who filed this petition on behalf of the "John Doe" detainees at Guantanamo Bay are "stranger[s] to the detained persons and their case" who plainly do not qualify for next friend standing. <u>Whitmore</u>, 495 U.S. at 164 (citing <u>Rosenberg</u>, 346 U.S. at 291-92). <u>See also</u> <u>Sanchez-Velasco</u>, 287 F.3d at 1027 ("[N]o attorney should ever file a habeas petition in the name of an inmate he has not even

20

bothered to speak with, much less obtain permission from . . .").  Petitioners lack standing to

proceed in this Court, and the petition should be dismissed for want of jurisdiction.[14]

IV.    IF THE COURT DOES NOT DISMISS THE PETITION, THIS CASE SHOULD
       BE STAYED PENDING THE RESOLUTION OF THE APPEALS OF DECISIONS
       IN THE OTHER GUANTANAMO BAY DETAINEE CASES ADJUDICATING
       COMMON ISSUES.

       Although the substantive causes of action recited in the "John Doe" petition for the most

part mirror the claims in the habeas petitions filed by known detainees at Guantanamo Bay,[15] the

attorneys cannot be seeking relief on these grounds because, as explained above, once the

attorneys obtain their unknown client's name and identifying information, they will file a new

petition using his true name and "that person will no longer be a petitioner in the above-

captioned matter."  Memorandum in Support of Motion to Proceed at 3 n.3, 12 n.9; see also

Olshansky Decl., ¶ 26.  Thus, the "John Doe" detainees do not claim the substantive habeas relief

that they purportedly seek in this petition, and these claims should be dismissed.  To the extent

_____

[14]  The attorneys who filed this petition on behalf of the unknown "John Doe" detainees
also lack third-party standing.  To satisfy Article III requirements for third-party standing, a
would-be litigant must show that he personally has suffered an injury in fact.  See, e.g., Steel Co.
v. Citizens for a Better Environment, 523 U.S. 83, 102-04 (1998); Lujan v. Defenders of
Wildlife, 504 U.S. 555, 560-61 (1992).  The attorneys have suffered no injury of their own.
Furthermore, to establish third-party standing, a litigant must have "a close relation to the third
party" whose rights he invokes.  Powers v. Ohio, 499 U.S. 400, 411 (1991).  As a result, the
absence of any relationship between the attorneys and the detainees provides an independent
basis for rejecting third-party standing.

[15]  The petition asserts violations of petitioners' due process rights under the U.S.
Constitution, see Petition, ¶¶ 42-45; the Geneva Conventions and international law, see id.,
¶¶ 46-52; the Alien Tort Statute, see id., ¶¶ 53-59; and the Administrative Procedures Act, see
id., ¶¶ 66-72; as well as unlawful exercise of the Executive's authority to detain petitioners as
"enemy combatants," see id., ¶¶ 60-65.

21

that petitioners are really asserting these substantive claims,[16] and if the petition survives its fundamental jurisdictional defect, this case should nevertheless be stayed pending the outcome of the appeals of the other Guantanamo Bay detainee cases.

On January 19, 2005, Judge Leon granted respondents' motion to dismiss or for judgment in its entirety, concluding that constitutional protections do not extend to aliens outside sovereign United States territory, such as the detainees at Guantanamo Bay, and that the detainees also have no viable claims under U.S. Statutory law or international law or treaties.  See Khalid and Boumediene, 2005 WL 100924.  The Khalid and Boumediene cases are currently on appeal to the D.C. Circuit.  See Nos. 05-5062, 05-5063 (D.C. Cir.).

On January 31, 2005, Judge Green entered an order (and memorandum opinion) in eleven other of the pending Guantanamo Bay Detainee cases[17] denying in part and granting in part respondents' motion to dismiss or for judgment as a matter of law.  See In Re Guantanamo Detainee Cases, 2005 WL 195356.  Contrary to the prior decision of Judge Leon, Judge Green, inter alia, determined that constitutional "due process" protections apply to aliens detained at Guantanamo Bay and that the CSRT proceedings do not satisfy these due process requirements. Id. at *8-*31.  Judge Green also agreed with the decision of Judge Robertson in Hamdan v.

---

[16]  To the extent that a jury trial is requested, it is not available because petitions for habeas corpus are summary proceedings.  See 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require.").  See, e.g., Bean v. Calderon, 166 F.R.D. 452, 454 (E.D. Cal. 1996) ("[A] habeas petitioner is not entitled to a jury trial of his habeas allegations.").

[17]  Hicks, No. 02-CV-0299 (CKK); Al Odah, No. 02-CV-0828 (CKK); Habib, No. 02-CV-1130 (CKK); Kurnaz, No. 04-CV-1135 (ESH); O.K., No. 04-CV-1136 (JDB); Begg, No. 04-CV-1137 (RMC); El-Banna, No. 04-CV-1144 (RWR); Gherebi, No. 04-CV-1164 (RBW); Anam, No. 04-CV-1194 (HHK); Almurbati, No. 04-CV-1227 (RBW); and Abdah, No. 04-CV-1254 (HHK).

Rumsfeld, 344 F. Supp. 2d 152, 165 (D.D.C. 2004), appeal docketed, No. 04-5393 (D.C. Cir.

Nov. 16, 2004), and concluded that the Third Geneva Convention is "self-executing" and can

provide petitioners with a claim in a habeas action.  2005 WL 195356 at *31-*33.  Judge Green,

however, dismissed petitioners' remaining constitutional, statutory, international law, and treaty

claims.  Id. at *33-*34.

On February 3, 2005, respondents filed a motion seeking certification of the January 31,

2005 order for interlocutory appeal and filed a motion to stay all the Guantanamo Bay detainee

cases pending at that time.  Judge Green certified her January 31, 2005 decision for appeal and

stayed proceedings in the eleven cases in which the January 31, 2005 order was entered, "for all

purposes pending resolution of all appeals."  Judge Green left the decision whether to stay cases

other than the eleven to the individual judges in those cases.  See Order Granting in Part and

Denying in Part Respondents' Motion for Certification of Jan. 31, 2005 Orders and for Stay (Feb.

3, 2005) (Green, J.).  Judge Green denied petitioners' subsequent motion for reconsideration of

the stay order

> in light of the substantial resources that would be expended and the
> significant burdens that would be incurred should this litigation go
> forward, and . . . [in] recognition that a reversal of the Court's
> January 31, 2005 rulings would avoid the expenditure of such
> resources and incurrence of such burdens . . . .

See Order Denying Motion for Reconsideration of Order Granting Stay Pending Appeal (Feb. 7,

2005) (Green, J.).

On February 9, 2005, pursuant to Judge Green's certification, respondents filed a petition

for interlocutory appeal of the January 31, 2005 decision with the D.C. Circuit, see 28 U.S.C.

§ 1292(b), and requested that the appeal proceed on an expedited basis.  Further, petitioners in

23

the eleven cases subject to Judge Green's decision filed a cross-petition for interlocutory appeal

with the D.C. Circuit and petitioners in <u>Al-Odah</u>, No. 02-CV-0828 (CKK), appealed Judge

Green's stay order.[18]  In addition, as noted above, petitioners in <u>Khalid</u>, No. 04-CV-1142 (RJL),

and <u>Boumediene</u>, No. 04-CV-1166 (RJL), appealed Judge Leon's decision.  On March 10, 2005,

the D.C. Circuit accepted the interlocutory appeal and established a briefing schedule for the

appeal that concludes at the end of June 2005.  The Court also established a briefing schedule in

<u>Khalid</u> and <u>Boumediene</u> that also runs through June 2005.  The <u>Hamdan</u> case, as noted above, is

already on appeal to the D.C. Circuit, and oral argument in that case is currently scheduled for

April 7, 2005.

In light of these pending appeals, several of the cases pending at the time of Judge

Green's decision, but that Judge Green did not stay, have been stayed pending appeal.  <u>See</u>

<u>Mustapha</u>, No. 05-CV-22 (JR) (dkt. no. 7); <u>Deghayes</u>, No. 04-CV-2215 (RMC) (dkt. no. 7); <u>Al</u>

<u>Marri</u>, No. 04-CV-2035 (GK) (dkt. no. 26); <u>Abdullah</u>, No. 05-CV-23 (RWR) (dkt. no. 16).  As

Judge Kessler stated in her stay order in <u>Al Marri</u>,

> The opinions resolving Judge Leon's and Judge Green's cases
> encompass and discuss many of the precise issues raised in
> Respondents' Motion [to Stay]. Thus, until the Court of Appeals
> addresses these issues, the law in this Circuit is unsettled, since
> Judge Green and Judge Leon reached different conclusions about
> many of the issues before them. Requiring this case to proceed
> before appellate resolution of those cases therefore would involve
> an unnecessary expenditure of judicial resources.

---

[18]  Respondents in the eleven cases have also appealed a separate January 31, 2005 order
of Judge Green concerning the disclosure of certain classified information redacted from the
factual returns provided to counsel in the cases.

Id.  On March 11, 2005, respondents filed motions to stay pending appeal in all of the pending

habeas cases that were filed after Judge Green's January 31, 2005 decision issued.[19]

      If the Court determines that it has proper jurisdiction to hear this case and finds that the

"John Doe" detainees' substantive claims are validly asserted in this petition, the petition should

nevertheless be stayed pending the appeals of the other Guantanamo Bay detainee cases.  The

petition raises legal issues that were squarely addressed by the opinions in In re Guantanamo

Detainee Cases, Khalid, Boumediene and Hamdan and that are raised in the appeals, including:

(1) whether the petitioners have stated valid claims under the Fifth Amendment to the United

States Constitution and, if so, whether the procedures implemented by respondents to determine

the status of petitioners violate their Fifth Amendment rights, see Petition, ¶¶ 42-45; (2) whether

the petitioners have stated valid claims under the Third Geneva Convention, see id., ¶¶ 46-50;

and (3) whether the petitioners have stated valid claims based on various other legal theories,

including other Constitutional provisions, other international treaties, Army Regulation 190-8,

the Alien Tort Statute, the Administrative Procedure Act, and customary international law,

see id., ¶¶ 51-72.  It makes no sense for proceedings related to the merits of this case to go

forward when decisions from the D.C. Circuit on the related Guantanamo Bay detainee appeals

will determine the legal analyses applicable to Guantanamo Bay detainees' claims and, indeed,

whether and how such cases should proceed.  Thus, if the petition is not dismissed at this stage of

---

    [19]  Al-Mohammed, No. 05-CV-247 (HHK); El-Mashad, No. 05-CV-270 (JR); Al-Adahi,
No. 05-CV-280 (GK); Al Joudi, No. 05-301 (GK); Al Wazan, No. 05-CV-329 (PLF); Al-Anazi,
No. 05-CV-345 (JDB); Alhami, No. 05-CV-359 (GK); Ameziane, No. 05-CV-392 (ESH);
Batarfi, No. 05-CV-409 (EGS); Sliti, No. 05-CV-429 (RJL); M.C., No. 05-CV-430 (ESH);
Kabir, No. 05-CV-431 (RJL); Qayed, No. 05-CV-454 (RMU); Al-Shihry, No. 05-CV-490
(CKK); Aziz, No. 05-CV-492 (JR); and Qassim, No. 05-CV-497 (JR).

the litigation, the Court should hold all proceedings in this case in abeyance pending the outcome

of the appeals of the decisions by Judges of this Court in the other Guantanamo Bay detainee

cases.

## CONCLUSION

For the reasons stated, respondents respectfully request that their motion to dismiss or for

judgment as a matter of law be granted, and the writ of habeas corpus denied.  In the alternative,

respondents respectfully request that their motion for stay of proceedings pending appeal be

granted, and that all proceedings in this case be stayed pending the outcome of the appeals of the

decisions by Judges of this Court in the other Guantanamo Bay detainee cases.


Dated:  March 17, 2005                         Respectfully submitted,

                                               PETER D. KEISLER
                                               Assistant Attorney General

                                               KENNETH L. WAINSTEIN
                                               United States Attorney

                                               BRIAN D. BOYLE
                                               Principal Deputy Associate Attorney General

                                               DAVID B. SALMONS
                                               Assistant to the Solicitor General

                                               DOUGLAS N. LETTER
                                               Terrorism Litigation Counsel


                                                /s/ Preeya M. Noronha and Edward H. White
                                               JOSEPH H. HUNT (D.C. Bar No. 431134)
                                               VINCENT M. GARVEY (D.C. Bar No. 127191)
                                               TERRY M. HENRY
                                               LISA A. OLSON

26

JAMES J. SCHWARTZ
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7144
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents