UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

ZAKIRJAN, *et al.,*

    Petitioners/Plaintiffs,

v.

GEORGE W. BUSH, *et al.*,

    Respondents/Defendants.

Case No. 05 Cv 2053 (HHK) (AK)

---

**PETITIONER'S MOTION FOR EXPEDITED ENTRY
OF PROTECTIVE ORDERS AND ORDER GRANTING
PETITIONER IMMEDIATE ACCESS TO COUNSEL BY TELEPHONE**

    Petitioner Zakirjan (hereinafter "Petitioner"), acting on his own behalf and through his Next Friend, Abu Bakker Qassim, respectfully requests that Magistrate Judge Kay[1] enter (i) the Revised Procedures For Counsel Access To Non-Enemy Combatant Detainees At The U.S. Naval Base In Guantánamo Bay, Cuba proposed by petitioners Qassim and Hakim in <u>Qassim v. Bush</u>, 382 F. Supp. 2d 126 (D.D.C. 2005) (the "<u>NEC Orders</u>")[2] or, in the alternative, the three orders entered by Judge Joyce Hens Green in <u>In re Guantánamo Detainee Cases</u>, 355 F. Supp. 2d 443 (D.D.C. 2005), concerning the treatment of purportedly sensitive information,

---

[1] All motions filed in *habeas* petitions pending in this Court relating to the rights of detainees held at the United States Naval Base at Guantánamo Bay, Cuba, that "pertain[] to interpretation or construction of any protective order which has been entered [in those matters] . . . [or] . . . to logistical issues, such as communications with or visits to clients and counsel, shall be referred to Magistrate Judge Kay to facilitate discussion and resolution by the parties as promptly as possible." Order of Calendar and Case Management Committee of the United States District Court of the District of Columbia, dated Nov. 2, 2005.

[2] The proposed NEC Orders are attached as Exhibit A to the Amended Protective Order And Procedures For Counsel Access to Detainees At The United States Naval Base in Guantanamo Bay, Cuba, dated November 8, 2004, which can be found at Exhibit 2 to the declaration of Christopher P. Moore, dated December 2, 2005 ("Moore Declaration"). Hereinafter, all citations to numbered exhibits will be to the Moore Declaration.

including communications between Guantánamo detainees and their counsel and (ii) an order granting Petitioner immediate access to his counsel by telephone.

## PRELIMINARY STATEMENT

Petitioner is a citizen of Russia who is being detained at the Guantánamo Bay Naval Base in Cuba. Although Respondents determined over eight months ago (perhaps even several years ago) that Petitioner is <u>not</u> an "enemy combatant" and should be released, he nevertheless remains imprisoned against his will, with no access to his counsel.

Incredibly, Respondents refuse to permit the undersigned counsel to confer with Petitioner, disingenuously asserting that Petitioner does not in fact wish to seek habeas relief, preferring instead to languish indefinitely in a prison cell in Cuba. Respondents' claim is false, and could be quickly and properly resolved if the undersigned counsel are permitted to confer with Petitioner directly by telephone.

By this motion, Petitioner requests the entry of (i) appropriate protective orders concerning the treatment of purportedly sensitive information, including communications between Petitioner and his counsel and (ii) an order granting Petitioner immediate access to counsel by telephone. There is no basis in law or logic for denying these simple requests.

## BACKGROUND

A.  <u>Protective Orders Issued By Judge Green</u>

In <u>In re Guantánamo Detainees</u>, United States District Court Senior Judge Joyce Hens Green entered: (1) on November 8, 2004, an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantánamo Bay, Cuba (hereinafter "Amended Protective Order"), Ex. 2; (2) on November 10, 2004, an Order Addressing Designation Procedures for "Protected Information," Ex. 3; and (3) on December 13,

2004, an Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, Ex. 4 (collectively, "Judge Green's Orders").  Judge Green's Orders were designed primarily to address the treatment of purportedly sensitive information disclosed in the context of matters involving detainees whom the government contended to be "enemy combatants," defined by the government to be "individual[s] who w[ere] part of or supporting the Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the Untied States or its coalition partners . . . [including] any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces." See Ex. 1, Memorandum for the Secretary of the Navy, dated July 7, 2004, ¶ *a*.

B.      Respondents Concede That Petitioner Is Not An Enemy Combatant

Respondents have determined that Petitioners is not an enemy combatant ("NEC").[3]  Respondents made this determination through the Combatant Status Review Tribunal ("CSRT") process, which Respondents established to evaluate the status of each detainee at Guantánamo following the Supreme Court's ruling that the federal habeas statute "confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base." Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004).

Despite the government's determination over eight months ago that Petitioner is not an enemy combatant and should be released, he remains detained in Guantánamo against his will.[4]

---

[3] See Ex. 8, Respondents' Memorandum in Opposition to Petitioner's Motions for Temporary Restraining Order and Preliminary Injunction, dated November 3, 2005, at 3 (confirming that Zakirjan is not an enemy combatant).

[4] The Department of Defense has publicly stated that the Combatant Status Review Tribunals completed the process of reviewing the "enemy combatant" status of all detainees held at Guantánamo in March 2005. See Defense Department Special Briefing on Combatant Status Review Tribunals, Presenter:

C.      The NEC Orders Appropriately Address The Unique Status Of NECs

Judge Green's Orders make no distinction between enemy combatants and NECs.[5] Thus, absent entry of the NEC Orders, NECs and their counsel will continue to be subject to the same burdensome procedures as enemy combatants. Accordingly, on November 4, 2005, petitioners Qassim and Hakim in Qassim v. Bush, who, like Petitioner Zakirjan, are NECs, filed a motion for entry of revised protective orders applicable only to NECs (the "Qassim Motion"). See Exs. 6 and 7.[6] The NEC Orders provide for less burdensome security procedures commensurate with the detainee's NEC status, including, *inter alia*, greater access to counsel and translators and fewer restrictions on correspondence, telephone use and reading and writing materials. See id.

D.      Respondents Refuse To Permit Petitioner To Confer With His Counsel

Soon after Respondents first conceded that Petitioner is not an enemy combatant and should be released, counsel for Petitioner requested that Respondents consent to a telephone meeting with Petitioner. Respondents refused, instead filing a motion for order to show cause why the case should not be dismissed for lack of "next friend" standing (the "Motion for Order to Show Cause") in an effort to prevent any communication whatsoever between Petitioner and his pro bono counsel.

---

Secretary of The Navy Gordon England (March 29, 2005), available at http://www.defenselink.mil/transcripts/2005/tr20050329-2382.html ("[t]he Combatant Status Review Tribunals for all of the DOD detainees at Guantánamo are completed").

[5] Petitioner is currently aware of nine NECs who remain in Respondents' custody: Petitioner himself; Abu Bakker Qassim and Adel Abdu Al-Hakim (aka Adel Abdul Hakim), Qassim v. Bush, 382 F. Supp. 2d 126 (D.D.C. 2005); Ayoub Haji Mamet, Ahmad Doe and Aktar Doe, Mamet v. Bush, 05-Cv-01886 (EGS); Saddiq Ahamd Turkistani, Kiyemba v. Bush, 05-Cv-1509 (RMU); Fethi Boucetta (Dr. Abu Mohammed), Muhammed v. Bush, 05-Cv-2087 (RMC); and Ala Abdu Kuduz Mohammed (aka Alladeen), Alladeen v. Bush, 05-Cv-0833 (JR).

[6] Petitioner hereby incorporates by reference all arguments and reasoning contained in the Qassim Motion in support of his request for entry of the NEC orders in this matter. For the Court's convenience, the respondents' opposition to the Qassim Motion and the petitioners' reply in further support of the Qassim Motion are also attached as Exhibits 9 and 11, respectively.

All issues raised by Respondents in the Motion for Order to Show Cause concerning Petitioner's standing to seek habeas relief could be quickly and properly resolved by allowing the undersigned to visit with Petitioner Zakirjan in Guantánamo – or at the very lest to permit a telephone meeting – to determine if he wishes the undersigned counsel to seek habeas relief on his behalf.

## ARGUMENT

### POINT I

**THE COURT SHOULD ENTER PROTECTIVE ORDERS CONCERNING THE TREATMENT OF PURPORTEDLY SENSITIVE INFORMATION, INCLUDING COMMUNICATIONS BETWEEN PETITIONER AND HIS COUNSEL**

A.    <u>The Court Should Enter The NEC Orders</u>

The Court should enter the NEC Orders, as they strike an appropriate balance between Petitioner's interests in obtaining effective legal representation and the Respondents' interest in protecting information they believe to be sensitive from public dissemination.

By contrast, the procedures set forth in Judge Green's Orders were designed for enemy combatants and thus impose unnecessary burdens upon NECs, who have been determined by Respondents to be <u>innocent</u>, and who, upon release, will be subject to <u>no</u> restrictions. For these reasons, and for those set forth more fully in the Qassim Motion, Exs. 6 and 7, Petitioner respectfully requests that the NEC Orders be entered in this case.[7]

B.    <u>In The Alternative, The Court Should Enter Judge Green's Orders</u>

In the event the Court denies Petitioners' request for entry of the NEC Orders, Petitioner requests that Judge Green's Orders be entered immediately. Upon information and

---

[7] The request for expedited entry of the NEC Orders is intended to be without prejudice to the right to challenge or seek modification of any particular terms of the NEC Orders in the future as may be warranted by the particular facts and circumstances of these matters.

5

belief, Judge Green's Orders have been entered in every longstanding Guantánamo *habeas* case pending in the United States District Court for the District of Columbia, including in cases involving detainees classified as enemy combatants. See Motion for Order to Show Cause at 21, n. 24 ("respondents would not object to entry of the protective order previously entered in other Guantánamo detainee cases").[8]

## POINT II

### THE COURT SHOULD GRANT PETITIONER IMMEDIATE ACCESS TO COUNSEL BY TELEPHONE

**A.    As A Non-Enemy Combatant, Petitioner Is Entitled To Immediate Access To Counsel By Telephone**

The government acknowledged to the court in <u>Qassim v. Bush</u>, 382 F. Supp. 2d 126 (D.D.C. 2005), that there are a total of ten non-"enemy combatants," all of whom are being held in Camp Iguana. See Ex. 5, Transcript of Status Conference of August 25, 2005 (hereinafter "Transcript") at 10-11. The court in <u>Qassim</u> also found that the government had withheld not only from opposing counsel but also from the court information about the CSRT status of the petitioners for many months. See 382 F. Supp. 2d at 127. Since counsel for the <u>Qassim</u> petitioners learned this information from their clients during a visit to Guantánamo – information which was later confirmed by a JAG officer at the base – they have been able to obtain significant and immediate relief for their clients, including improved living conditions at Camp Iguana, the ability to speak with their counsel by telephone, the ability to speak with at

---

[8] There is no basis for Respondents' position that Judge Green's Orders should not be entered in cases in which a motion challenging a petitioner's "next friend" standing is pending. Judge Green's Orders expressly provide that "Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a <u>second visit with the detainee</u>. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee." Ex. 2, Amended Protective Order, Ex. A at 3 (emphasis added). Judge Green's Orders thus clearly contemplate communications between Petitioners and their counsel <u>before</u> the resolution of any challenges to Petitioners' standing to seek *habeas* relief.

6

least one family member by telephone, and *in camera* review by the court of the government's efforts to relocate them.  See Ex. 5, Transcript at 17.

Petitioner here is entitled to the same relief.  Like the petitioners in Qassim, the Petitioner is of no intelligence value, does not threaten the security of the United States, and has been determined not to be an "enemy combatant."  There is no justification for the government to deny a cleared detainee immediate access to counsel by telephone after they have determined that he does not present a threat to national security.  Respondents have also conceded in substantively identical matters that such relief is not only feasible but appropriate.  In particular, the commander of the military's Joint Task Force-Guantánamo, Army Brigadier General Jay W. Hood, has stated in Qassim that "I have the capability to support a limited number of telephone calls by NLECs."[9]  Ex. 9, Ex. A ¶ 8.  General Hood also has declared that he is "willing to authorize monthly calls between all NLEC detainees and immediate family members over a standard phone line."  Id. ¶ 9 (emphasis added).  This is precisely the relief Petitioner requests.  See also Manning Decl., dated Dec. 2, 2005, ¶ 11 (counsel permitted to speak with NEC client prior to first in-person visit in Guantánamo).

**B.    Telephone Access Would Likely Resolve Respondents' Purported Concerns Regarding Petitioner's Standing To Seek Habeas Relief**

On November 14, 2005, following Respondents' concession that Petitioner is not an enemy combatant, the undersigned counsel requested arrangements for a telephone meeting with Petitioner. Ex. 10.  This request was repeated again, by email and voice mail, after Respondents failed to respond to the November 14 request.  Id.  Respondents entirely ignored all requests for a telephone meeting, instead opting to file a motion challenging the sufficiency of

---

[9] The government refers to detainees who have been cleared by the CSRTs as NLECs, or "no longer enemy combatants."

7

Petitioner's "next friend" standing. See Motion for Order to Show Cause; Ex. 10 (Respondents stating that "in light of our motion, which challenges the jurisdictional basis for the petition, we cannot consent to your request for a telephone meeting with petitioner").

The arguments underlying Respondents' denial of telephone access defy common sense: Respondents' Motion for Order to Show Cause is based solely upon purported concerns that could be cured by permitting Petitioner the access that Respondents themselves refuse to provide. There is thus no reason to prevent Petitioner from conferring with his counsel by telephone in the first instance, as it would provide Petitioner with the opportunity to confirm or deny his desire to seek habeas relief in these proceedings thereby rendering Respondents' "next friend" challenge moot.

For example, in Hamlily v. Bush, No. 05-Cv-0763 (JDB), Judge John D. Bates discharged the order to show cause regarding next friend standing based on counsel's showing that the detainee had directly requested legal representation and authorized the filing of the petition:

> Petitioner's response to the Order states that the issue of next friend sanding is moot because Hamlily has directly requested legal representation and authorized this petition. The Smith affidavit states that, subsequent to the filing of this petition by Aamer, Smith met directly with Hamlily who requested his legal services in this action. Although counsel's filing fails to address several of the serious deficiencies in next friend standing raised in the Court's Order dated October 3, 2005, the Court finds it unnecessary to resolve that issue in light of Hamlily's decision to pursue this matter on his own behalf through legal representation by Smith. The Court therefore agrees that the issue of next friend standing is moot.

Order, dated Oct. 31, 2005 at 2-3, Hamlily (docket No. 19) (internal citation omitted).

Petitioner has similarly communicated his desire for undersigned counsel to represent him in his writ of petition for habeas corpus. On August 29, 2005, a fellow detainee at Guantánamo advised his counsel that Petitioner "desires that counsel seek his release from the

8

prison by means of habeas corpus." Willet Decl. ¶ 6. In addition, Petitioner later told another attorney that he is "extremely anxious to meet with Chris Moore [an associate with the undersigned law firm of Cleary Gottlieb Steen & Hamilton LLP] and his other attorneys" and expressed his desire to meet with his attorneys as soon as possible. Manning Decl., dated Dec. 2, 2005, ¶ 10.

In requesting immediate telephone access to counsel, Petitioner merely seeks to confirm to communicate directly what he has already communicated through others – that he wants the undersigned counsel to seek habeas relief on his behalf.

*   *   *

Pursuant to Local Civil Rule 7(f), Petitioner respectfully requests that the Court schedule a hearing on this motion as soon as possible.

## CONCLUSION

For the foregoing reasons and for any other reason that may become known to the Court, Petitioner respectfully requests that the Court enter (i) the NEC Orders or, in the alternative, Judge Green's Orders and (ii) an order granting Petitioner immediate access to his counsel by telephone.

Dated:  December 2, 2005                              Respectfully submitted,

                                                      Counsel for Petitioner Zakirjan:

                                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP


                                                      By:_____/s/_____
                                                              Jonathan I. Blackman (NY3846)
                                                      One Liberty Plaza
                                                      New York, New York 10006
                                                      (212) 225-2000

Of Counsel:
   Christopher P. Moore (NY4936)
   John Van Sickle (NY6487)

                                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                                      Barbara Olshansky (NY0057)
                                                      Tina Monshipour Foster (NY5556)
                                                      Gitanjali S. Gutierrez (NY1234)
                                                      666 Broadway, 7th Floor
                                                      New York, New York 10012
                                                      Tel.:  (212) 614-6437
                                                      Fax:  (212) 614-6499