# EXHIBIT 6

Case 1:05-cv-02053-HHK    Document 23-7    Filed 12/02/2005    Page 1 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM,

        Petitioners/Plaintiffs,

v.

GEORGE W. BUSH, *et al.*,
        Respondents/Defendants.

Civil Action No. 05-0497 (JR)

# PETITIONERS' MOTION FOR AN ORDER AMENDING ACCESS PROCEDURES PERTAINING TO NON-ENEMY COMBATANTS

## TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1
II. BACKGROUND .....................................................................................................2
III. PROPOSED REVISED ACCESS PROCEDURES FOR NON-ENEMY COMBATANTS ........................................................................................................3
   A. The Protective Order ...................................................................................3
   B. Respondents Have Failed To Meet And Confer Regarding The Proposed Amendment ...................................................................................4
   C. The Proposed Revised Access Procedures ..................................................5
      1. Classified Information ......................................................................5
      2. Security clearance .............................................................................6
      3. Correspondence procedures ..............................................................7
      4. Counsel visits....................................................................................8
         a. Logistics................................................................................8
         b. Materials brought into attorney-client meetings by counsel ..........9
      5. Telephone access ..............................................................................9
      6. JTF-Guantanamo Security Procedures ...........................................10
IV. CONCLUSION ......................................................................................................11

i

## I. INTRODUCTION

Petitioners Abu Bakker Qassim and A'del Abdul Hakim are not "enemy combatants." They have not committed any crime and, indeed, they are not accused of any wrongdoing. As the Court knows, the United States government nevertheless continues to treat them like criminals and imprison them at the United States Naval Base in Guantanamo Bay, Cuba. It does so for its own convenience.

This Court should not condone the government's error of treating innocent men as if they were "enemy combatants." As discussed at greater length below, this Court has adopted a Protective Order that was specifically designed to govern sensitive information and attorney-client access procedures in cases involving "enemy combatants." Serious practical problems have arisen under the Protective Order, and the procedures for attorney-client communications have proven unworkable. But in the case of non-enemy combatants such as Mr. Qassim and Mr. Hakim, it is not just the practical problems of the Protective Order that should be addressed. The basic assumption of the Protective Order—that detainees are dangerous men—has no place here. That erroneous assumption, and the many restrictions to Petitioners' freedom, access to counsel, and access to the world outside Guantanamo that flow from it, should be excised from this case.

Petitioners therefore propose Revised Procedures For Counsel Access To Non-Enemy Combatant Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba (the "Revised Access Procedures") that will govern their access to counsel, family, and information.[1] This Court has broad discretion to enter an appropriate protective order in cases pending before it. *See generally* Fed. R. Civ. P. 26(c). The particular, and near-unique circumstances of this case warrant modifying the previously entered Protective Order. Petitioners therefore respectfully request that the Court adopt these Revised Access Procedures.

---

[1] The proposed Revised Access Procedures are attached as Exhibit A to the Manning Declaration.

-1-

## II. BACKGROUND

The United States has imprisoned Petitioners for nearly four years. The only purported authority or justification the government has ever had for holding anyone at Guantanamo is that he is an "enemy combatant." In March 2005, however, the United States military formally finalized its determination—which may actually have been made months or even years before— that Mr. Qassim and Mr. Hakim are not "enemy combatants." The government has no authority whatsoever to continue to imprison these men.

Petitioners Qassim and Hakim are Uighur citizens of the People's Republic of China. The government has determined that Mr. Qassim and Mr. Hakim cannot be repatriated to China under U.S. and international law, because they would likely be subject to unjust imprisonment, torture or even death at the hands of Chinese authorities. Despite years of trying, the United States has been unable to identify any other country willing to accept the Uighurs at Guantanamo as refugees. And the government chooses not to give them refuge in this country.

Instead, the government chooses to continue to jail Mr. Qassim and Mr. Hakim at Guantanamo. Although the government has incrementally improved the conditions of their confinement since July when counsel informed the Court that Petitioners are not enemy combatants, the fact is these innocent men are still in one of the most oppressive, isolated and restrictive prisons in the world. They deserve nothing less than complete freedom immediately.

Petitioners have already asked this Court for that freedom. And they have alternatively moved for interim release, subject to appropriate conditions to be set by the Court, pending final resolution of their Petition for Writs of Habeas Corpus. *See* Docket Nos. 24, 26, 31, 37 & 39. The Revised Access Procedures are not, of course, a substitute for Petitioners' core legal entitlement to be released. As documented at length in Petitioners' previous filings, there is no lawful basis to imprison them, and we confess to some concern that relaxed access procedures might obscure the profound wrong of prolonged, unlawful incarceration. In *Zadvydas v. Davis* the Supreme concluded that indefinite detention of undeportable aliens "would raise serious constitutional concerns" and created a presumption prohibiting such detention for more than six

months. 533 U.S. 678, 682 (2001). It has now been well over *seven* months since Petitioners were formally cleared. Petitioners request in the first instance that this motion be rendered moot by a grant of their pending request for parole.

Until the Court grants Petitioners' pending motion, however, or the government chooses to release them, they remain in jail. While nothing can erase the harm of being unjustly imprisoned, Petitioners must *at minimum* be given full access their counsel, families, and friends. But beyond that, they should be given as much freedom as possible given their continued (unjust) incarceration. They are innocent men. Anything less is unconscionable.

### III.  PROPOSED REVISED ACCESS PROCEDURES FOR NON-ENEMY COMBATANTS

#### A.  The Protective Order

On November 8, 2004, in *In re Guantanamo Detainees Cases*, Senior Judge Joyce Hens Green entered an Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (hereinafter collectively "the Protective Order"). Manning Decl. Ex. B.[2] The Protective Order was designed to safeguard the government's legitimate security concerns, while establishing effective procedures for attorney-client communication and access in the Guantanamo *habeas* cases. *See* Protective Order at 1-2. On November 10, 2004, Judge Green also entered an Order Addressing Designation Procedures for "Protected Information," and on December 13, 2004 issued an Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order.

Although Judge Green's three Orders have been entered here, *see* Docket No. 16, this case is critically different from other pending Guantanamo *habeas* cases because the government

---

[2]  Judge Green's Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba (hereinafter "the Access Procedures") are Exhibit A to the Amended Protective Order.

here admits that Mr. Qassim and Mr. Hakim are not enemy combatants.[3] The Protective Order and Access Procedures assume that every detainee in Guantanamo is an alleged "enemy combatant" and treat detainees accordingly. *See, e.g.,* Access Procedures at § II(C) ("Detainee: An individual detained by DoD *as an alleged enemy combatant* at the U.S. Naval Base in Guantanamo Bay Cuba.") (emphasis added).[4] Here, that assumption is wrong.

The proposed Revised Access Procedures attempt to balance Petitioners' obvious and substantial interests in maximizing their liberty, and in improving their communication with counsel, friends and family even during continued detention at Guantanamo, with what Petitioners' counsel understands to be the government's ongoing security concerns.

### B. Respondents Have Failed To Meet And Confer Regarding The Proposed Amendment

On October 19, 2005, Petitioners' counsel provided the Revised Access Procedures to Respondents, asked that Respondents stipulate to their adoption by the Court, and informed Respondents that Petitioners intended to submit the proposal to the Court by the end of the week. Manning Decl., Ex. D. Respondents refused to provide a timely substantive response, and instead indicated that they would consider the proposal and respond the following week. *Id.*, Ex. E. In the hope of reaching a mutually agreeable resolution of the issue, Petitioners agreed not to file as planed and waited for Respondents' substantive response. *Id.*, Ex. F. As of the date of this Motion, it has been two weeks since Respondents asked for additional time, but they have

---

[3] The government also concedes that Saddiq Ahmad Turkistani, a Saudi Arabian national of Uighur descent, is not an "enemy combatant." Mr. Turkistani is a petitioner in *Kiyemba v. Bush*, Case No. 05-1509 (RMU), and is represented by the same counsel as Mr. Qassim and Mr. Hakim. He has simultaneously moved the *Kiyemba* court for adoption of the Revised Access Procedures. Petitioners are further informed and believe that the three Uighur petitioners in *Mamet v. Bush*, Case No. 05-01886 (EGS), are non-enemy combatants, but the government has refused to confirm or deny this. To date, the *Mamet* court has not entered a protective order.

[4] For the sake of clarity, the Revised Procedures define who is a non-enemy combatant. Revised Procedures § II(E) ("Non-enemy combatant detainee ('NEC detainee'): a person whom the United States government, whether through the CSRT process or otherwise, has determined is not an 'enemy combatant' but who is nevertheless detained by DoD at the U.S. Naval Base in Guantanamo Bay, Cuba. 'NEC' is synonymous with 'no longer enemy combatant' or 'NLEC.'").

never in fact responded. *Id.* ¶ 7. Petitioners are therefore forced to seek relief from this Court.

### C. The Proposed Revised Access Procedures

The proposed Revised Access Procedures are based on Judge Green's Access Procedures. Without engaging here in a line-by-line review of the changes,[5] the following are the significant substantive differences between the procedures that govern access to enemy combatants, and the proposed revised procedures for non-enemy combatants:

#### 1. Classified Information

Under the Access Procedures, information counsel obtains from an enemy combatant detainee is presumed to be classified information, and must be treated as such unless and until it is declassified by the Privilege Review Team. *See* Access Procedures § IX(B). Classified information, and documents such as attorney interview notes, must be treated in accordance with government strictures on the use, transport and handling of classified material. *Id.* For example, attorney notes containing presumptively classified information are taken from counsel after client meetings, and sent to the secure facility in Crystal City, Virginia. Until the information is declassified, it can only be reviewed at the secure facility with the blinds closed. It cannot be discussed with team members who do not hold a security clearance, and it may not be discussed over the telephone at all. Counsel cannot address the presumptively classified information in a filing unless he or she prepares the pleading at the secure facility, while working on government approved computers. Any pleadings including the presumptively classified information must be filed under seal, rather than on the public record, and must be handled by the Court and its staff as classified information unless and until the government declassifies it.

This burdensome process is wholly unnecessary. Even assuming for the sake of argument, that the presumption that information learned from detainees is classified is proper in the case of enemy combatant prisoners, it is wholly inappropriate and unreasonable for non-

---

[5] For the convenience of the Court, Exhibit C to the Manning Declaration is a redline comparison of Judge Green's Access Procedures for enemy combatants with the Revised Access Procedures.

-5-

DCDOCS/638390.3

enemy combatants. These men are eligible for release, and the government has assured this Court that it is trying to find a third country that will grant them asylum. If—and, unfortunately, it appears to be a big if—the government ever finds a country to take them, these men will be free. There will be *no* restrictions on what they can or cannot tell the outside world.

Under the proposed Revised Access Procedures, information provided by a non-enemy combatant to counsel would be presumed classified only if it relates to "(i) nonpublic information concerning the security of JTF-Guantanamo facilities; or (ii) nonpublic information concerning detainees who counsel knows or reasonably believes to be classified currently as "enemy combatants" by DoD." Revised Access Procedures at § VII(A). If the information provided by a non-enemy combatant detainee pertains to either of those two subjects, counsel is required to treat the information as classified and the information will be handled under the same strict procedures laid out in the Access Procedures. *Id.* at §§ VII(C)-(I); VI (governing attorney notes and other materials brought out of attorney-client meetings); IX (governing dissemination of information learned from detainee). Otherwise, the information is not deemed classified and may be treated accordingly.

### 2.  Security clearance

Under the Access Procedures, only persons with a Secret level or higher security clearance, "or its equivalent (as determined by appropriate DoD intelligence personnel)" may have access to an enemy combatant detainee. Access Procedures § III(A)(1). Non-US citizens are not eligible for the required Secret level or higher security clearance. The Revised Access Procedures maintain this requirement, but specifically provide that otherwise-eligible individuals will not be denied access to non-enemy combatant detainees—in other words, will not be denied an "equivalent" clearance—*solely* because they are not U.S. citizens. Revised Access Procedures § III(A)(3). This is particularly important given the very small number of U.S. citizens who speak the Uighur language, and the difficulties counsel have experienced in identifying U.S. citizen translators.

This change is in keeping with practices to date in this case. With the government's

approval, a non-U.S. citizen, Nury Turkel, has traveled to the base and acted as a translator during an August 29, 2005 meeting in Camp Iguana between counsel and Petitioners. Mr. Turkel has also served as an interpreter during attorney-client telephone calls between Mr. Qassim and Mr. Hakim and their counsel.

### 3. Correspondence procedures

The Revised Access Procedures allow counsel to send traditional attorney-client communications (as also authorized by the Access Procedures), as well as other written materials (*e.g.*, books, magazines, photographs, etc.) and electronic materials (*e.g.*, CDs and DVDs) to non-enemy combatant detainees. Revised Access Procedures § IV(A)(1). *See also id.* at § II(D) & (H) (defining "electronic material" and "written material"). Contraband is absolutely forbidden.[6]

The government has gone to great lengths to isolate prisoners at Guantanamo from the outside world. Beyond physically isolating them on an island, the government has tried mightily to prevent Guantanamo prisoners from learning anything about the outside world, or indeed the outside world from learning anything about them. If there was ever a legitimate governmental interest in cutting enemy combatant prisoners off from communication with the outside world, there cannot possibly be any reason to limit non-enemy combatant prisoners' access to information. Counsel should be able to send Petitioners letters, books, magazines, newspapers, movies, music and any other sort of media. None of this will imperil the security of JTF-Guantanamo facilities or personnel.

Because correspondence to and from Guantanamo detainees has been plagued by delay,[7]

---

[6]   *See* § III(f) below for a discussion the term "contraband," which was not defined in the previous Access Procedures, and which is defined in the proposed Revised Access Procedures.

[7]   To take just one example, Petitioners Qassim and Hakim wrote to counsel on June 13, 2005, informing counsel that they had been exonerated by the CSRT. When counsel first met with Petitioners at the base a month later, on June 13 and 14, they learned of this correspondence and of Petitioners' innocence for the first time. On July 25, Counsel asked about the delay of this attorney-client communication, and was told by counsel for Respondents that "DoJ has no control over the timing of the postal system or the United States Postal Service." Finally, on September 21—exactly 100 days after it

(Footnote Continued on Next Page.)

the Revised Access Procedures require records to be kept of detainee mail, and create reasonable timetables for mail delivery. Revised Access Procedures §§ IV(A)(3)-(4); IV(B)(3)-(4); IV(C)(2); IV(D). Counsel may also send correspondence to non-enemy combatant detainees by facsimile, for delivery within two days. *Id.* § IV(A)(3).

### 4. Counsel visits

#### a. Logistics

Petitioners and other non-enemy combatant detainees are presently incarcerated in Camp Iguana. With the government's agreement, counsel visited Mr. Qassim and Mr. Hakim there on August 29, 2005. It is current DoD policy that all attorney-client visits between counsel and enemy combatant prisoners take place in Camp Echo, a solitary confinement facility. As the Court has been previously notified, it is also DoD policy that prisoners be shackled to the floor during attorney-client visits, and Petitioners were in fact chained to the floor during the initial visit in which counsel first learned they had been cleared of being enemy combatants. And as the Court is also aware, detainees are sometimes moved to Camp Echo well in advance of attorney-client meetings and left there until long after the meeting has ended, effectively punishing them for meeting with counsel.

The Revised Access Procedures provide that counsel visits with non-enemy combatants will take place where the detainee is housed. Revised Access Procedures §§ III(D)(2) & X(F). This is in keeping with recent practices, and avoids the further injustice of detaining innocent men in solitary confinement. By ensuring that non-enemy combatants no longer have to pay the price of solitary confinement in order to speak with counsel, it also avoids burdening the attorney-client relationship.

The Revised Access Procedures also require the government to cover the actual travel and accommodation costs for one attorney and one translator for each counsel visit. Revised

---

(Footnote Continued from Previous Page.)

was sent—this letter was finally delivered to counsel.

-8-

Access Procedures § III(D)(5). Given the government's choice to imprison innocent men in a part of Cuba over which the United States has sole domain, and counsel's *pro bono* representation of them, this is more than reasonable.

### b. Materials brought into attorney-client meetings by counsel

Consistent with the Revised Access Procedures for attorney-client mail, the new visitation procedures clarify that counsel may bring legal mail, written material, and electronic material (in addition to writing utensils and paper) into a client meeting. Revised Access Procedures § V(A). Other materials may be brought in only with the prior approval of the JTF-Guantanamo Commander. *Id.*

### 5. Telephone access

With the government's agreement, counsel have twice spoken with Petitioners Qassim and Hakim by telephone. Mr. Hakim has also spoken to his sister by telephone on two occasions. The Revised Access Procedures specifically provide for telephonic access to non-enemy combatant detainees, while also avoiding some of the wholly unnecessary—and, indeed, punitive—treatment Petitioners have experienced in order to have a simple telephone call. Specifically, the Revised Access Procedures require that "DoD shall maintain one or more telephones within Camp Iguana for use by NEC detainees," and that the men have unlimited access to the telephones. Revised Procedures § VIII(A). Attorney-client communications are not to be monitored, *id.* § VIII(B), and telephone calls with friends and family "may be monitored solely for the purpose of preventing release of classified information concerning (1) the security of JTF Guantanamo facilities or (2) persons not classified as NEC detainees who are detained there." *Id.* § VIII(C).

By making telephones available to non-enemy combatant detainees in the camp where they are held, the Revised Access Procedures avoid the problem of transferring the men to the Camp Echo solitary confinement facility for a simple phone-call. As the Court is aware, DoD has transferred Petitioners to Camp Echo for each counsel or family call to date, and—egregiously—has even expanded on its wholly inappropriate policy of chaining prisoners to the

floor of the cell during attorney-client visits (ostensibly for security reasons) by chaining the men to the floor during telephone calls *when they are alone in the room*. This is unconscionable, and cannot be allowed to continue. The Revised Access Procedures ensure that it does not.

### 6. JTF-Guantanamo Security Procedures

The Revised Access Procedures amend the section entitled "JTF-Guantanamo Security Procedures" in ways that do not impact the security of JTF-Guantanamo facilities or personnel.

First, the Revised Access Procedures clarify the ban on "contraband" by specifically defining it as "weapons, chemicals, money, stamps, drugs, cigarettes, or physical articles reasonably susceptible to use for purposes of escape or inflicting injury on persons." Revised Access Procedures §§ II(A) (definition) & X(B) (prohibiting contraband). This is an important clarification and improvement over the previous Access Procedures, which prohibited "contraband," but did not clearly define it. *See* Access Procedures at § X(B) (prohibiting contraband and giving certain examples of contraband). The change is warranted. Certainly the government cannot justify denying these innocent men items that do not affect their safety and security, or the safety and security of others.

Second, the Revised Access Procedures clarify that the Commander's authorization for photography or recording (which is not permitted without authorization) "shall not be unreasonably withheld." Revised Access Procedures § X(C). Moreover, "[a]n NEC detainee's informed consent to be photographed or recorded shall be presumptive evidence of the reasonableness of such request." *Id.* This will be an invaluable form of communication with friends and family, and can only help the efforts to obtain asylum for Petitioners in a safe third country. Petitioners can and should be able to choose whether to be photographed or recorded.

## IV. CONCLUSION

For all of these reasons, Petitioners respectfully request that the Court enter an order adopting the proposed Revised Procedures For Counsel Access To Non-Enemy Combatant Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba.

Dated: November 2, 2005

Respectfully submitted,

ABU BAKKER QASSIM and A'DEL ABDU AL-HAKIM

By their attorneys

_____
P. Sabin Willett
Neil G. McGaraghan
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110-1726
Telephone: (617) 951-8000
Facsimile: (617) 951-8925

Susan Baker Manning
BINGHAM McCUTCHEN LLP
1120 20th Street NW, Suite 800
Washington, DC 20036
Telephone: (202) 778-6150
Facsimile: (202) 778-6155

Barbara Olshansky
Deputy Director
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Telephone: (212) 614-6439