# EXHIBIT 7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ABU BAKKER QASSIM and A'DEL ABDU
AL-HAKIM,

       Detainees,
       Guantánamo Bay Naval Station,
       Guantánamo Bay, Cuba;

           Petitioners/Plaintiffs,

      v.

GEORGE W. BUSH, et al.,

           Respondents/Defendants.

Civil Action No. 05-0497 (JR)

## DECLARATION OF SUSAN BAKER MANNING IN SUPPORT OF MOTION TO AMEND ACCESS PROCEDURES FOR NON-ENEMY COMBATANT DETAINEES

I, Susan Baker Manning, declare as follows:

1.     I am over 18 years of age. I have personal knowledge of the facts stated herein, except those stated on information and belief, and, if called upon, could and would testify competently to them. I make this declaration in support of Petitioners Abu Bakkar Qassim and A'del Abdu Al-Hakim's Motion to Amend Access Procedures for Non-Enemy Combatant Detainees. I am associated with Bingham McCutchen LLP, counsel for Petitioners.

2.     Petitioners' proposed "Revised Procedures For Counsel Access To Non-Enemy Combatant Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba" are attached as Exhibit A.

3.     A true and correct copy of the Judge Green's November 8, 2004 Amended Protective Order And Procedures For Counsel Access To Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba is attached as Exhibit B. Exhibit A thereto are the "Procedures For Counsel Access Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba" which are incorporated by reference in the Amended Protective Order.

4.      A redline showing changes between Petitioners' proposed "Revised Procedures For Counsel Access To Non-Enemy Combatant Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba" and Judge Green's "Procedures For Counsel Access Detainees At The U.S. Naval Base In Guantanamo Bay, Cuba" is attached as Exhibit C.

5.      A true and correct copy of correspondence dated October 19, 2005 from me to Terry Henry, counsel for Respondents, is attached as Exhibit D.

6.      A true and correct copy of correspondence dated October 20, 2005 from Mr. Henry to me is attached as Exhibit E.

7.      A true and correct copy of correspondence dated October 21, 2005 from my colleague Sabin Willett to Mr. Henry is attached as Exhibit F.  Respondents have never provided a substantive response to my October 19 correspondence.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.  Executed on November 2, 2005, in Washington, D.C.

Susan Baker Manning

DCDOCS/638518.1

EXHIBIT A

**REVISED PROCEDURES FOR COUNSEL ACCESS TO NON-ENEMY COMBATANT
DETAINEES AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA**

**I.    Applicability**

The following procedures shall govern counsel access to detainees in the control of the
Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO")
whom the United States government does not currently classify as "enemy combatants."

**II.    Definitions**

A.    <u>Contraband</u>: weapons, chemicals, money, stamps, drugs, cigarettes, or physical
articles reasonably susceptible to use for purposes of escape or inflicting injury
on persons.

B.    <u>Communications:</u> all forms of communication between counsel and a detainee,
including oral, written, electronic, or by any other means.

C.    <u>Counsel:</u> an attorney who is employed or retained by or on behalf of a detainee
for purposes of representing the detainee in the United States District Court for
the District of Columbia and who is admitted, either generally or pro hac vice, in
this Court. Unless otherwise stated, "counsel" also includes co-counsel,
interpreters, translators, paralegals, investigators and all other personnel or
support staff employed or engaged to assist in the litigation.

D.    <u>Electronic material</u>: compact discs, video tapes, and audio tapes containing
movies, music, or audio recordings.

E.    <u>Non-enemy combatant detainee ("NEC detainee")</u>: a person whom the United
States government, whether through the CSRT process or otherwise, has
determined is not an "enemy combatant" but who is nevertheless detained by
DoD at the U.S. Naval Base in Guantanamo Bay, Cuba.  "NEC" is synonymous
with "no longer enemy combatant" or "NLEC."

F.    <u>Privilege Team:</u> a team comprised of one or more DoD attorneys and one or more
intelligence or law enforcement personnel who have not taken part in, and, in the
future, will not take part in, any domestic or foreign court, military commission or
combatant status tribunal proceedings involving the detainee. If required, the
privilege team may include interpreters/translators, provided that such personnel
meet these same criteria.

G.    <u>Legal Mail</u>: letters written between counsel and a detainee that are related to the
counsel's representation of the detainee, as well as privileged documents and
publicly-filed legal documents relating to that representation.

H.    <u>Written material</u>: written material includes newspapers, books, magazines,
transcripts of radio or television programs, photographs, and correspondence

between an NEC and any person who is not that NEC's attorney.

## III.  Requirements for Access to and Communication with Detainees

A.  Security Clearance:

1.  Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

2.  Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance. Access will be granted only after DoD verification of the security clearance.

3.  Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.  Counsel will not be denied access to NEC detainees on the ground that he or she is not a citizen of the United States, provided he or she is otherwise eligible for security clearance at the Secret level or higher, or its equivalent.

4.  The Court recognizes that some detainees' primary language is one spoken only by a small number of persons within the United States. Counsel for Petitioners and for Respondents will use their best efforts to resolve issues pertaining to any difficulties in identifying translators who speak the detainee's native language.  If the parties are unable to resolve such issues cooperatively, the Court may at its discretion order that particular translators or interpreters be given access to NEC detainees, absent a particularized showing by counsel for Respondents why that person should not be given access.

B.  Acknowledgment of and Compliance with Access Procedures

1.  Before being granted access to the detainee, counsel will receive a copy of these procedures. To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

2.  This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible. Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

3.  The DoD expects that counsel, counsel's staff, and anyone acting on the

2

behalf of the attorney will fully abide by the requirements of this document. Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

4.    Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.    <u>Verification of Representation</u>

1.    Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation.* This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel.

2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.    If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.    Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

3

D.  Logistics of Counsel Visits

1.  Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee. This request shall specify date(s) of availability for the meeting and the desired duration of the meeting. Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting. Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.  Legal visits shall take place at the camp where the NEC detainee is housed.  (The Court understands that NEC detainees are presently housed in "Camp Iguana.")  The NEC detainee shall not be handcuffed, shackled, or similarly restrained during counsel visits.  The NEC detainee shall not be subjected to additional restrictions (e.g. solitary confinement) or the loss or privileges due to counsel visits.  No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo. Such approval shall not be unreasonably withheld.

3.  Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging. Specific information regarding these issues will be provided by DoJ.

4.  In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO. Country and theater clearances require twenty (20) days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

5.  For each counsel visit with an NEC detainee, DoD shall reimburse counsel for the out-of-pocket travel and billeting costs of one attorney and one translator.

IV.  **Correspondence Procedures**

A.  Mail Sent by Counsel to Detainee ("Incoming Mail")

1.  Written communications between counsel and an NEC detainee are not limited to legal mail. In addition to legal mail, written communications from counsel may include, but are not limited to, books, magazines, newspapers, other written material and electronic material. Counsel may

4

send incoming legal mail or other written communications to the appropriate address provided by government counsel. Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Non-Enemy Combatant Detainee."

2.        Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3.        Counsel may also send incoming legal mail or other written communications from counsel for a detainee via facsimile to an appropriate facsimile number maintained at Guantanamo Bay Naval Station.  Facsimile communications shall be delivered to NEC detainees within two (2) business days of their transmission.

4.        Upon receiving a written communication from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband. Written Material and Electronic Material shall not be withheld, and its delivery shall not in any way be delayed, by reason of content.  Within two (2) business days of receipt of legal mail or other written communications from counsel, and assuming no physical contraband is present, the communication shall be forwarded to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved for Delivery to Non-Enemy Combatant Detainee" and clearly indicating the identity of the detainee to which the legal mail is to be delivered.  The privilege team shall ensure that written material and electronic material addressed to an NEC detainee shall be delivered to JTF-Guantanamo personnel within seven (7) days of the privilege team's reciept of such written material or electronic material.

5.        Within two (2) business days of receipt of a written communication from counsel,  personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved for Delivery to Non-Enemy Combatant Detainee" to the detainee without opening the envelope or mailer.

6.        As provided at § IX(B) below, certain types of information learned by counsel from the NEC detainee are presumed to be classified.  Counsel is required to treat all such information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court. Accordingly, if a counsel's correspondence

contains any summary or recitation of or reference to classified information learned by counsel from the NEC detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1 R.

7.      Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.      <u>Mail Sent by NEC Detainee to Counsel ("Outgoing Mail")</u>

1.      Detainees will be provided with paper and writing instruments at all times. In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the name of the detainee and the counsel. Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.      Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.      After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will be annotated with the name of the detainee and the counsel. Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

4.      Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military

6

personnel at Guantanamo under the standard operating procedures for detainee non-legal mail. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

5.    In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

C.    <u>Mail Sent by NEC Detainee to Persons Other than Counsel</u>

1.    NEC detainees shall be permitted to send and receive correspondence with persons other than counsel.

2.    Letters from NEC detainees and delivered to guards will be placed in the U.S. Mail within seven days of receipt by guards.

D.    <u>Records of Mail to and from NEC detainees</u>

1.    JTF-Guantanmo personnel shall maintain a log of all correspondence sent by NEC detainees, including the addressee, the date such correspondence was delivered by the detainee to JTF-Guantanamo personnel for mailing, and the date and method of transmission to the addressee.

2.    In the case of correspondence sent by the NEC detainee to counsel, JTF-Guantanmo shall notify the attorney recipient that mail has been sent. Such notice shall be by telephone, facsimile or email not later than three days after receipt for mailing of the correspondence by JTF-Guantanmo personnel.

3.    The privilege team shall maintain a log of all correspondence directed to NEC detainees, including the addressee, sender, the date such correspondence was received by the privilege team, and the date and method by which such correspondence was transmitted to JTF-Guantanamo personnel.

4.    JTF-Guantanamo personnel shall maintain a log of all detainee correspondence received, including the address, the sender, the date received and the date deliverd to the detainee.

5.    Each of the logs provided for at §§ IV(D)(1), (3) and (4) shall be made available for inspection at counsel's request.  Alternatively, and at counsel's discretion, counsel will be provided with copies of any pages

7

thereof pertaining to counsel's client.  Such copies shall be provided not
later than seven (7) calendar days from the date of counsel's request.

**V.    Materials Brought Into A Meeting Between NEC Detainee And Counsel**

    A.    Counsel may bring legal mail, written material, electronic material, writing
utensils and paper into any meeting with a NEC detainee.  Counsel may bring
other materials into a meeting with an NEC detainee with the prior approval from
the Commander, JTF-GTMO.

    B.    Written and oral communications with a detainee, including all documents brought
into a meeting with a detainee, shall not include information relating to any
ongoing or completed military, intelligence, security, or law enforcement
operations, investigations, or arrests, or the results of such activities, by any nation
or agency or current political events in any country that are not directly related to
counsel's representation of that detainee; or security procedures at GTMO
(including names of U.S. Government personnel and the layout of camp facilities)
or the status of other detainees, not directly related to counsel's representation.

**VI.    Materials Brought Out Of A Meeting With NEC Detainee And Counsel**

    A.    In most circumstances, notes or documents used or produced during a meeting
between counsel and an NEC detainee shall be retained by counsel, and need not
be treated as classified or surrendered to JTF-Guantanamo personnel.

    B.    If counsel's notes or documents used or produced during a meeting between
counsel and an NEC detainee include information regarding (i) nonpublic
information concerning the security of JTF Guantanamo facilities, or (ii)
nonpublic information concerning detainees who are not NECs, then upon the
completion of each meeting with a detainee or during any break in a meeting
session, counsel will give the pages of notes or documents containing such
information, and only such pages to a designated individual at Guantanamo.
These materials will be sealed in the presence of counsel and will be handled as
classified material as required by Executive Order 12958, DOD Regulation
5200.1-R and Al 26, OSD Information Security Supplement to DOD Regulation
5200.1 R.

    C.    Upon the completion of the counsel's visit to Guantanamo, counsel's notes or
documents used or produced during the visit between counsel and an NEC
detainee that include information regarding (i) nonpublic information
concerning the security of JTF Guantanamo facilities, or (ii) nonpublic
information concerning detainees who are not NECs shall be sealed in the
presence of counsel and placed in an envelope labeled as "Attorney-Detainee
Meeting Documents-For Delivery to Counsel." The envelope shall be sealed
into a larger envelope by military personnel at Guantanamo which shall be
marked as "Attorney-Non-Enemy Combatant Detainee Meeting Documents-

For Mail Delivery To Counsel" and shall be annotated with the name of the NEC detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

D.   Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII.   Classification Determination of Detainee Communications

A.   Information provided to counsel by an NEC detainee shall not be presumed to be classified or protected unless it relates to one or more of the following: (i) nonpublic information concerning the security of JTF-Guantanamo facilities; or (ii) nonpublic information concerning detainees who counsel knows or reasonably believes to be classified currently as "enemy combatants" by DoD.  Upon inquiry by counsel, DoD shall state within seven calendar days whether a detainee is classified currently as an "enemy combatant."

B.   For the avoidance of doubt, no "next-friend" authorization or other information related to the desire of any detainee for counsel shall be deemed classified.

C.   If information provided to counsel is presumptively classified or protected because it relates to the subjects identified above, counsel shall treat it as classified material unless and until the information is submitted to the privilege team and determined to be otherwise.

D.   If counsel receives from an NEC (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs, counsel may submit such information to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to

9

any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

E.      Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Non-Enemy Combatant Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the NEC detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

F.      As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

   1.   Seven (7) business days for information that is written in the English language;

   2.   Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

   3.   Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

G.      While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

H.      If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

10

I.      The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.   Telephonic Access to Detainee

A.      DoD shall maintain one or more telephones within Camp Iguana for use by NEC detainees, and shall provide counsel and NEC detainees with these telephone number(s).  NEC detainees shall have unlimited access to telephones.  The cost of telephone calls made by NECs shall be borne by DoD.

B.      Telephone calls between counsel and an NEC detainee shall not be monitored.

C.      An NEC detainee's unlimited telephone access shall include the ability to make and receive telephone calls from persons other than counsel.  Such telephone calls may be monitored solely for the purpose of preventing release of classified information concerning (1) the security of JTF Guantanamo facilities or (2) persons not classified as NEC detainees who are detained there.

## IX.    Counsel's Handling And Dissemination Of Information From Detainee

A.      Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.      Counsel is not required to treat information learned from a detainee  as classified information, unless that information concernins (i) the security of JTF Guantanamo facilities or (ii) persons not classified as NEC detainees who are detained there.  Information regarding the security of JTF Guantanamo or persons not classified as NEC detainees who are detained there shall be treated as classified information unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1 R.

C.      Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.      Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in Guantanamo Bay *habeas corpus* cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information

11

in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

## X.     JTF-Guantanamo Security Procedures

A.     Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.     Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure.

C.     Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo, which shall not be unreasonably withheld. An NEC detainee's informed consent to be photographed or recorded shall be presumptive evidence of the reasonableness of such request.  Except as approved by the Commander, no electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.     Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.     Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo. Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.     As provided in § III(D)(2), Counsel will meet with a NEC detainee at the camp where the NEC detainee is housed. These meetings may be monitored visually only to the same extent the camp is visually monitored by JTF-Guantanamo security personnel when counsel is not present.  JTF-Guantanamo personnel shall ensure that no oral communications between counsel and detainee will be heard or monitored in any way.

G.     At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

# EXHIBIT B

EXHIBIT A

## REVISED PROCEDURES FOR COUNSEL ACCESS TO DETAINEES
## AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA

### I. Applicability

Except as otherwise stated herein or by other Order issued in the United States District Court for the District of Columbia, the following procedures shall govern counsel access to all detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO") by counsel for purposes of litigating the cases in which this Order is issued.

These procedures do not apply to counsel who are retained solely to assist in the defense of a detainee in a trial by military commission. Access by that counsel is covered by the Procedures for Monitoring Communications Between Detainees Subject to Trial by Military Commission and their Defense Counsel Pursuant to Military Commission Order No. 3.

### II. Definitions

A. <u>Communications</u>:  All forms of communication between counsel and a detainee, including oral, written, electronic, or by any other means.

B. <u>Counsel</u>:  An attorney who is employed or retained by or on behalf of a detainee for purposes of representing the detainee in the United States District Court for the District of Columbia and who is admitted, either generally or pro hac vice, in this Court.  Unless otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation.

C. <u>Detainee</u>:  An individual detained by DoD as an alleged enemy combatant at the U.S. Naval Base in Guantanamo Bay, Cuba.

D. <u>Privilege Team</u>:  A team comprised of one or more DoD attorneys and one or more intelligence or law enforcement personnel who have not taken part in, and, in the future, will not take part in, any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.  If required, the privilege team may include interpreters/translators, provided that such personnel meet these same criteria.

E. <u>Legal Mail</u>:  Letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

1

EXHIBIT A

**III.  Requirements for Access to and Communication with Detainees**

A.  <u>Security Clearance</u>:

      1.      Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

      2.      Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance.  Access will be granted only after DoD verification of the security clearance.

      3.      Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division.

B.  <u>Acknowledgment of and Compliance with Access Procedures</u>

      1.      Before being granted access to the detainee, counsel will receive a copy of these procedures.  To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

      2.      This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible.  Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

      3.      The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document.  Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

      4.      Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.  <u>Verification of Representation</u>

      1.      Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*.  This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as

EXHIBIT A

the name of the detainee being represented by the counsel.  Additionally, counsel shall provide evidence of his or her authority to represent the detainee.

2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee.  Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed.  Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.    If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.    Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.  Logistics of Counsel Visits

1.    Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee.  This request shall specify date(s) of availability for the meeting, the desired duration of the meeting and the language that will be utilized during the meeting with the detainee.  Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting.  Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.    Legal visits shall take place in a room designated by JTF-Guantanamo.  No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo.  Such approval shall not be unreasonably withheld.

3.    Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging.  Specific information regarding these issues will be provided by DoJ.

3

EXHIBIT A

4.      In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit.  In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO and a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).  Country and theater clearances require twenty (20) days to process.  Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled.  Requests for visits made inside of 20 days will not normally be granted.

## IV.  Procedures for Correspondence Between Counsel and Detainee

A.  <u>Mail Sent by Counsel to Detainee ("Incoming Mail")</u>

1.      Counsel shall send incoming legal mail for a detainee to the privilege team at the appropriate address provided by government counsel.  Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials.  The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Detainee."

2.      Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3.      Upon receiving legal mail from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband.  Within two (2) business days of receipt of legal mail, and assuming no physical contraband is present, the privilege team shall forward the mail to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved by Privilege Team" and clearly indicating the identity of the detainee to which the legal mail is to be delivered.  The privilege team shall return to the sender any incoming mail that does not comply with the terms of paragraphs IV.A.1., 2.

4.      Within two (2) business days of receipt of legal mail from the privilege team, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved by the Privilege Team" to the detainee without opening the envelope or mailer.  If counsel desires confirmation that the documents were delivered to the detainee, counsel is responsible for providing a stamped, self-addressed envelope for that purpose.  The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail.  This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.

4

5.      Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel.  Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee.  These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee non-legal mail.

6.      Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court.  Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to a communication with a detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1R.

7.      Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.  Mail Sent by Detainee to Counsel ("Outgoing Mail")

1.      Detainees will be provided with paper to prepare communications to counsel.  In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel."  Each envelope shall be labeled with the name of the detainee and the counsel.  Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.      Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.      After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will

be annotated with the name of the detainee and the counsel.  The envelope will be sealed and mailed in the manner required for classified materials.  Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel.

4.      Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service.  These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail.

5.      In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

## V.  Materials Brought Into A Meeting With Detainee And Counsel

A.      Counsel shall bring only legal mail, writing utensils and paper into any meeting with a detainee unless counsel has received prior approval from the Commander, JTF-GTMO.  The Commander shall not unreasonably withhold approval for counsel to bring into a meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the government has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States.

B.      Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

## VI.  Materials Brought Out Of A Meeting With Detainee and Counsel

A.      Upon the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the notes or documents used or produced during the meeting to a designated individual at Guantanamo.  These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

B.      Upon the completion of the counsel's visit to Guantanamo, the notes or documents used or produced during the visit shall be sealed in the presence of

EXHIBIT A

counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents–For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo which shall be marked as "Attorney-Detainee Meeting Documents-For Mail Delivery To Counsel" and shall be annotated with the name of the detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

C.     Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII. Classification Determination of Detainee Communications

A.     Counsel may submit information learned from a detainee to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

B.     Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

7

EXHIBIT A

C.     As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

     1. Seven (7) business days for information that is written in the English language;

     2. Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

     3. Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

D.     While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

E.     If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

F.     The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.  Telephonic Access to Detainee

A.     Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTF-Guantanamo.

B.     Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.

C.     Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.

EXHIBIT A

## IX. Counsel's Handling And Dissemination Of Information From Detainee

A.    Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.    Counsel is required to treat all information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R.

C.    Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.    Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in the coordinated cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

## X. JTF-Guantanamo Security Procedures

A.    Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.    Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure. Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes money, stamps, cigarettes, writing instruments, etc. No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.

C.    Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo. No electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a

9

prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.    Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.    Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo. Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.    Counsel will meet with a detainee in conference facilities provided by GTMO. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons. (The only other method of visual observation available is for the door to remain open with military police sitting outside the door.). No oral communications between counsel and detainee will be heard.

G.    At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

EXHIBIT C

**REVISED PROCEDURES FOR COUNSEL ACCESS TO <u>NON-ENEMY COMBATANT</u>
DETAINEES AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA**

**I.     Applicability**

[~~Except as otherwise stated herein or by other Order issued in the United States District
Court for the District of Columbia, the~~]The following procedures shall govern counsel access to
[~~all~~]detainees in the control of the Department of Defense ("DoD") at the U.S. Naval Base in
Guantanamo Bay, Cuba ("GTMO") [~~by counsel for purposes of litigating the cases in which this
Order is issued.~~]whom the United States government does not currently classify as "enemy
combatants."

[~~These procedures do not apply to counsel who are retained solely to assist in the defense
of a detainee in a trial by military commission. Access by that counsel is covered by the Procedures
for Monitoring Communications Between Detainees Subject to Trial by Military Commission and
their Defense Counsel Pursuant to Military Commission Order No. 3.~~]

**II.     Definitions**

A.     <u>Contraband</u>: weapons, chemicals, money, stamps, drugs, cigarettes, or physical
articles reasonably susceptible to use for purposes of escape or inflicting injury
on persons.

B.     <u>Communications</u>: all forms of communication between counsel and a detainee,
including oral, written, electronic, or by any other means.

[~~B~~]C.     <u>Counsel</u>: an attorney who is employed or retained by or on behalf of a detainee for
purposes of representing the detainee in the United States District Court for the
District of Columbia and who is admitted, either generally or pro hac vice, in this
Court. Unless otherwise stated, "counsel" also includes co-counsel, interpreters,
translators, paralegals, investigators and all other personnel or support staff
employed or engaged to assist in the litigation.

D.     <u>Electronic material</u>: compact discs, video tapes, and audio tapes containing
movies, music, or audio recordings.

[~~C.~~]E.     <u>Non-enemy combatant</u> detainee ("NEC detainee"): ~~An individual~~ a person whom
the United States government, whether through the CSRT process or otherwise, has
determined is not an "enemy combatant" but who is nevertheless detained by DoD[
~~as an alleged enemy combatant~~] at the U.S. Naval Base in Guantanamo Bay, Cuba.
"NEC" is synonymous with "no longer enemy combatant" or "NLEC."

[~~D.~~]F.     <u>Privilege Team</u>: a team comprised of one or more DoD attorneys and one or more
intelligence or law enforcement personnel who have not taken part in, and, in the
future, will not take part in, any domestic or foreign court, military commission or
combatant status tribunal proceedings involving the detainee. If required, the
privilege team may include interpreters/translators, provided that such personnel

meet these same criteria.

[E]G.   <u>Legal Mail</u>: letters written between counsel and a detainee that are related to the counsel's representation of the detainee, as well as privileged documents and publicly-filed legal documents relating to that representation.

H.   <u>Written material: written material includes newspapers, books, magazines, transcripts of radio or television programs, photographs, and correspondence between an NEC and any person who is not that NEC's attorney.</u>

## III.   Requirements for Access to and Communication with Detainees

A.   <u>Security Clearance:</u>

1.   Counsel must hold a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel).

2.   Counsel who possess a valid security clearance shall provide, in writing, the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance. Access will be granted only after DoD verification of the security clearance.

3.   Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division. <u>Counsel will not be denied access to NEC detainees on the ground that he or she is not a citizen of the United States, provided he or she is otherwise eligible for security clearance at the Secret level or higher, or its equivalent.</u>

4.   <u>The Court recognizes that some detainees' primary language is one spoken only by a small number of persons within the United States. Counsel for Petitioners and for Respondents will use their best efforts to resolve issues pertaining to any difficulties in identifying translators who speak the detainee's native language. If the parties are unable to resolve such issues cooperatively, the Court may at its discretion order that particular translators or interpreters be given access to NEC detainees, absent a particularized showing by counsel for Respondents why that person should not be given access.</u>

B.   <u>Acknowledgment of and Compliance with Access Procedures</u>

1.   Before being granted access to the detainee, counsel will receive a copy of these procedures. To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation

acknowledging his/her agreement to comply with them.

2.      This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible. Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

3.      The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document. Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

4.      Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.      Verification of Representation

1.      Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation.* This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel. [Additionally, counsel shall provide evidence of his or her authority to represent the detainee.]

2.      Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee.  The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.      If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.      Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly

3

or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.  <u>Logistics of Counsel Visits</u>

1. Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee. This request shall specify date(s) of availability for the meeting[~~,~~] and the desired duration of the meeting[~~ and the language that will be utilized during the meeting with the detainee~~]. Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting. Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2. Legal visits shall take place [~~in a room designated by JTF-Guantanamo.~~ ]<u>at the camp where the NEC detainee is housed.  (The Court understands that NEC detainees are presently housed in "Camp Iguana.")  The NEC detainee shall not be handcuffed, shackled, or similarly restrained during counsel visits.  The NEC detainee shall not be subjected to additional restrictions (e.g. solitary confinement) or the loss or privileges due to counsel visits.</u>  No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo. Such approval shall not be unreasonably withheld.

3. Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging. Specific information regarding these issues will be provided by DoJ.

4. In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO[~~ and a valid current United States security clearance at the Secret level or higher, or its equivalent (as determined by appropriate DoD intelligence personnel)~~]. Country and theater clearances require twenty (20) days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

5. <u>For each counsel visit with an NEC detainee, DoD shall reimburse counsel for the out-of-pocket travel and billeting costs of one attorney and one</u>

translator.

## IV.    Correspondence Procedures [~~Procedures for Correspondence Between Counsel and Detainee~~]

A.    Mail Sent by Counsel to Detainee ("Incoming Mail")

1.    Written communications between counsel and an NEC detainee are not limited to legal mail. In addition to legal mail, written communications from counsel may include, but are not limited to, books, magazines, newspapers, other written material and electronic material. Counsel [~~shall~~]may send incoming legal mail [~~for a detainee to the privilege team at~~]or other written communications to the appropriate address provided by government counsel. Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Non-Enemy Combatant Detainee."

2.    Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3.    Counsel may also send incoming legal mail or other written communications from counsel for a detainee via facsimile to an appropriate facsimile number maintained at Guantanamo Bay Naval Station.  Facsimile communications shall be delivered to NEC detainees within two (2) business days of their transmission.

[~~3.~~]4.    Upon receiving [~~legal mail~~]a written communication from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband. Written Material and Electronic Material shall not be withheld, and its delivery shall not in any way be delayed, by reason of content.  Within two (2) business days of receipt of legal mail or other written communications from counsel, and assuming no physical contraband is present, the [~~privilege team~~]communication shall [~~forward the mail~~]be forwarded to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved [~~by Privilege Team~~]for Delivery to Non-Enemy Combatant Detainee" and clearly indicating the identity of the detainee to which the legal mail is to be delivered.  The privilege team shall [~~return to the sender any incoming mail that does not comply with the terms of paragraphs IV.A.1., 2.~~]ensure that written material and electronic material addressed to an NEC detainee shall be delivered to JTF-Guantanamo personnel within seven (7) days of the privilege team's receipt of such written material or electronic material.

[4.-]5. Within two (2) business days of receipt of [legal mail from the privilege team,]a written communication from counsel, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved [by the Privilege Team]for Delivery to Non-Enemy Combatant Detainee" to the detainee without opening the envelope or mailer. [If counsel desires confirmation that the documents were delivered to the detainee, counsel is responsible for providing a stamped, self-addressed envelope for that purpose. The detainee shall be responsible for mailing any confirmation of delivery to counsel as outgoing legal mail. This method shall be the sole and exclusive means by which confirmation of delivery is provided to counsel.]

[5.    Written correspondence to a detainee not falling within the definition of legal mail shall be sent through the United States Postal Service to the appropriate address provided by government counsel. Non-legal mail includes, but is not limited to, letters from persons other than counsel, including family and friends of the detainee. These non-privileged communications will be reviewed by military personnel at GTMO under the standard operating procedures for detainee nonlegal mail.]

6.    As provided at § IX(B) below, certain types of information learned by counsel from the NEC detainee are presumed to be classified. Counsel is required to treat all such information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court. Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to [a communication with a ]classified information learned by counsel from the  NEC  detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and [AI]AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1 R.

7.    Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.    Mail Sent by NEC Detainee to Counsel ("Outgoing Mail")

6

1.  Detainees will be provided with paper [to prepare communications to counsel.]and writing instruments at all times.  In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the name of the detainee and the counsel. Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.  Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.  After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will be annotated with the name of the detainee and the counsel. [The envelope will be sealed and mailed in the manner required for classified materials. ]Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

4.  Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

5.  In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

C.   Mail Sent by NEC Detainee to Persons Other than Counsel

1.   NEC detainees shall be permitted to send and receive correspondence with persons other than counsel.

2.   Letters from NEC detainees and delivered to guards will be placed in the

U.S. Mail within seven days of receipt by guards.

D.   Records of Mail to and from NEC detainees

    1.   JTF-Guantanmo personnel shall maintain a log of all correspondence sent by NEC detainees, including the addressee, the date such correspondence was delivered by the detainee to JTF-Guantanamo personnel for mailing, and the date and method of transmission to the addressee.

    2.   In the case of correspondence sent by the NEC detainee to counsel, JTF-Guantanmo shall notify the attorney recipient that mail has been sent. Such notice shall be by telephone, facsimile or email not later than three days after receipt for mailing of the correspondence by JTF-Guantanmo personnel.

    3.   The privilege team shall maintain a log of all correspondence directed to NEC detainees, including the addressee, sender, the date such correspondence was received by the privilege team, and the date and method by which such correspondence was transmitted to JTF-Guantanamo personnel.

    4.   JTF-Guantanamo personnel shall maintain a log of all detainee correspondence received, including the address, the sender, the date received and the date deliverd to the detainee.

    5.   Each of the logs provided for at §§ IV(D)(1), (3) and (4) shall be made available for inspection at counsel's request. Alternatively, and at counsel's discretion, counsel will be provided with copies of any pages thereof pertaining to counsel's client. Such copies shall be provided not later than seven (7) calendar days from the date of counsel's request.

## V.   Materials Brought Into A Meeting [~~With~~]__Between NEC__ Detainee And Counsel

A.   Counsel [~~shall~~]__may__ bring[ ~~only~~] legal mail, written material, electronic material, writing utensils and paper into any meeting with a [~~detainee unless counsel has received~~]NEC detainee. Counsel may bring other materials into a meeting with an NEC detainee with the prior approval from the Commander, JTF-GTMO. [~~The Commander shall not unreasonably withhold approval for counsel to bring into a meeting with a detainee letters, tapes, or other communications introducing counsel to the detainee, if the government has first reviewed the communication and determined that sharing the communication with the detainee would not threaten the security of the United States.~~]

B.   Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations,

8

investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

**VI.   Materials Brought Out Of A Meeting With <u>NEC</u> Detainee And Counsel**

A.   <u>In most circumstances, notes or documents used or produced during a meeting between counsel and an NEC detainee shall be retained by counsel, and need not be treated as classified or surrendered to JTF-Guantanamo personnel.</u>

B.   <u>If counsel's notes or documents used or produced during a meeting between counsel and an NEC detainee include information regarding (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs, then</u> [U]<u>upon</u> the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the <u>pages of</u> notes or documents [used or produced during the meeting]<u>containing such information, and only such pages</u> to a designated individual at Guantanamo. These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and [AI]<u>AI</u> 26, OSD Information Security Supplement to DOD Regulation 5200.1 R.

[B]<u>C</u>.   Upon the completion of the counsel's visit to Guantanamo, [the]<u>counsel's</u> notes or documents used or produced during the visit<u> between counsel and an NEC detainee that include information regarding (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs</u> shall be sealed in the presence of counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents[–]<u>-</u>For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo which shall be marked as "Attorney-<u>Non-Enemy Combatant</u> Detainee Meeting Documents-For Mail Delivery To Counsel" and shall be annotated with the name of the<u> NEC</u> detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package shall be mailed to the appropriate address provided by government counsel.

[C]<u>D</u>.   Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

## VII.   Classification Determination of Detainee Communications

A.   Information provided to counsel by an NEC detainee shall not be presumed to be classified or protected unless it relates to one or more of the following: (i) nonpublic information concerning the security of JTF-Guantanamo facilities; or (ii) nonpublic information concerning detainees who counsel knows or reasonably believes to be classified currently as "enemy combatants" by DoD.  Upon inquiry by counsel, DoD shall state within seven calendar days whether a detainee is classified currently as an "enemy combatant."

B.   For the avoidance of doubt, no "next-friend" authorization or other information related to the desire of any detainee for counsel shall be deemed classified.

C.   If information provided to counsel is presumptively classified or protected because it relates to the subjects identified above, counsel shall treat it as classified material unless and until the information is submitted to the privilege team and determined to be otherwise.

D.   [Counsel may submit information learned from a detainee]If counsel receives from an NEC (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs, counsel may submit such information to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and [AH]AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

[B]E.   Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Non-Enemy Combatant Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the NEC detainee and the counsel. Each page of the document submitted for classification review shall be

marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

[C]F.  As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

   1.  Seven (7) business days for information that is written in the English language;

   2.  Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

   3.  Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

[D]G.  While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

[E]H.  If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

[F]I.  The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

## VIII.  Telephonic Access to Detainee

A.  DoD shall maintain one or more telephones within Camp Iguana for use by NEC detainees, and shall provide counsel and NEC detainees with these telephone number(s).  NEC detainees shall have unlimited access to telephones.  The cost of telephone calls made by NECs shall be borne by DoD.

[A.  Requests for telephonic access to the detainee by counsel or other persons will not normally be approved. Such requests may be considered on a case-by-case basis due to special circumstances and must be submitted to Commander, JTFGuantanamo.]

11

B.      Telephone calls between counsel and an NEC detainee shall not be monitored.

[B.     Any telephonic access by counsel will be subject to appropriate security procedures, but shall not include contemporaneous monitoring or recording.]

C.      An NEC detainee's unlimited telephone access shall include the ability to make and receive telephone calls from persons other than counsel.  Such telephone calls may be monitored solely for the purpose of preventing release of classified information concerning (1) the security of JTF Guantanamo facilities or (2) persons not classified as NEC detainees who are detained there.

[C.     Any telephonic access by persons other than counsel will be subject to appropriate security procedures, including contemporaneous monitoring and recording.]

## IX.    Counsel's Handling And Dissemination Of Information From Detainee

A.      Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.      Counsel is not required to treat [all ]information learned from a detainee[, including any oral and written communications with a detainee,] as classified information, unless that information concerns (i) the security of JTF Guantanamo facilities or (ii) persons not classified as NEC detainees who are detained there.  Information regarding the security of JTF Guantanamo or persons not classified as NEC detainees who are detained there shall be treated as classified information unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1 R.

C.      Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.      Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in [the coordinated]Guantanamo Bay *habeas corpus* cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

## X.     JTF-Guantanamo Security Procedures

A.    Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.    Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure. [~~Examples of contraband include, but are not limited to, weapons, chemicals, drugs, and materials that may be used in an escape attempt. Contraband also includes money, stamps, cigarettes, writing instruments, etc. No items of any kind may be provided to the detainee without the advance approval of the Commander, JTF-Guantanamo.~~]

C.    Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo[~~. No~~], which shall not be unreasonably withheld. An NEC detainee's informed consent to be photographed or recorded shall be presumptive evidence of the reasonableness of such request.  Except as approved by the Commander, no electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.    Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.    Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo. Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.    As provided in § III(D)(2), Counsel will meet with a NEC detainee [~~in conference facilities provided by GTMO. These facilities are subject to visual monitoring by closed circuit TV for safety and security reasons. (The only other method of visual observation available is for the door to remain open with military police sitting outside the door.). No~~]at the camp where the NEC detainee is housed. These meetings may be monitored visually only to the same extent the camp is visually monitored by JTF-Guantanamo security personnel when counsel is not present. JTF-Guantanamo personnel shall ensure that no oral communications between counsel and detainee will be heard or monitored in any way.

13

G.    At the conclusion of a meeting with a detainee, counsel and
      translators/interpreters will again be inspected using a metal detector and, if
      deemed necessary, by physical inspection of their persons.

EXHIBIT D

**BINGHAM McCUTCHEN**

Susan Baker Manning
Direct Phone: (202) 778-6172
Direct Fax:    (202) 778-6155
susan.manning@bingham.com
Our File No.:  0999997-0000982706

October 19, 2005

Bingham McCutchen LLP
Suite 800
1120 20th Street, NW
Washington, DC
20036-3406

202.778.6150
202.778.6155 fax

bingham.com

Boston
Hartford
London
Los Angeles
New York
Orange County
San Francisco
Silicon Valley
Tokyo
Walnut Creek
Washington

**Via Email**

Terry Henry, Esq.
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7144
Washington, DC 20530

**Re:  Revised Access Procedures for Non-Enemy Combatant Detainees**

Dear Terry:

As you know, the Government has determined that my clients Abu Bakker Qassim, Adel
Abdul Hakim and Saddiq Ahmad Turkistani are not "enemy combatants." Because the
Government nevertheless continues to imprison these innocent men, we have pending
motions asking the District Court to order their immediate release. Until the Government
chooses to release my clients from its prison at Guantánamo Bay, or the Court orders it to
do so, we must—at minimum—take steps to improve their access to family, friends and
counsel.

To date, the Government has agreed to certain modified access procedures, such as
counsel and family telephone calls, and attorney-client visits at Camp Iguana, rather than
the solitary confinement facility. We would like to work cooperatively with DOJ to build
upon these improvements.

I have therefore prepared the enclosed Revised Procedures for Counsel Access to Non-
Enemy Combatant Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba. As you
will see, they are based substantially on the Access Procedures that are attached as
Exhibit A to Judge Green's November 8, 2004 Amended Protective Order. We intend to
submit these proposed Revised Access Procedures to the Court this Friday, October 21,
2005.

Please advise whether Respondents will stipulate to the entry of these Revised Access
Procedures. If you wish to discuss the matter, I am available to discuss at your
convenience.

Sincerely yours,

Susan Baker Manning

REVISED PROCEDURES FOR COUNSEL ACCESS TO NON-ENEMY COMBATANT
DETAINEES AT THE U.S. NAVAL BASE IN GUANTANAMO BAY, CUBA

**I.**  **Applicability**

The following procedures shall govern counsel access to detainees in the control of the
Department of Defense ("DoD") at the U.S. Naval Base in Guantanamo Bay, Cuba ("GTMO") whom the
United States government does not currently classify as "enemy combatants."

**II.**  **Definitions**

A.  Contraband: weapons, chemicals, money, stamps, drugs, cigarettes, or physical articles
reasonably susceptible to use for purposes of escape or inflicting injury on persons.

B.  Communications: all forms of communication between counsel and a detainee,
including oral, written, electronic, or by any other means.

C.  Counsel: an attorney who is employed or retained by or on behalf of a detainee for
purposes of representing the detainee in the United States District Court for the District of
Columbia and who is admitted, either generally or pro hac vice, in this Court. Unless
otherwise stated, "counsel" also includes co-counsel, interpreters, translators, paralegals,
investigators and all other personnel or support staff employed or engaged to assist in the
litigation.

D.  Electronic material: compact discs, video tapes, and audio tapes containing movies,
music, or audio recordings.

E.  Non-enemy combatant detainee ("NEC detainee"): a person whom the United States
government, whether through the CSRT process or otherwise, has determined is not an
"enemy combatant" but who is nevertheless detained by DoD at the U.S. Naval Base in
Guantanamo Bay, Cuba. "NEC" is synonymous with "no longer enemy combatant" or
"NLEC."

F.  Privilege Team: a team comprised of one or more DoD attorneys and one or more
intelligence or law enforcement personnel who have not taken part in, and, in the future,
will not take part in, any domestic or foreign court, military commission or combatant
status tribunal proceedings involving the detainee. If required, the privilege team may
include interpreters/translators, provided that such personnel meet these same criteria.

G.  Legal Mail: letters written between counsel and a detainee that are related to the
counsel's representation of the detainee, as well as privileged documents and publicly-
filed legal documents relating to that representation.

H.  Written material: written material includes newspapers, books, magazines, transcripts of
radio or television programs, photographs, and correspondence between an NEC and any
person who is not that NEC's attorney.

**III.**  **Requirements for Access to and Communication with Detainees**

A.  Security Clearance:

1.  Counsel must hold a valid current United States security clearance at the
Secret level or higher, or its equivalent (as determined by appropriate DoD
intelligence personnel).

2.  .  Counsel who possess a valid security clearance shall provide, in writing,

the date of their background investigation, the date such clearance was granted, the level of the clearance, and the agency who granted the clearance. Access will be granted only after DoD verification of the security clearance.

3.    Counsel who does not currently possess a Secret clearance will be required to submit to an application for clearance to the Department of Justice, Litigation Security Division. Counsel will not be denied access to NEC detainees on the ground that he or she is not a citizen of the United States, provided he or she is otherwise eligible for security clearance at the Secret level or higher, or its equivalent.

4.    The Court recognizes that some detainees' primary language is one spoken only by a small number of persons within the United States. Counsel for Petitioners and for Respondents will use their best efforts to resolve issues pertaining to any difficulties in identifying translators who speak the detainee's native language. If the parties are unable to resolve such issues cooperatively, the Court may at its discretion order that particular translators or interpreters be given access to NEC detainees, absent a particularized showing by counsel for Respondents why that person should not be given access.

B.    <u>Acknowledgment of and Compliance with Access Procedures</u>

1.    Before being granted access to the detainee, counsel will receive a copy of these procedures. To have access to the detainee, counsel must agree to comply fully with these procedures and must sign an affirmation acknowledging his/her agreement to comply with them.

2.    This affirmation will not be considered an acknowledgment by counsel that the procedures are legally permissible. Even if counsel elects to challenge these procedures, counsel may not knowingly disobey an obligation imposed by these procedures.

3.    The DoD expects that counsel, counsel's staff, and anyone acting on the behalf of the attorney will fully abide by the requirements of this document. Counsel is required to provide the DoD with signed affirmations from interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation, upon utilization of those individuals by counsel in a manner that implicates these procedures.

4.    Should counsel fail to comply with the procedures set forth in this document, access to or communication with the detainee will not be permitted.

C.    <u>Verification of Representation</u>

1.    Prior to being permitted access to the detainee, counsel must provide DoD with a *Notification of Representation*. This Notification must include the counsel's licensing information, business and email addresses and phone number, as well as the name of the detainee being represented by the counsel.

2.    Counsel shall provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with the detainee. The Court recognizes that counsel may not be in a position to present such evidence after the initial meeting with a detainee. Counsel for detainees and counsel for respondents shall cooperate to the fullest extent possible to reach a reasonable agreement on the number of counsel visits allowed. Should counsel for a detainee believe that the

government is unreasonably limiting the number of visits with a detainee, counsel may petition the Court at the appropriate time for relief.

3.     If the counsel withdraws from representation of the detainee or if the representation is otherwise terminated, counsel is required to inform DoD immediately of that change in circumstances.

4.     Counsel must provide DoD with a signed representation stating that to the best of counsel's knowledge after reasonable inquiry, the source of funds to pay counsel any fees or reimbursement of expenses are not funded directly or indirectly by persons or entities the counsel believes are connected to terrorism or the product of terrorist activities, including "Specially Designated Global Terrorists," identified pursuant to Exec. Order No. 13,224, 66 Fed. Reg. 49,079 (Sept. 23, 2001) or Exec. Order No. 12,947, 60 Fed. Reg. 5079 (Jan. 23, 1995), and (b) counsel has complied with ABA Model Rule 1.8(f).

D.    Logistics of Counsel Visits

1.     Counsel shall submit to the Department of Justice (DoJ) any request to meet with a detainee. This request shall specify date(s) of availability for the meeting and the desired duration of the meeting. Reasonable efforts will be made to accommodate the counsel's request regarding the scheduling of a meeting. Once the request has been approved, DoJ will contact counsel with the date and duration of the meeting.

2.     Legal visits shall take place at the camp where the NEC detainee is housed. (The Court understands that NEC detainees are presently housed in "Camp Iguana.") The NEC detainee shall not be handcuffed, shackled, or similarly restrained during counsel visits. The NEC detainee shall not be subjected to additional restrictions (e.g. solitary confinement) or the loss or privileges due to counsel visits. No more than two attorneys (or one attorney and one assistant) plus one interpreter/translator shall visit with a detainee at one time, unless approved in advance by the Commander, JTF-Guantanamo. Such approval shall not be unreasonably withheld.

3.     Due to the mission and location of the US Naval Base at Guantanamo Bay, Cuba, certain logistical details will need to be coordinated by counsel prior to arrival. This includes arrangements for travel and lodging. Specific information regarding these issues will be provided by DoJ.

4.     In order to travel to GTMO, all counsel must have a country and theater clearance for that specific visit. In order to begin processing country and theater clearances, counsel must have confirmed flight information for travel to GTMO. Country and theater clearances require twenty (20) days to process. Accordingly, counsel shall provide DoD, through DoJ, with the required information no later than 20 days prior to the GTMO visit date, or as soon as a visit is scheduled. Requests for visits made inside of 20 days will not normally be granted.

5.     For each counsel visit with an NEC detainee, DoD shall reimburse counsel for the out-of-pocket travel and billeting costs of one attorney and one translator.

IV.    **Correspondence Procedures**

A.    Mail Sent by Counsel to Detainee ("Incoming Mail")

1.     Written communications between counsel and an NEC detainee are not limited to legal mail. In addition to legal mail, written communications from counsel

may include, but are not limited to, books, magazines, newspapers, other written material and electronic material. Counsel may send incoming legal mail or other written communications to the appropriate address provided by government counsel. Each envelope or mailer shall be labeled with the name of the detainee and shall include a return address for counsel sending the materials. The outside of the envelope or mailer for incoming legal mail shall be labeled clearly with the following annotation: "Attorney-Detainee Materials-For Mail Delivery to Non-Enemy Combatant Detainee."

2.      Each page of legal mail shall be labeled "Attorney-Detainee Materials." No staples, paper clips or any non-paper items shall be included with the documents.

3.      Counsel may also send incoming legal mail or other written communications from counsel for a detainee via facsimile to an appropriate facsimile number maintained at Guantanamo Bay Naval Station. Facsimile communications shall be delivered to NEC detainees within two (2) business days of their transmission.

4.      Upon receiving a written communication from counsel for delivery to the detainee, the privilege team shall open the envelope or mailer to search the contents for prohibited physical contraband. Written Material and Electronic Material shall not be withheld, and its delivery shall not in any way be delayed, by reason of content. Within two (2) business days of receipt of legal mail or other written communications from counsel, and assuming no physical contraband is present, the communication shall be forwarded to military personnel at GTMO in a sealed envelope marked "Legal Mail Approved for Delivery to Non-Enemy Combatant Detainee" and clearly indicating the identity of the detainee to which the legal mail is to be delivered. The privilege team shall ensure that written material and electronic material addressed to an NEC detainee shall be delivered to JTF-Guantanamo personnel within seven (7) days of the privilege team's reciept of such written material or electronic material.

5.      Within two (2) business days of receipt of a written communication from counsel, personnel at GTMO shall deliver the envelope or mailer marked by the privilege team as "Legal Mail Approved for Delivery to Non-Enemy Combatant Detainee" to the detainee without opening the envelope or mailer.

6.      As provided at § IX(B) below, certain types of information learned by counsel from the NEC detainee are presumed to be classified. Counsel is required to treat all such information learned from a detainee, including any oral and written communications with a detainee, as classified information, unless and until the information is submitted to the privilege team and determined to be otherwise by the privilege team or by this Court or another court. Accordingly, if a counsel's correspondence contains any summary or recitation of or reference to classified information learned by counsel from the NEC detainee that has not been previously determined to be unclassified, the correspondence shall be prepared, marked, transported and handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information and Security Supplement to DOD Regulation 5200.1 R.

8.      Written and oral communications with a detainee, including all incoming legal mail, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

B.   Mail Sent by NEC Detainee to Counsel ("Outgoing Mail")

1.   Detainees will be provided with paper and writing instruments at all times. In the presence of military personnel, the detainee will seal the written communication into an envelope and it will be annotated as "Attorney-Detainee Materials-For Mail Delivery To Counsel." Each envelope shall be labeled with the name of the detainee and the counsel. Envelopes annotated with the name of persons other the detainee's counsel (including family/friends or other attorneys) shall be processed according to the standard operating procedures for detainee non-legal mail.

2.   Military personnel will collect the outgoing legal mail within one (1) business day of being notified by the detainee that the communication is prepared for sealing and mailing.

3.   After the outgoing legal mail is collected from the detainee, the envelope will be sealed into a larger envelope by military personnel at Guantanamo which will be marked as "Attorney-Detainee Materials-For Mail Delivery To Counsel" and will be annotated with the name of the detainee and the counsel. Within two (2) business days of receipt from the detainee, the communication will be mailed to the appropriate address as provided by government counsel. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

4.   Detainees also are permitted to send non-legal mail, including written communications to persons other than counsel, through the United States Postal Service. These communications shall be reviewed by military personnel at Guantanamo under the standard operating procedures for detainee non-legal mail. Mailing shall be by a method that ensures delivery to addresses within the United States within seven (7) days of mailing, absent extraordinary circumstances.

5.   In the event any non-legal correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) are sent to counsel as, or included with, legal mail, counsel shall return the documents to military personnel at GTMO for processing according to the standard operating procedures for detainee non-legal mail.

C.   Mail Sent by NEC Detainee to Persons Other than Counsel

1.   NEC detainees shall be permitted to send and receive correspondence with persons other than counsel.

2.   Letters from NEC detainees and delivered to guards will be placed in the U.S. Mail within seven days of receipt by guards.

D.   Records of Mail to and from NEC detainees

1.   JTF-Guantanmo personnel shall maintain a log of all correspondence sent by NEC detainees, including the addressee, the date such correspondence was delivered by the detainee to JTF-Guantanamo personnel for mailing, and the date and method of transmission to the addressee.

2.   In the case of correspondence sent by the NEC detainee to counsel, JTF-Guantanmo shall notify the attorney recipient that mail has been sent. Such notice shall be by telephone, facsimile or email not later than three days after receipt for mailing of the correspondence by JTF-Guantanmo personnel.

3.   The privilege team shall maintain a log of all correspondence directed to NEC detainees, including the addressee, sender, the date such correspondence was received by the privilege team, and the date and method by which such correspondence was transmitted to JTF-Guantanamo personnel.

4.   JTF-Guantanamo personnel shall maintain a log of all detainee correspondence received, including the address, the sender, the date received and the date deliverd to the detainee.

5.   Each of the logs provided for at §§ IV(D)(1), (3) and (4) shall be made available for inspection at counsel's request. Alternatively, and at counsel's discretion, counsel will be provided with copies of any pages thereof pertaining to counsel's client. Such copies shall be provided not later than seven (7) calendar days from the date of counsel's request.

## V.   Materials Brought Into A Meeting Between NEC Detainee And Counsel

A.   Counsel may bring legal mail, written material, electronic material, writing utensils and paper into any meeting with a NEC detainee. Counsel may bring other materials into a meeting with an NEC detainee with the prior approval from the Commander, JTF-GTMO.

B.   Written and oral communications with a detainee, including all documents brought into a meeting with a detainee, shall not include information relating to any ongoing or completed military, intelligence, security, or law enforcement operations, investigations, or arrests, or the results of such activities, by any nation or agency or current political events in any country that are not directly related to counsel's representation of that detainee; or security procedures at GTMO (including names of U.S. Government personnel and the layout of camp facilities) or the status of other detainees, not directly related to counsel's representation.

## VI.   Materials Brought Out Of A Meeting With NEC Detainee And Counsel

A.   In most circumstances, notes or documents used or produced during a meeting between counsel and an NEC detainee shall be retained by counsel, and need not be treated as classified or surrendered to JTF-Guantanamo personnel.

B.   If counsel's notes or documents used or produced during a meeting between counsel and an NEC detainee include information regarding (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs, then upon the completion of each meeting with a detainee or during any break in a meeting session, counsel will give the pages of notes or documents containing such information, and only such pages to a designated individual at Guantanamo. These materials will be sealed in the presence of counsel and will be handled as classified material as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1 R.

C.   Upon the completion of the counsel's visit to Guantanamo, counsel's notes or documents used or produced during the visit between counsel and an NEC detainee that include information regarding (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs shall be sealed in the presence of counsel and placed in an envelope labeled as "Attorney-Detainee Meeting Documents-For Delivery to Counsel." The envelope shall be sealed into a larger envelope by military personnel at Guantanamo which shall be marked as "Attorney-Non-Enemy Combatant Detainee Meeting Documents-For Mail Delivery To Counsel" and shall be annotated with the name of the NEC detainee and the counsel. The envelope shall be sealed and mailed in the manner required for classified materials. Within two (2) business days following the completion of the counsel's visit to Guantanamo, the package

shall be mailed to the appropriate address provided by government counsel.

D.    Correspondence or messages from a detainee to individuals other than his counsel (including family/friends or other attorneys) shall not be handled through this process. If a detainee provides these communications to his counsel during a visit, counsel shall give those communications to military personnel at Guantanamo so they can be processed under the standard operating procedures for detainee non-legal mail.

**VII.    Classification Determination of Detainee Communications**

A.    Information provided to counsel by an NEC detainee shall not be presumed to be classified or protected unless it relates to one or more of the following: (i) nonpublic information concerning the security of JTF-Guantanamo facilities; or (ii) nonpublic information concerning detainees who counsel knows or reasonably believes to be classified currently as "enemy combatants" by DoD. Upon inquiry by counsel, DoD shall state within seven calendar days whether a detainee is classified currently as an "enemy combatant."

B.    For the avoidance of doubt, no "next-friend" authorization or other information related to the desire of any detainee for counsel shall be deemed classified.

C.    If information provided to counsel is presumptively classified or protected because it relates to the subjects identified above, counsel shall treat it as classified material unless and until the information is submitted to the privilege team and determined to be otherwise.

D.    If counsel receives from an NEC (i) nonpublic information concerning the security of JTF Guantanamo facilities, or (ii) nonpublic information concerning detainees who are not NECs, counsel may submit such information to the privilege team for a determination of its appropriate security classification. Counsel shall memorialize the information submitted for classification review into a written memorandum outlining as specifically as possible the information for which counsel requests a classification determination. All documents submitted for classification review shall be prepared, handled and treated in the manner required for classified materials, as provided by as required by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD Information Security Supplement to DOD Regulation 5200.1R. No information derived from these submissions shall be disclosed outside the privilege team pursuant to these procedures until after the privilege team has reviewed it for security and intelligence purposes. Absent express consent given by the Court, or except as otherwise provided in this document, the submissions shall not be disclosed to any person involved in the interrogation of a detainee, and no such individual may make any use of those communications whatsoever, nor shall the submissions be disclosed to any Government personnel involved in any domestic or foreign court, military commission or combatant status tribunal proceedings involving the detainee.

E.    Counsel shall send all materials submitted for classification review to the appropriate address to be provided by government counsel. The outside of the envelope or mailer shall be clearly labeled "Attorney-Non-Enemy Combatant Detainee Meeting Documents-For Classification Review By Privilege Team." Each envelope or mailer shall be annotated with the name of the NEC detainee and the counsel. Each page of the document submitted for classification review shall be marked "Attorney-Detainee Materials" and "Classified." The envelope or mailer will be sealed and mailed in the manner required for classified materials.

F.    As soon as possible after conducting the classification review, the privilege team shall advise counsel of the classification levels of the information contained in the materials

submitted for review. The privilege team shall forward its classification determination directly to counsel after a review and analysis period not to exceed, from the time of receipt by the privilege team:

1.    Seven (7) business days for information that is written in the English language;

2.    Fourteen (14) business days for any information that includes writing in any language other than English, to allow for translations by the privilege team;

3.    Twenty (20) business days for any information where the privilege team has reason to believe that a code was used, to allow for further analysis.

G.    While conducting classification review, the privilege team shall promptly report any information that reasonably could be expected to result in immediate and substantial harm to the national security to the Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials as appropriate.

H.    If, at any time, the privilege team determines that information in the documents submitted for classification review relate to imminent acts of violence, the privilege team shall report the contents of those documents to Commander, JTF-Guantanamo. In his discretion, the Commander, JTF-Guantanamo may disseminate the relevant portions of the information to law enforcement, military and intelligence officials.

I.    The privilege team shall not disclose any information submitted by counsel for classification review outside the privilege team, except as provided by these procedures or as permitted by counsel submitting the information.

**VIII.    Telephonic Access to Detainee**

A.    DoD shall maintain one or more telephones within Camp Iguana for use by NEC detainees, and shall provide counsel and NEC detainees with these telephone number(s). NEC detainees shall have unlimited access to telephones. The cost of telephone calls made by NECs shall be borne by DoD.

B.    Telephone calls between counsel and an NEC detainee shall not be monitored.

C.    An NEC detainee's unlimited telephone access shall include the ability to make and receive telephone calls from persons other than counsel. Such telephone calls may be monitored solely for the purpose of preventing release of classified information concerning (1) the security of JTF Guantanamo facilities or (2) persons not classified as NEC detainees who are detained there.

**IX.    Counsel's Handling And Dissemination Of Information From Detainee**

A.    Subject to the terms of any applicable protective order, counsel may disseminate the unclassified contents of the detainee's communications for purposes reasonably related to their representation of that detainee.

B.    Counsel is not required to treat information learned from a detainee as classified information, unless that information concernins (i) the security of JTF Guantanamo facilities or (ii) persons not classified as NEC detainees who are detained there. Information regarding the security of JTF Guantanamo or persons not classified as NEC detainees who are detained there shall be treated as classified information unless and until the information is submitted to the privilege team and determined to be otherwise. All classified material must be handled, transported and stored in a secure manner, as provided by Executive Order 12958, DOD Regulation 5200.1-R and AI 26, OSD

Information Security Supplement to DOD Regulation 5200.1 R.

C.   Counsel shall disclose to DoJ or Commander, JTF-Guantanamo any information learned from a detainee involving future events that threaten national security or involve imminent violence.

D.   Counsel may not divulge classified information not learned from the detainee to the detainee. Counsel may not otherwise divulge classified information related to a detainee's case to anyone except those with the requisite security clearance and need to know using a secure means of communication. Counsel for detainees in Guantanamo Bay *habeas corpus* cases pending in the United States District Court for the District of Columbia are presumed to have a "need to know" information in related cases pending before this Court. Counsel for respondents in those cases may challenge this presumption on a case-by-case basis for good cause shown.

## X.   JTF-Guantanamo Security Procedures

A.   Counsel and translators/interpreters shall comply with the following security procedures and force protection safeguards applicable to the US Naval Base in Guantanamo Bay, Cuba, JTF-Guantanamo and the personnel assigned to or visiting these locations, as well as any supplemental procedures implemented by JTF-Guantanamo personnel.

B.   Contraband is not permitted in JTF-Guantanamo and all visitors are subject to search upon arrival and departure.

C.   Photography or recording of any type is prohibited without the prior approval of the Commander, JTF-Guantanamo, which shall not be unreasonably withheld. An NEC detainee's informed consent to be photographed or recorded shall be presumptive evidence of the reasonableness of such request. Except as approved by the Commander, no electronic communication devices are permitted. All recording devices, cameras, pagers, cellular phones, PDAs, laptops, portable electronic devices and related equipment are prohibited in or near JTF-Guantanamo. Should any of these devices be inadvertently taken into a prohibited area, the device must be surrendered to JTF-Guantanamo staff and purged of all information.

D.   Upon arrival at JTF-Guantanamo, security personnel will perform a contraband inspection of counsel and translators/interpreters using metal detectors as well as a physical inspection of counsel's bags and briefcases and, if determined necessary, a physical inspection of his/her person.

E.   Counsel shall not be permitted to interview or question members of the Joint Task Force about their duties or interactions with detainees without first obtaining permission from the Commander, Joint Task Force Guantanamo. Should permission be unreasonably denied, counsel may seek an Order from this Court granting permission for good cause shown.

F.   As provided in § III(D)(2), Counsel will meet with a NEC detainee at the camp where the NEC detainee is housed. These meetings may be monitored visually only to the same extent the camp is visually monitored by JTF-Guantanamo security personnel when counsel is not present. JTF-Guantanamo personnel shall ensure that no oral communications between counsel and detainee will be heard or monitored in any way.

G.   At the conclusion of a meeting with a detainee, counsel and translators/interpreters will again be inspected using a metal detector and, if deemed necessary, by physical inspection of their persons.

## Manning, Susan Baker

| | |
|---|---|
| **From:** | Manning, Susan Baker |
| **Sent:** | Wednesday, October 19, 2005 2:06 PM |
| **To:** | 'Terry.Henry@usdoj.gov' |
| **Cc:** | Willett, P. Sabin; Andrew.Warden@usdoj.gov |
| **Subject:** | Qassim & Kiyemba -- Revised NEC Access Procedures |

Terry --
Please see attached correspondence.

regards,
Susan


Susan Baker Manning, Esq.
**Bingham McCutchen LLP**
1120 20th Street NW, Suite 800
Washington DC 20036
202.778.6172 (t)
202.778.6155 (f)
susan.manning@bingham.com

# EXHIBIT E

**Manning, Susan Baker**

| | |
|---|---|
| **From:** | Terry.Henry@usdoj.gov |
| **Sent:** | Thursday, October 20, 2005 5:54 PM |
| **To:** | Manning, Susan Baker |
| **Cc:** | Willett, P. Sabin |
| **Subject:** | Kiyemba & Qassim |



20051020_141032_
0373.pdf

Susan:

I am responding to the e-mails sent by you or Sabin yesterday at 2:09 pm, 2:36 pm, 4:19 pm, and 5:46 pm.

As to your 2:36 pm e-mail regarding the amended petition in Kiyemba, I am attaching the signed stipulation regarding the proposed amended petition attached to your e-mail.

As to your 4:19 pm e-mail and Sabin's 5:46 e-mail with attached correspondence regarding your request for access to purported petitioners in Kiyemba other than "Saadiq Turkistani," our position should have been clear from my recent exchange of e-mails with Sabin as well as from our recent response to your motion for contempt. While the information you have provided has enabled an identification of "Hudhaifa Doe" as a detainee held as an enemy combatant, next-friend standing and proper representation/authorization of the petitioners other than Mr. Turkistani must be straightened out or resolved prior to processing requests for visits with those petitioners.

Finally, in the correspondence attached to your 2:09 pm e-mail, you propose significant revisions to the current counsel access provisions as they pertain to petitioners who have been determined to be "no longer enemy combatants." While you state that "[y]ou would like to work cooperatively with DOJ to build upon" steps the Department of Defense has already voluntarily undertaken to permit NLECs telephone calls with counsel and family and meetings with counsel in Camp Iguana, you threaten to seek court relief on Friday, Oct. 21, unless DOJ stipulates to your proposed revisions by then, thus providing DOJ only two days to consider and agree to your proposals. Requiring a response in two days is wholly unreasonable. You are proposing significant revisions to a counsel access regime that has been in place and has governed Guantanamo habeas cases for almost a year. The unreasonableness of your demand is also emphasized by the fact that your e-mail came just over an hour after Sabin participated in a telephone conference with members of the Calendar Committee of the Court in which it was made clear that the Court was considering whether to approach issues of revision of the Protective Order and Counsel Access Procedures in a coordinated fashion.

We will consider your proposal and intend to respond to you appropriately next week, unless you divert our ability to do so and to consider the matter in a reasonable fashion by prematurely filing your intended motions.

Sincerely,

Terry M. Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107

EXHIBIT F

# Manning, Susan Baker

| | |
|---|---|
| **From:** | Willett, P. Sabin |
| **Sent:** | Friday, October 21, 2005 10:05 AM |
| **To:** | 'Terry.Henry@usdoj.gov' |
| **Cc:** | Manning, Susan Baker |
| **Subject:** | RE: Kiyemba & Qassim/Revised PO/Timing of Motion |

Terry --

Susan and I have reconsidered your objection with respect to the timing of our motion to modify the protective order in cases involving non combatants.  As an accommodation to the Government, we are willing to wait until Monday Oct. 24 before we file.  If we receive commitments to specified, significant changes, then even if we are not yet in full agreement, we will consider further holding the motion while we negotiate.

Thus far, of course, we have received nothing substantive from your side.

Please note, in light of recent positions the Gov't has asserted, that the revised protective order will have to expressly obligate the Government accommodate the needs of detainees to communicate with counsel.

Regards,
Sabin

-----Original Message-----
From: Willett, P. Sabin
Sent: Thursday, October 20, 2005 5:01 PM
To: 'Terry.Henry@usdoj.gov'
Cc: Manning, Susan Baker
Subject: Kiyemba & Qassim

Dear Terry:

1.     Thank you for the stipulation.  I take it then that we are confirmed for our visit to the base in November.

2.     Your position with respect to the remaining petitioners is clear, and leaves us no alternative but to proceed in court for contempt.  As I have said before, I do believe that your position on the part of the government represents contempt of the protective order.  I encourage you to reconsider, so that we could avoid ancillary litigation.  A visit with our clients certainly would help us "straighten out and resolve" any questions of next-friend standing or proper representation that you believe exist.  It seems to me you could permit us to meet these clients during our November visit without waiver of your position on the show-cause motion (or any other motions).  If waiver is your concern please do let me know.  I'm sure we could work out an agreement on that point.

3.     With respect to the revised NEC protective order, we are, somewhat belatedly, following up on the approach that Judge Robertson suggested in Qassim last August.  The delay is my fault, and due to the press of other business, but in fairness to our clients, every day counts, and so we need to move promptly in light of what we believe are the inappropriate access limitations for NECs, and in light, unfortunately, of the inordinate delays experienced by habeas counsel who negotiated the initial order.  I do plan to file tomorrow.  We will certainly be happy to speak with you about the draft before then, or indeed after then, and would be delighted if we were able to present the Court with a joint order prior to its ruling.

        As far as yesterday's call, a couple of points.  The first is that I was unaware that the call was to occur until the day before yesterday, or I would certainly have advised Judge Kessler of this issue, and offered a submission.  I actually joined the call for the purpose of calling this issue to her attention.  The call ended before I could bring the matter up.  (I think you will agree that the Court rather briskly called a halt to discussion.)  For that reason, I forwarded an email on the point to the court's clerks

1

(on which I copied you) advising them of the issue.  For your information, I have not
heard back in response to that email, so I don't know if Judges Kessler or Bates will be
interested in the issue at all.  If I do hear anything, I will let you know directly.  I
think, however, in fairness to the point you make, we will certainly advise Judge
Robertson (although he likely knows already) in our papers that Judges Kessler and Bates
have collected information relative to EC protective orders.

Very truly yours,

Sabin
-----Original Message-----
From: Terry.Henry@usdoj.gov [mailto:Terry.Henry@usdoj.gov]
Sent: Thursday, October 20, 2005 4:08 PM
To: Manning, Susan Baker
Cc: Willett, P. Sabin
Subject: Kiyemba & Qassim

Susan:

I am responding to the e-mails sent by you or Sabin yesterday at 2:09 pm, 2:36 pm, 4:19
pm, and 5:46 pm.

As to your 2:36 pm e-mail regarding the amended petition in Kiyemba, I am attaching the
signed stipulation regarding the proposed amended petition attached to your e-mail.

As to your 4:19 pm e-mail and Sabin's 5:46 e-mail with attached correspondence regarding
your request for access to purported petitioners in Kiyemba other than "Saadiq
Turkistani," our position should have been clear from my recent exchange of e-mails with
Sabin as well as from our recent response to your motion for contempt.  While the
information you have provided has enabled an identification of "Hudhaifa Doe" as a
detainee held as an enemy combatant, next-friend standing and proper
representation/authorization of the petitioners other than Mr. Turkistani must be
straightened out or resolved prior to processing requests for visits with those
petitioners.

Finally, in the correspondence attached to your 2:09 pm e-mail, you propose significant
revisions to the current counsel access provisions as they pertain to petitioners who have
been determined to be "no longer enemy combatants."  While you state that "[y]ou would
like to work cooperatively with DOJ to build upon" steps the Department of Defense has
already voluntarily undertaken to permit NLECs telephone calls with counsel and family and
meetings with counsel in Camp Iguana, you threaten to seek court relief on Friday, Oct.
21, unless DOJ stipulates to your proposed revisions by then, thus providing DOJ only two
days to consider and agree to your proposals.  Requiring a response in two days is wholly
unreasonable.  You are proposing significant revisions to a counsel access regime that has
been in place and has governed Guantanamo habeas cases for almost a year.  The
unreasonableness of your demand is also emphasized by the fact that your e-mail came just
over an hour after Sabin participated in a telephone conference with members of the
Calendar Committee of the Court in which it was made clear that the Court was considering
whether to approach issues of revision of the Protective Order and Counsel Access
Procedures in a coordinated fashion.

We will consider your proposal and intend to respond to you appropriately next week,
unless you divert our ability to do so and to consider the matter in a reasonable fashion
by prematurely filing your intended motions.

Sincerely,

Terry M. Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107