UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

ZAKIRJAN,

    Petitioner/Plaintiff,

v.

GEORGE W. BUSH, *et al.*,

    Respondents/Defendants.

Case No. 05 Cv 2053 (HHK)

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PETITIONER'S EMERGENCY MOTION FOR
<u>IMMEDIATE RELEASE AND/OR PRODUCTION OF THE BODY</u>**

    Petitioner Zakirjan (hereinafter "Petitioner") respectfully submits this reply memorandum in further support of his Emergency Motion for Immediate Release and/or Production of the Body.

**PRELIMINARY STATEMENT**[1]

    As this Court has already held in a similar case, there is no legal basis for the continued detention of non-enemy combatants such as Petitioner, who Respondents determined is <u>not</u> an enemy combatant more than <u>nine months</u> ago. See Qassim v. Bush, No. 05-0497 Civ. (JR), 2005 WL 3508654 (D.D.C. December 22, 2005) ("Qassim") at *3. Nor do Respondents possess any so-called "wind-up" power that could provide a basis for Petitioner's continued

---

[1] As expected, in an effort to further delay the release of Petitioner – an indisputably innocent man – subsequent to the filing of the instant motion Respondents submitted papers to this Court misconstruing the recently enacted Department of Defense Appropriations Act, Pub. L. No. 109-148, 119 Stat. 2680 (2005), (the "Appropriations Act"), to argue that this Court no longer has jurisdiction to grant Petitioner's habeas corpus petition and order his release. See Notice of Supplemental Authority, dated Jan. 4, 2006 (Docket No. 34) (informing the Court that Respondents intend to file a motion to dismiss Petitioner's Petition for Writ of Habeas Corpus dated Oct. 17, 2005 (the "Petition") on the grounds that the Appropriations Act retroactively removes jurisdiction over the Petition). Respondents' position, among other things, is contrary to Congress's clearly expressed intent and would violate the Constitution's suspension clause. See U.S. Const., Art. I, § 9. Petitioner will respond to Respondents' motion to dismiss in due course.

detention.  See id. at *2.  The Court is thus compelled as a matter of law to grant the writ and order Petitioner's release.

The Court should also reject Respondents' efforts to interfere with Petitioner's ability to communicate with his counsel and the outside world generally by refusing to transfer him from a military prison located in Guantánamo Bay, Cuba.  Petitioner is not an "enemy combatant"; nor do Respondents assert that he is the subject of any criminal charges, in the United States or elsewhere.  In fact, he is an innocent man who all agree should be released.  There is no basis for Respondents' position that Petitioner must remain locked up in Guantánamo – thousands of miles away from counsel, friends and family – until Respondents determine when and under what circumstances to release him.   This Court has broad discretion to issue orders necessary to fashion an effective remedy, including requiring Respondents to transfer Petitioner to a non-military facility pending the determination of a suitable destination country where he can meet freely with, among others, his counsel and representatives of the United Nations High Commission for Refugees ("UNHCR"), an organization charged with assisting refugees such as Petitioner in their resettlement efforts.  Accordingly, the Court should order Respondents to transfer Petitioner to Washington, D.C. – or another location outside of Guantánamo where Petitioner would be permitted to communicate freely with counsel and UNHCR representatives – pending his final release.

**POINT I**

**THERE IS NO BASIS FOR DENYING
THE WRIT OF HABEAS CORPUS**

Respondents' only purported legal justification for Petitioner's continued detention is their novel theory of a "wind-up" power, which they argue allows the government to detain <u>indefinitely</u> even those prisoners who were <u>wrongly imprisoned</u> until the government

2

decides when and under what circumstances to release them.  See Respondents' Opposition to Petitioner's Emergency Motion for Immediate Release and/or Production of the Body ("Opp.") at 4, 10.  However, as Judge Robertson held in Qassim, "[t]here is no basis for this claimed authority except the Executive's assertion of it."  Judge Robertson's Aug. 19, 2005 Order at 3 in Qassim v. Bush, No. 05-CV-0497; see also id. (noting that the "status of 'enemy combatant' has been, until now, the only handhold for the government's claim of executive authority to hold detainees at Guantánamo."); Rasul v. Bush, 542 U.S. 466, 488 (2004) (recognizing that indefinite detention "suggests a weaker case of military necessity and much greater alignment with the traditional function of habeas corpus") (Kennedy, J., concurring); INS v. St. Cyr, 533 U.S. 289, 302-03 (2001); Brown v. Allen, 344 U.S. 443, 532 (1953) (Jackson, J., concurring), overruled on other grounds; Williams v. Taylor, 529 U.S. 362, 410-11 (2000); Ex Parte Burford, 7 U.S. 448, 453 (1806).

      Respondents' reliance upon Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) is misplaced.  Although the Court in Hamdi noted that "[t]he capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war,'" Opp. at 4 (quoting Hamdi), it does not follow that the government may detain indefinitely those men who have been found not to be "enemy-combatants" at all as a result of the "trials" conducted by the Combatant Status Review Tribunal ("CSRT").  See Qassim at *3 ("The detention of these prisoners has by now become indefinite.  This indefinite imprisonment at Guantánamo Bay is unlawful."); see also Transcript of Status Conference Before the Honorable James Robertson in Qassim v. Bush, 05-CV-0497, dated Dec. 12, 2005, at 7-8 ("The time has stretched out to the point where indefinite is not an inappropriate word to describe what's happened.").  As a result of the CSRT process, Respondents themselves

have determined that the "capture" and "detention" of Petitioner was based upon false allegations; Respondents cannot be heard to say that the continued unlawful detention of an innocent man is somehow an "important incident[] of war." Hamdi 124 S. Ct. at 2640.

      Nor does Shaughnessy v. Mezei, 345 U.S. 206 (1953) ("Mezei"), support Respondents' position that they have the right to indefinitely imprison an innocent man who finds himself a refugee as a result of Respondents' decision to abduct him from abroad and transfer him to a United States military base based solely upon allegations later proven to be false. See Opp. at 4-5. Unlike Petitioner here, the petitioner in Mezei appeared voluntarily at a United States port, and his presence on Ellis Island was "temporary harborage, an act of legislative grace" to avoid the hardship of being confined to a ship while his case was considered. Mezei 345 U.S. at 215. As Respondents concede, the only issue before the Court in Mezei was whether the Executive had the right to exclude the petitioner from entering the United States,[2] not whether it could detain him indefinitely while at the same time preventing him from seeking refuge in another land, as Respondents seek to do here. Indeed, the government recognized in Mezei that the petitioner was "free to depart from the United States to any country of his choice," id. at 220 (emphasis added), and in fact did leave Ellis Island and sailed to both France and Great Britain to seek entry into those countries; it was only after being denied entry there that he returned to the United States and petitioned for entry. See id. at 208-9, 219; see also id. at 209 ("Respondent personally applied for entry to about a dozen Latin American countries but all turned him down. So in June 1951 respondent advised the Immigration and Naturalization Service that he would exert no further efforts to depart.").

---

[2] As set forth below, see infra at 5-6, Respondents reliance upon Mezei in support of their position that this Court cannot require the transfer of Petitioner to Washington, D.C. is also misplaced.

4

By this motion, Petitioner merely seeks an order stating what all agree is required: that Petitioner, an innocent man, be released from military custody. That Respondents have thus far been unable or unwilling to find a suitable destination country is no reason for denying this relief. Indeed, without it Respondents will continue to assert without legal basis that they possess the sole authority to determine when, to what country, and under what circumstances Petitioner may be released.[3]

## POINT II

**THE COURT SHOULD ORDER RESPONDENTS TO
RELEASE PETITIONER FROM MILITARY CUSTODY UNTIL
A SUITABLE DESTINATION COUNTRY CAN BE DETERMINED**

As explained above, the Court can and should grant the writ and order Petitioner's release. Pending the determination of a suitable destination country, Petitioner should be transferred to Washington, D.C. or, at the very least, out of military custody to a location outside of Guantánamo Bay where he may freely communicate with his counsel and representatives of the UNHCR. The Court has broad discretion to order the remedy necessary to do justice, including release from military custody pending transfer of Petitioner to a third country. See Carafas v. LaVallee, 391 U.S. 234, 239 (1968); see also In re Bonner 151 U.S. 242, 261 (1894) ("The Court is invested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus").

Respondents' reliance upon cases involving the government's attempt to prevent an alien from "entering" the United States is misplaced. See, e.g., Opp. at 4-5 (citing Mezei).

---

[3] The government's suggestion that the Court should stay the proceedings on the "merits" of the Petition pending appeals in other cases involving alleged enemy combatants is misguided. See Opp. at 2. There is no basis in law for the continued detention of innocent men such as Petitioner, who the government concedes is not an enemy combatant, regardless of how the court of appeals may rule in the appeals in Khalid v. Bush, 355 F. Supp.2d 311 (D.D.C. 2005), appeals pending Nos. 05-5062, 05-5063 (D.C. Cir.) and In re Guantánamo Detainee Cases, 355 F. Supp.2d 443 (D.D.C. 2005), appeal pending on petition for interlocutory appeal, No. 05-5064 (D.C. Cir.).

5

As explained in Petitioner's opening brief, Petitioner is already in the United States. See Memorandum of Law in Support of Petitioner's Emergency Motion for Immediate Release and/or Production of the Body dated December 16, 2005 ("Motion for Release") at 15 (citing Rasul v. Bush, 542 U.S. 466 (2004)). As the Supreme Court recognized in Rasul, the military base in Guantánamo Bay, Cuba is in "the territorial jurisdiction" of the United States. Rasul 542 U.S. at 480; see also id. at 475 (United States "exercises plenary and exclusive jurisdiction over" Guantánamo Bay). Petitioner does not therefore seek to be transferred "into" the United States, but merely "within" it.[4] See also Miller v. Overholser, 206 F.2d 415, 419-20 (D.C. Cir. 1953) ("We think it has been settled since the decision of the Supreme Court in In re Bonner that the writ is available to test the validity not only of the fact of confinement but also of the place of confinement.").

Although Respondents' opposition to this motion is couched in terms of opposing Petitioner's "entry" into the United States, they apparently are most concerned about preventing Petitioner from making independent efforts toward resettlement in a third country. Petitioner's transfer from military custody would enable Petitioner to meet freely with counsel and UNHCR representatives, thereby providing him with a meaningful opportunity to pursue an effective remedy to his unlawful detention.[5] A refugee's search for a country in which to resettle is not, as Respondents contend, a "core . . . matter[] of war making" that the Executive may choose to

---

[4] This is not in any event a case in which other nations are attempting to "shift the onus" of admitting undesirable aliens who are "no more ours than theirs." See Mezei 345 U.S. at 216. The United States made Petitioner "ours" by kidnapping him from abroad and transferring him against his will to Guantánamo Bay, a territory over which it exercises exclusive and plenary jurisdiction.

[5] Respondents assertion that Petitioner's request to be released from military custody pending the determination of a suitable destination country is based upon "unsupported speculation that [it] might facilitate as yet hypothetical future efforts by the [UNHCR] to refer him to an asylee country" misses the point. Opp. at 10. It is beyond dispute that Respondents have been unable for almost a year to find a suitable destination country for Petitioner. Respondents would suffer no harm by permitting Petitioner to make independent efforts to accomplish what Respondents apparently cannot.

6

grant or deny without the review of this Court. See Opp. at 10 (citing Hamdi v. Rumsfeld, 124 S. Ct. at 2647). On the contrary, the Court in Hamdi "reject[ed] the Government's assertion that separation of powers principles mandate a heavily circumscribed role for the courts" in matters involving Guantánamo detainees even though Hamdi – unlike the instant case – involved detainees the government asserts are enemy combatants. 124 S. Ct. at 2649 (emphasis added).[6]

Nor is this case like that of Schneider v. Kissinger, 412 F.3d 190, 195 (D.C. Cir. 2005), petition for cert. filed, 74 USLW 3363 (U.S. Dec. 8, 2005) cited by Respondents for the proposition that foreign relations are within the Executive's exclusive realm. See Opp. at 10. Schneider concerned the government's efforts to prevent a socialist regime from emerging in Chile during the Cold War – hardly a parallel to this case, which involves the government's effort to indefinitely imprison a concededly innocent man on a military base where he has no meaningful access to counsel, family or friends. The application of Petitioner, who is not a United States citizen or resident, for refugee status in a foreign country would normally be a matter between him and such host government; having caused Petitioner to become a refugee by abducting and transferring him to Guantánamo based upon false charges, Respondents should not be permitted to interfere with his independent efforts to locate a suitable destination country, whether through discussions with the UNHCR or otherwise.[7]

Section 2243 and supporting case law also provides a basis for Petitioner's interim release from military custody. While Petitioner expects no factual dispute relating to the legality of his detention, as pointed out in his opening brief, there are issues of fact relating to the

---

[6] Nor does Curran v. Laird, 420 F.2d 122 (D.C. Cir. 1969), support Respondents' position, see Opp. at 10, as that case involved the use of military hardware, which unlike Respondents attempt to interfere with Petitioner's resettlement efforts falls squarely within the Executive's purview.

[7] See, e.g., Lee Fong Fook v. Wixon, 170 F.2d 245, 246 (9th Cir. 1948) (alien petitioner released into United States on bond to gather evidence to support his case).

7

remedy the Court may order, including questions relating to the government's purported efforts to resettle Petitioner.  See Motion for Release at 13, n. 9; 28 U.S.C. § 2243 (production of the body required when factual issues are presented).  Moreover, while these factual issues compel production of the body, the absence of any factual issues would not in and of itself preclude entry of an order requiring the transfer of Petitioner from military custody to a more suitable location pending his release.  Indeed, production of Petitioner is not only permissible, but required, in order to make the habeas remedy effective.[8]  See 28 U.S.C. 2243 (Courts shall "dispose of the matter as law and justice require."); see also Baker v. Sard, 420 F.2d 1342, 1343 (D.C. Cir. 1969) (habeas jurisdiction "includes an inherent power . . . to grant bail or release, pending determination of the merits").

---

[8] Respondents' reliance upon Mapp v. Reno, 241 F.3d 221, is also misplaced.  That Petitioner's case presents the "exceptional circumstances" required by Mapp for parole in the Second Circuit is hardly open to serious dispute.  By the government's admission, Petitioner is an innocent man being detained indefinitely – possibly forever – not because he has broken any law, but merely because the government claims it is unable to find a third country willing to accept him.

8

## CONCLUSION

For the foregoing reasons and for any other reason that may become known to the Court, Petitioner respectfully requests that the Court 1) issue an order requiring Respondents to release Petitioner from detention and/or 2) issue an order requiring Respondents to transfer Petitioner to the district until such time as a suitable destination country may be determined.

Dated:  January 12, 2006

Respectfully submitted,

Counsel for Petitioner Zakirjan:

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By:_____/s/_____
     Jonathan I. Blackman (NY3846)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Of Counsel:
   Christopher P. Moore (NY4936)
   John Van Sickle (NY6487)
   Lia Monahon (NY6366)
   Patrick A. Sheldon (NY1598)

CENTER FOR CONSTITUTIONAL RIGHTS
Barbara Olshansky (NY0057)
Tina Monshipour Foster (NY5556)
Gitanjali S. Gutierrez (NY1234)
666 Broadway, 7th Floor
New York, New York 10012
Tel.:  (212) 614-6437
Fax:  (212) 614-6499