# EXHIBIT  1

**[ORAL ARGUMENT CONTINUED PER COURT ORDER]**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____
                                )
ABU BAKKER QASSIM, et al.,       )
        Petitioners-Appellants   )          No. 05-5477
                                )
        v.                       )
                                )
GEORGE W. BUSH, et al.,          )
        Respondents-Appellees.   )
_____ )

## RESPONSE TO PETITIONERS' STATUS REPORT AND
## REQUEST FOR BRIEFING SCHEDULE

For the reasons set forth below, there is no merit to petitioners' suggestion that

the Government violated Rule 23(a) of the Federal Rule of Appellate Procedure.

There is also no basis for petitioners to request further briefing.  It is not disputed that

petitioners have been released.  In their filing, petitioners' counsel raises various

complaints regarding petitioners' situation in Albania.  While we address some of

those complaints, the only legally relevant fact, however, is that petitioners have been

released.  Thus, this case is now indisputably moot.  Accordingly, the appeal should

be dismissed, in accord with our prior motion to dismiss.

1.  In their status report "and request for briefing schedule," petitioners assert,

without any explanation or argument, that their release in Albania violated Rule 23(a)

of the Federal Rule of Appellate Procedure. The lack of any discussion of the Rule

or its application here is, however, telling.   Rule 23(a)[1] does not apply in this context where petitioners were released from military custody at the Guantanamo Bay Naval Base and are no longer in the custody of the United States.   *See Brady v. U.S. Parole Comm'n*, 600 F.2d 234, 236 (9th Cir. 1979).   Rule 23 was designed to ensure that, in situations where a prisoner is transferred from one custodian subject to federal habeas jurisdiction to another custodian subject to federal habeas jurisdiction, the habeas court would be able to appropriately substitute the successor custodian as the respondent. *See Hammer v. Meachum*, 691 F.2d 958, 961 (10th Cir.1982).   *See also Brady*, 600 F.2d at 236 (Rule 23 "was promulgated to alleviate jurisdictional problems sometimes created by geographical limits on habeas corpus jurisdiction"). By its plain terms, the Rule is limited to the "transfer [of] custody."   Thus, Rule 23 "does not touch upon a release" by the government, *Brady*, 600 F.2d at 236, as was the case here. *See O.K. v. Bush*, 377 F. Supp. 2d 102, 116 (D.D.C. 2005) ("Nothing in the Rule indicates a desire to extend it to situations where the United States (or a state) is transferring an individual out of federal * * * custody entirely").

---

[1] Rule 23(a) provides: "Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule.  When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party."

Petitioners' counsel also suggests that their pending motion seeking immediate release under Rule 23(b), somehow precluded the government from releasing petitioners. Nothing in that Rule supports that contention. Indeed, it is absurd to say that a motion seeking their release somehow precluded petitioners' release.

2. The sole question before this Court is not whether petitioners would prefer to be in the United States or some other country, but rather whether or not they have been released. While petitioners' counsel complains about some of the conditions in Albania, those complaints are without legal relevance. The only legally relevant fact is that petitioners have been released. Petitioners do not argue that they remain in custody. And most certainly they do not assert that they remain within the custody of the United States.

While not legally relevant to the issue of mootness, we note that, as explained in our motion to dismiss the case as moot, petitioners are being provided safety, food, clothing, financial assistance, and telephone access by the Albanian Government. Even while their applications for refugee status are being processed, they are free to travel around Albania. Once their refugee status is finalized, they may apply for travel documents permitting travel abroad. *See* Witten Declaration (attached to the Motion to Dismiss), ¶ 2.

- 3 -

The Albanian Government has since confirmed to U.S. Embassy personnel that at no time have petitioners been prohibited from departing the compound where they are staying. Moreover, they have been offered the opportunities to go out for dinners, sightseeing, and to visit local mosques -- all at the expense of the Albanian Government. Petitioners also have access to money. They were given a modest amount of funds immediately following their arrival in Albania and their facility provides each resident with a modest monthly stipend. Further, petitioners are able to apply for work permits.[2]

While petitioners' counsel seeks to portray petitioners' prospects in Albania as bleak, Nury Turkel, President of the Uyghur American Association, stated that he was "delighted by the development." *See* Carol Rosenberg, *Albania Grants Asylum to 5 from China Five Uighur Muslims from Guantánamo - Were Sent to Asylum in Albania to Avoid Repatriation to Communist China*, MiamiHerald.com, *http://www.mercurynews.com/mld/miamiherald/news/world/14514192.htm?source=rss*. (posted May 5, 2006). Mr. Turkel stated that

---

[2] Furthermore, contrary to counsel's statements, Albania is no longer suffering from an "economic collapse." Counsel cites out-of-date material (from 1997) regarding Albania's economy. The World Bank website notes Albania's dramatic economic growth since 1997. Between 2000 and 2004, the Gross Domestic Product of Albania has more than doubled. *See* http://devdata.worldbank.org/external/CPProfile.asp?SelectedCountry=ALB&CCODE=ALB&CNAME=Albania&PTYPE=CP

Albania "is a relatively ideal country I would say for religious purposes -- not for economic reasons but for cultural reasons." *Ibid*. Mr. Turkel added, "We're just thrilled they're free, and we're going to be looking into what we can do to help them from here in their new lives in Europe." Uyghur American Association*, *Press Release*: Five Guantanamo Uyghurs Released, Already in Albania,* http://www.uyghuramerican.org/press_releases/five_guantanamo_uyghurs_released. (posted May 6, 2006).

Moreover, while counsel labels the area as a "slum" and the living facilities as "sparse," and suggests that it wholly unacceptable for his clients, one of the petitioners, Mr. Qassim, was interviewed by the press and had a very different reaction. He was reported as stating that being released in Albania was "like a celebration for us." *See* Radio Free Asia, *Guantanamo Uyghurs Find Freedom "Like a Celebration,"* http://www.rfa.org/english/news/2006/05/10/uyghur_guantanamo/ (posted May 10, 2006). Mr. Qassim continued, "We feel that this is a celebration for all the Uyghur people, and we are so delighted." When asked about their situation in Albania, which counsel now tries to distort, Mr. Qassim said: "It is normal and things are going well. We have been here for three or four days now * * *. We have been settled in a four-bedroom apartment, and the conditions here are not so bad. It has beds and a shower, they prepared new clothes for us, and we are eating at a common dining hall. The person who is responsible for looking after us said,

'Whatever else you need, whatever else you want, just let me know.' Their attitude toward us is positive." *Ibid*.

3.   Petitioners' filing suggests a danger of being returned to their native country.  As we stated in our motion to dismiss, the Albanian Government has assured the United States that petitioners will *not* be subject to involuntary transfer to their native country.  *See* Witten Declaration ¶ 3.  Consistent with that assurance, the Albanian Minister of Justice reaffirmed earlier this week that petitioners will not be sent to China.  *See* SEEUROPE.net, *ALBANIA: Albania Rejects China's Request for Extradition of 5 Chinese Muslims*,  http://www.seeurope.net/en/ Story.php?StoryID=60220&LangID=1 (posted May 17, 2006).

4.   In any event, these factual questions (beyond the undisputed fact that petitioners have been released) are legally irrelevant.  Petitioners, nonetheless, ask the Court to order additional briefing as to why the case is moot.  Given that petitioners have been released, however, the mootness of the case is obvious and requires no further briefing.  In their filing, petitioners's counsel provides utterly no explanation of how or why this appeal could still be deemed a live "case or controversy" under Article III given petitioners' release from custody by the United States.[3]

--------

[3]   Plainly, this case does not fall within the narrow exception for matters "capable of repetition" yet evading review.  To satisfy this exception to mootness, two circumstances must simultaneously be present: (1) the challenged action is in duration too short to be fully litigated prior to cessation or expiration; and, (2) there

**CONCLUSION**

For the foregoing reasons, this Court should grant the previously filed motion

to dismiss the case as moot.

Respectfully submitted,

PETER D. KEISLER
 Assistant Attorney General

GREGORY G. KATSAS
 Deputy Assistant Attorney General


_____
DOUGLAS N. LETTER
 (202) 514-3602


_____
ROBERT M. LOEB
 (202) 514-4332
*Attorneys, Appellate Staff*
*Civil Division, Room 7268*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530-0001*

May 19, 2006

---

is a reasonable expectation that the *same complaining party* will be subject to the same action again.  *See Spencer v. Kemna,* 523 U.S.1,17 (1998). There is no reasonable expectation that petitioners will be again picked up by the United States during an armed conflict and held in detention at Guantanamo Bay.

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2006, I served the foregoing "RESPONSE TO PETITIONERS' STATUS REPORT AND REQUEST FOR BRIEFING SCHEDULE" upon lead counsel of record by causing copies to be sent by FedEx overnight delivery:

> P. Sabin Willett
> Rheba Rutkowski
> Neil McGaraghan
> Jason Pinney
> BINGHAM McCUTCHEN LLP
> 150 Federal Street
> Boston, MA 02110-1726

_____
Robert M. Loeb,
Attorney