# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ZAKIRJAN, *et al.*, | ) | |
| Petitioners, | ) ) ) | |
| v. | ) | Civil Action No. 05-2053 (HHK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S EMERGENCY MOTION
FOR IMMEDIATE RELEASE AND/OR PRODUCTION OF THE BODY**

**INTRODUCTION**

Petitioner Zakirjan has filed a so-called "emergency" motion requesting that the Court immediately order respondents to release him, or, in the alternative, to release him on an interim basis within the District of Columbia until a suitable country willing to accept him for resettlement can be found. The putative "emergency" giving rise to this motion is legislation recently passed by both Houses of Congress (although not yet signed by the President) that restricts the jurisdiction of the federal courts to hear claims raised by Guantanamo Bay detainees.

As discussed below, imminent legislation affecting the Court's jurisdiction over petitioner's claims is not reason for precipitous judicial action, but all the more reason, together with the pending appeals in <u>Khalid v. Bush</u> and <u>In re Guantanamo Detainee Cases</u>, to defer proceedings on the merits of petitioner's claims. In any event, as Judge Robertson recently held in <u>Qassim v. Bush</u>, No. 05-0497 (JR), the *habeas corpus* statute extends no authority to a federal court to order the release of non-resident aliens held outside the territory of the United States, even those, such as petitioner, who have been determined by respondents to be no longer enemy

combatants. Likewise, the Court has no authority to order that petitioner be released on an interim basis within Washington, D.C., or anywhere else within the territory of the United States, pending his resettlement abroad. Accordingly, petitioner's motion for immediate release, or, in the alternative, for interim release, must be denied.

## ARGUMENT

**I. PENDING LEGISLATIVE AMENDMENTS TO THE HABEAS CORPUS STATUTE ARE FURTHER REASON TO DEFER CONSIDERATION OF PETITIONER'S CLAIMS, NOT TO DIRECT HIS IMMEDIATE RELEASE.**

Respondents have already demonstrated why the Court should refrain from addressing petitioner's claims until the pending appeals are decided in Khalid v. Bush, 355 F. Supp.2d 311 (D.D.C. 2005), appeals pending Nos. 05-5062, 05-5063 (D.C. Cir.), and In re Guantanamo Detainee Cases, 355 F. Supp.2d 443 (D.D.C. 2005), appeal pending on petition for interlocutory appeal, No. 05-5064 (D.C. Cir.). Respondents' Motion for Order To Show Cause Why Case Should Not Be Dismissed for Lack of Proper "Next Friend" Standing or, in the Alternative, To Stay Proceedings Pending Related Appeals (dkt. no. 14), at 14-21. The petition in this case raises legal issues that are squarely presented by the appeals in Khalid and In re Guantanamo Detainee Cases, and it still makes no sense for proceedings related to the merits of this case to go forward when the D.C. Circuit's decisions in those appeals will determine whether and how this case may proceed, and the legal analyses applicable to petitioner's claims.

The sole basis proffered for immediately considering the merits of petitioner's claims, or directing that he be released within the District of Columbia pending his resettlement in another country, is the possibility that Congress may enact an amendment to the *habeas corpus* statute affecting judicial review of his petition. Pet'r's Mot. at 2, 4-5. In fact, Congress recently passed such legislation, the Detainee Treatment Act of 2005, and the President is expected to sign it into

2

law soon. The asserted prospect, however, "that the case may be thrown into confusion" as a result of this legislation, id. at 2, supplies no justification whatsoever for immediately ordering petitioner's release, or directing that he be brought to this jurisdiction, even if the Court had the authority to do so (which, as discussed below, it does not). To the contrary, if Congress deems it appropriate in the public interest to enact legislation affecting the resolution of petitioner's claims, it is the responsibility of this Court to give due consideration and effect to the Legislative will -- and not, as petitioner suggests, to evade it.

The Supreme Court admonished in Hamdi v. Rumsfeld, 542 U.S. 507, 539-40 (2004), that the lower courts should "proceed with the caution that . . . is necessary," and take only "prudent and incremental" steps when faced with novel issues presented by the *habeas corpus* petitions of military detainees captured in the global war on terror. In the current setting of this case -- where the legal principles applicable to petitioner's claims may soon be resolved by the Court of Appeals, or subject to modification by Congress -- it would be neither prudent nor appropriate to take the kind of precipitous action that petitioner urges upon the Court.[1]

---

[1] That being the case, the Court is well within its authority to hold the merits of this case in abeyance, notwithstanding petitioner's contentions that he is statutorily entitled to immediate review of his *habeas corpus* claims. Pet'r's Mem. at 11-12. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (the "2254 Rules") (which are also applicable to *habeas corpus* cases, such as this one, brought under provisions other than § 2254, see 2254 Rule 1(b)) allows a court to "order the respondent to file an answer, motion, or other response [to a petition] within a fixed time, or to take other action the judge may order. . .." Thus, Rule 4, "ha[ving] the force of a superseding statute, 28 U.S.C. § 2072(b) . . . loosened up the [three-day] deadline for responses" under 28 U.S.C. § 2243, and "leaves it up to the district court to fix the deadline." Bleitner v. Welborn, 15 F.3d 652, 653-54 (7th Cir. 1994). See also Castillo v. Pratt, 162 F. Supp. 2d 575, 577 (N.D. Tex. 2001) ("[t]he discretion afforded by Rule 4 . . . 'prevails' over the strict time limits of 28 U.S.C. § 2243"); Kramer v. Jenkins, 108 F.R.D. 429, 431 (N.D. Ill. 1985) ("in [a] conflict between Rule 4 . . .and 28 U.S.C. § 2243, Rule 4 must prevail"). Accordingly, it is entirely proper under Rule 4 to defer adjudication of petitioner's claims at least until the D.C. Circuit has issued its decision in the Guantanamo detainee appeals, and until the effect of jurisdictional legislation enacted by Congress can be considered.

3

## II. PETITIONER IS NOT ENTITLED TO IMMEDIATE RELEASE, INTO THE UNITED STATES, OR ELSEWHERE.

Apart from the fact that attempting to decide the merits of petitioner's claims would be ill-advised at this juncture, he is not entitled to the relief he seeks, immediately or otherwise. Petitioner argues at length that, as a result of respondents' determination that he is no longer an enemy combatant (an "NLEC"), the government has no legal basis to detain him. Pet'r's Mem. at 6-12. To the contrary, however, the Executive's authority to detain suspected enemy combatants is firmly established, see, e.g., Hamdi v. Rumsfeld, 124 S. Ct. 2633, 2640 (2004) (explaining that "[t]he capture and detention of lawful combatants and the capture, detention, and trial of unlawful combatants, by 'universal agreement and practice,' are 'important incident[s] of war'" (quoting Ex Parte Quirin, 317 U.S. 1, 28 (1942))), and that power to detain a suspected enemy combatant necessarily includes the authority to wind up the detention in an orderly fashion after a detainee has been determined to no longer be an enemy combatant, or once hostilities have ended. Indeed, historically, the United States Military or its allies have continued the detention of prisoners of war following the end of major conflicts to which the United States has been a party, in order to properly resolve repatriation issues or effectuate resettlement where repatriation was not appropriate due to humanitarian or other concerns.[2]

Also supporting the government's authority to detain petitioner in the present circumstances is the Supreme Court's decision in Shaughnessy v. Mezei, 345 U.S. 206 (1953)

---

[2] See Christiane Shields Delessert, Repatriation of Prisoners of War to the Soviet Union During World War II: A Question of Human Rights, in World in Transition: Challenges to Human Rights, Development and World Order 80-81 (Henry H. Han ed., 1979) (noting delays in repatriation of prisoners after end of World War II and Korean War); Final Report to Congress on the Conduct of the Persian Gulf War, Appendix O, at 708 (April 1992) (available at http://www.ndu.edu/library/epubs/cpgw.pdf) (noting delays in return of prisoners after Persian Gulf War).

("Mezei"). In that case Mezei, a foreign national seeking re-admission to the United States after spending time in Rumania, was detained at Ellis Island, whereafter the Attorney General ordered for reasons of national security that he be permanently excluded from the United States. Id. at 208. When subsequent efforts to locate a country willing to admit him proved unsuccessful, Mezei sought relief under the *habeas corpus* statute, asserting unlawful confinement on Ellis Island. Id. at 209-10.

The Supreme Court framed the issue as whether the continued exclusion of an alien immigrant "stranded in his temporary haven on Ellis Island because other countries will not take him back . . . amounts to an unlawful detention so that courts may admit him temporarily to the United States . . . until arrangements are made for his departure abroad." Id. at 207. The Court held that it did not. Concluding that courts had no authority to question the Attorney General's determination that Mezei should be barred from entering the United States, id. at 210-15, the Court held that his "continued exclusion [on Ellis Island] deprive[d] him of [no] statutory or constitutional right," notwithstanding the resulting hardship. Id. at 215-16. Respondents here are exercising the same authority recognized in Mezei, to detain a non-resident alien in the government's custody until such time as a suitable country willing to admit him can be found.[3]

---

[3] In support of petitioner's view that the government lacks authority to continue his detention at Guantanamo Bay, petitioner cites Judge Robertson's remarks in Qassim v. Bush, No. 05-0497 (JR), appeal filed, No. 05-___ (D.C. Cir.) ("Qassim"), that "'[t]here is no basis for [the government's wind-up detention authority] except the Executive's assertion of it.'" Pet'r's Mem. at 10 (quoting Qassim, Memorandum Order dated August 19, 2005 (dkt. no. 34) at 3). Indeed, Judge Robertson recently concluded that the continued detention of NLEC detainees in that case is unlawful, Qassim, Memorandum dated December 22, 2005 (dkt. no. 57), at 4-6, but neither his recent memorandum nor his earlier remarks took into account the detention authority recognized by the Supreme Court in Mezei.

Petitioner's passing reference to Article 118 of the Third Geneva Convention relative to the treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316 (1955), see Pet'r's Mem. at 10,
(continued...)

5

Even if the Court were to address the merits of petitioner's claims, and conclude that his continued detention at Guantanamo Bay were unlawful, his request for immediate release, Pet'r's Mem. at 11, would still have to be denied because, as Judge Robertson held in Qassim, Memorandum at 7-12, the *habeas corpus* statute affords no relief to an NLEC detainee such as petitioner here. Petitioner's request for an order directing his immediate release simply begs the question where respondents should be directed to release him. As respondents have shown in pending *habeas corpus* cases brought by other Guantanamo Bay detainees, and as Judge Robertson concluded in Qassim, Memorandum at 11, a federal court lacks any authority under the *habeas corpus* statute (or otherwise) to direct that non-resident aliens such as petitioner be admitted to the United States. See, e.g., Respondents' Opposition to Petitioner Saddiq Doe's Motion for Immediate Production of the Body and Grant of Writ, or, in the Alternative, Grant of Interim Release, filed in Kiyemba v. Bush, No. 05-1509 (RMU) (dkt. no. 32), at 11-15 (copy filed herewith as Exhibit 1). Nor could the Court direct that petitioner be released into the general population at the Guantanamo Bay Naval Base. As Judge Robertson recognized,

> "The power of a military commandant over a [military base] is necessarily extensive and practically exclusive, forbidding entrance and controlling residence as the public interest may demand." Accordingly, a commander may, "in his discretion, exclude private persons and property . . . or admit them under such restrictions as he may prescribe in the interest of good order and military discipline."

---

[3]/ (...continued)
is also unavailing. First, the Third Geneva Convention does not confer individual rights enforceable in federal court, as the D.C. Circuit only recently held in Hamdan v. Rumsfeld, 415 F.3d 33, 39-41 (D.C. Cir.), cert. granted, 126 S. Ct. 622 (2005). Second, the plain terms of Article 118 ("[p]risoners of war shall be released *and repatriated* without delay after the cessation of active hostilities") (emphasis added) presuppose that repatriation is possible, and cannot be taken to require the immediate release of detainees like petitioner who, for humanitarian reasons, cannot be repatriated or resettled until such time as an appropriate host country can be found.

6

Qassim, Memorandum at 9, quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 890, 893 (1961). See also Greer v. Spock, 424 U.S. 828, 838 (1976).

Thus, as was the case in Mezei and Qassim, so long as no suitable host country in which to resettle petitioner can be found, "a federal court has no relief to offer" an NLEC detainee in his situation. Qassim, Memorandum at 12. Even if it were appropriate to address the merits of petitioner's claim of unlawful detention at this time, his request for immediate release would in any event have to be denied.

### III. PETITIONER IS NOT ENTITLED TO INTERIM RELEASE PENDING HIS RESETTLEMENT.

Petitioner's request, in the alternative, for an order requiring that he be temporarily released, or paroled, within the District of Columbia pending the location of a suitable country willing to admit him, Pet'r's Mem. at 12-20, must also be rejected. Just as a federal court has no authority to compel the admission of a non-resident alien to this country on a permanent basis, a court likewise has no authority to order that the government "parole" petitioner, that is, to let him temporarily into the country, regardless of the reason asserted for doing so. See Respondents' Opposition to Petitioner Saddiq Doe's Motion for Immediate Production of the Body and Grant of Writ, or, in the Alternative, Grant of Interim Release, filed in Kiyemba v. Bush, No. 05-1509 (RMU) (dkt. no. 32), at 14-15 (copy filed herewith as Exhibit 1). See also Mezei, 307 U.S. at 207, 215-16 (holding that courts did not have authority to "admit [*habeas corpus* petitioner] temporarily to the United States . . . until arrangements [could be] made for his departure abroad").

Petitioner cites no authority to the contrary. He relies first on the provision of the *habeas corpus* statute, 28 U.S.C. § 2243, providing that "[u]nless the application for the writ and the

7

return present only issues of law the [respondent] shall be required to produce at the hearing the body of the person detained." Pet'r's Mem. at 13. Even if § 2243 endowed a federal court with authority to direct that foreign nationals held outside the territory of the United States be brought into this country (which it does not), the requirement to "produce the body" under § 2243 is qualified by its stated purpose -- the conduct of "a hearing to resolve factual issues relating to the legality of petitioner['s] detention." See Qassim, Memorandum at 8. Petitioner, however, does not seek to be brought into this District for purposes of a factual hearing on the legality of his detention, but for the purpose, in the end, of being admitted here temporarily until respondents locate another country where he can be permanently resettled. Pet'r's Mem. at 1. By its own terms, therefore, § 2243 does not apply here.[4]

Petitioner's reliance on Baker v. Sard, 420 F.2d 1342 (D.C. Cir. 1969) (per curiam), for the proposition that a court's *habeas corpus* jurisdiction "'includes an inherent power . . . to grant bail or release, pending determination of the merits,'" see Pet'r's Mem. at 18 (quoting Baker, 420 F.2d at 1343), is also misplaced. As explained in Baker, any authority a court possesses under the *habeas corpus* statute to order release of a petitioner *pendente lite* is an inherent attribute of its "jurisdiction to order release as a final disposition of the action." 420

---

[4] Contrary to petitioner's assertions, Pet'r's Mem. at 14-16, there is nothing in Rasul to suggest that the Supreme Court intended or acknowledged that its "ruling meant physically transporting prisoners from the U.S. naval base [at Guantanamo Bay] to Washington[, D.C.]" The Court held only that there was no jurisdictional bar to the *claims* of aliens detained outside this country, not that the "privilege of litigat[ing]" their *habeas corpus* claims encompassed a right of entry into the United States. 542 U.S. at 484-85 (internal quotation marks and citation omitted). Indeed, the majority nowhere discussed the prospect of bringing Guantanamo detainees into the United States in order to litigate their claims, or the permissibility of doing so. In any event, as discussed in the text above, petitioner does not seek to be brought here for the purpose of litigating the merits of his *habeas corpus* claims. Thus, even if Rasul had suggested that federal courts have authority to bring alien detainees to the United States for that purpose, that authority would not apply in this instance.

8

F.2d at 1343. But, as discussed above, neither this Court nor any other has authority under the *habeas corpus* statute to order "as a final disposition," that a non-resident alien be permitted to enter this country from a foreign territory such as Guantanamo Bay, Cuba. Therefore, inasmuch as the power to order interim release is an inherent attribute of the power to order release "as a final disposition," it necessarily follows that this Court has no authority under the *habeas corpus* statute to order that petitioner be released within the territory of the United States on an interim basis. Petitioner cites a number of putative authorities to the contrary, Pet'r's Mem. at 13-14, 18-19, but, tellingly, in none of them did a court order that a non-resident alien like petitioner be released or transferred into this country from detention outside the United States.[5]

Moreover, as explained in Mapp v. Reno, 241 F.3d 221 (2d Cir. 2001), on which petitioner also relies, Pet'r's Mem. at 18-19, a court's power to order interim release of a *habeas corpus* petitioner "is a limited one, to be exercised in special cases only," requiring the petitioner to "demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[ ] that make the grant of [interim release] *necessary to make the habeas remedy effective.*" Mapp, 241 F.3d at 226 (citation omitted; emphasis added). While the substantiality of petitioner's claims remains a matter that will largely be determined by the D.C.

---

[5] For example, in Clark v. Martinez, 542 U.S. 371, 125 S. Ct. 716 (2005), on which petitioner heavily relies, see Pet'r's Mem. at 19-20, both *habeas corpus* petitioners were aliens who had already been "paroled into the country pursuant to the Attorney General's authority under 8 U.S.C. § 1182(d)(5)" *before* they were taken into custody (due to the revocation of their parole) by the Immigration and Naturalization Service. Id., 125 S. Ct. at 720-21. In Lee Fong Fook v. Wixon, 170 F.2d 245 (9th Cir. 1948) (per curiam), on which petitioner also lays particular emphasis, see Pet'r's Mem. at 19, the district court granted interim release to a *habeas corpus* petitioner, who had been a longtime resident of the United States, so that he might gather evidence to support his claim that he was an American citizen entitled to re-admission to the country. Ex Parte Lee Fong Fook, 74 F. Supp. 68, 70, 71-72 (N.D. Cal. 1948). The circumstances of that case (which was decided before the Supreme Court's decision in Mezei) are not presented here, nor is there evidence in the Ninth Circuit's opinion that the district court's ruling was challenged on appeal. See 170 F.2d at 246.

Circuit in the Guantanamo detainee appeals, petitioner has made no showing that interim release is "necessary to make [his] habeas remedy effective." Petitioner's unsupported speculation that his presence in the District of Columbia might facilitate as yet hypothetical future efforts by the United Nations High Commission for Refugees (UNHCR) to refer him to an asylee country, Pet'r's Mem. at 17-18, falls well short of demonstrating that interim release is "necessary to make the habeas remedy effective" in this instance.

Even assuming, furthermore, that petitioner met the UNHCR's criteria for refugee status, or that the UNHCR could locate a host country for him with any greater facility than respondents, the Court should refrain from bringing petitioner to the United States simply to promote efforts by petitioner or his counsel to engage the assistance of such organizations on his behalf. Efforts to resettle petitioner and other NLEC detainees in other countries fall squarely within the Executive's purview over foreign policy matters, see, e.g., Schneider v. Kissinger, 412 F.3d 190, 195 (D.C. Cir. 2005) (noting that the President possesses "'plenary and exclusive' power in the international arena," and acts "'as the sole organ of the federal government in the field of international relations'" (quoting United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936))), as well as the Executive's authority to deal appropriately and effectively with issues of repatriating and resettling wartime detainees. See Hamdi, 124 S. Ct. at 2647 (plurality opinion) ("core strategic matters of warmaking belong in the hands of those who are best positioned and most politically accountable for making them."); Curran v. Laird, 420 F.2d 122, 130 (D.C. Cir. 1969) (en banc) ("the Executive should be accorded wide and normally unassailable discretion with respect to the conduct of the national defense and the prosecution of national objectives through military means").

The government's attempts to pursue resettlement options for NLEC detainees such as petitioner have been diligent, ongoing, and multifaceted, and have included outreach to appropriate governments and organizations. The Court should not inject itself into matters so firmly and traditionally committed to the Executive at petitioner's behest.[6]

## CONCLUSION

For the foregoing reasons, petitioner's request for an order directing his immediate release, or, in the alternative, that he be released on an interim basis within this District, should be denied.

Dated: December 30, 2005

---

[6] The Court should also decline to order petitioner brought into the United States because doing so would arbitrarily and materially alter petitioner's standing under the immigration laws and perhaps invest him with immigration-related rights and privileges that have never been available to aliens outside the United States, much less so to wartime detainees. Specifically, once inside the United States, petitioner would arguably be able to apply for asylum, or for "withholding of removal," forms of relief currently unavailable to him because he is not, contrary to petitioner's claims, Pet'r's Mem. at 15-16, "physically present in" the United States. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1); 8 U.S.C. § 1231(b)(3); see also Sale v. Haitian Centers Council, Inc., 509 U.S. 155 (1993) (addressing essentially identical predecessor remedy of withholding of deportation under former 8 U.S.C. § 1253(h)); 8 U.S.C. § 1101(a)(38) (defining "United States" for geographic and immigration-related purposes as including only "the continental United States, Alaska, Hawaii, Puerto Rico, Guam, and the [U.S.] Virgin Islands"). An order by this Court commanding petitioner's entry into the United States would directly intrude upon the Executive's legitimate authority in this area. When an alien interdicted in the Caribbean region has a "credible fear" of persecution or torture, the government's longstanding practice is to bring that alien to Guantanamo Bay for additional screening and third country resettlement, as warranted, but such migrants are not entitled to apply for statutory-based protections such as asylum or withholding of removal. See Haitian Refugee Center, Inc. v. Baker, 953 F.2d 1498, 1509-10 (11th Cir. 1992). The interim relief petitioner seeks could set a precedent for other courts to issue orders allowing aliens interdicted on the high seas and held at Guantanamo Bay to enter the United States, where they too would then become eligible to submit asylum applications. The Court should not issue an order that would have such potential dramatic and adverse consequences for immigration matters.

11

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

DOUGLAS N. LETTER
Terrorism Litigation Counsel


 /s/ James J. Gilligan
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ (D.C. Bar No. 468625)
PREEYA M. NORONHA
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
JAMES J. GILLIGAN
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.  Room 7212
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents