PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| ZAKIRJAN, <br><br> Petitioner/Plaintiff, <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br><br> Respondents/Defendants. | Case No. 05-Cv-2053 (HHK) (AK) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR
ORDER 1) GRANTING WRIT OF HABEAS CORPUS, 2) DECLARING
THE CONTINUED DETENTION OF PETITIONER UNLAWFUL AND
3) SCHEDULING A HEARING ON SEPTEMBER 6, 2006 TO ADDRESS
THE CIRCUMSTANCES UNDER WHICH PETITIONER SHALL BE RELEASED**

Petitioner Zakirjan Hassam ("Petitioner" or "Zakirjan") hereby submits this reply memorandum in further support of Petitioner's Motion for Order 1) Granting Writ of Habeas Corpus, 2) Declaring the Continued Detention of Petitioner Unlawful and 3) Scheduling a Hearing on September 6, 2006 to Address the Circumstances under which Petitioner Shall be Released.

**PRELIMINARY STATEMENT**

Petitioner Zakirjan is innocent.  Not because his attorneys say so, but because Respondents say so.  They held a secret tribunal and ruled that he is not al Qaeda, not Taliban, not a terrorist.  The whole thing was a mistake:  in April 2002, military forces paid $5,000 to a bounty hunter for Zakirjan, only to determine years later that they had been duped.  Tragically, that determination – which Respondents made more than 17 months ago – has had little if any impact upon Zakirjan's life.  He is now entering his fifth year of imprisonment in Guantanamo, where he lives in a small wooden shed surrounded by a series of chain link fences topped by rolls

of concertina wire, and where he is denied, save visits from his attorneys, all access to the outside world.

In the face of these undisputed facts, Respondents can point to no valid legal basis for Petitioner's indefinite detention. Instead, based upon vague, unfounded assertions that they "continue to diligently pursue resettlement options for petitioner," Opp. at 5, Respondents ask Petitioner and the Court to sit silently while they determine when and under what circumstances to release him. They do so all the while refusing to disclose any details to the Court, or even Petitioner himself, concerning those purported efforts. Nor do they make any attempt to justify their insistence upon continuing to treat a concededly innocent man like a prisoner, or how doing so could possibly facilitate, rather than interfere with, the resettlement process.

The Court should reject Respondents' request for further delay based upon the appeals pending in the United States Court of Appeals for the District of Columbia Circuit in Al-Odah v. United States (Nos. 05-5064, 05-5095 through 05-5116), Boumediene v. Bush, (Nos. 05-5062 and 5063) ("Al-Odah") and Kiyemba v. Bush (Nos. 05-548 et al.) ("Kiyemba"). All agree that this Court has jurisdiction over Petitioner's habeas claims. See Opp. at 1-2. All agree that Petitioner is innocent. See Opp. at 2. Nothing the Court of Appeals may conclude in Al Odah or Kiyemba will change these facts. The indefinite detention of an innocent non-combatant such as Petitioner is authorized by neither law nor treaty, and is thus patently illegal. Accordingly, the Court should immediately issue an order granting the writ of habeas corpus pursuant to 28 U.S.C. § 2241 and declaring his continued detention unlawful pursuant to 28 U.S.C. § 2201. In addition, Petitioner respectfully requests that the Court schedule a hearing as soon as possible to address the circumstances under which Respondents intend to release

Petitioner, including any resettlement efforts of Respondents thus far and how the Court and/or Petitioner may assist in those efforts going forward.

## ARGUMENT

### I. Respondents' Request For Further Delay Should Be Denied

Respondents concede that the Court properly vacated the March 16 Stay Order, which was based solely upon questions concerning the Court's jurisdiction in light of the Detainee Treatment Act. See Opp. at 2-3. Nevertheless, in yet another effort to side-step the merits of Petitioner's claims – which have now been pending before this Court for almost a year – Respondents assert that "proceedings on the merits of those claims should await the outcome of the pending appeals in [Boumediene v. Bush, Al-Odah v. United States] and the consolidated cases captioned Kiyemba v. Bush." Opp. at 2. However, these appeals provide no basis for further delay.

This Court need not await a ruling in Al Odah prior to granting the relief requested herein.[1] The issues on appeal in that matter do not relate in any way to whether the Executive possesses a so-called "wind-up authority" to indefinitely detain innocent non-combatants such as Petitioner. Indeed, even if the Court of Appeals in Al Odah were to adopt Judge Leon's conclusion in Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005), that "non-resident aliens captured and detained pursuant to the AUMF [Authorization for Use of Military Force] and the President's Detention Order have no viable constitutional basis to seek a writ of habeas corpus," Khalid at 321, the issue currently before this Court – whether non-enemy

---

[1] In Al Odah, the Court of Appeals is reviewing the competing analyses set forth in Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005) – in which Judge Leon concluded that certain alleged enemy combatants had failed to assert any viable legal theory by which a federal court could issue a writ – and in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C. 2005) – in which Judge Green held that certain alleged enemy combatants had asserted one or more valid claims.

3

combatants can be detained indefinitely pursuant to some vague notion of Executive "wind-up" authority flowing from the AUMF and/or the President's Detention Order – would remain unresolved.[2] In fact, the AUMF, as well as the President's Detention Order, are expressly limited to the capture and detention of alleged enemy combatants, and do not provide Respondents with the authority to detain individuals such as Petitioner, whom they have determined <u>not</u> to be an enemy combatant.[3] See Hamdi v. Rumsfeld, 124 S.Ct. 2633, 2643

---

[2] It is of course quite possible that the Court of Appeals will instead agree with Judge Green, who determined in In re Guantanamo Detainee Cases that "there can be no question that the Fifth Amendment right asserted by the Guantanamo detainees in this litigation – the right not to be deprived of liberty without due process of law – is one of the most fundamental rights recognized by the U.S. Constitution," and that "respondents' contention that the Guantanamo detainees have no constitutional rights is rejected, and the Court recognizes the detainees' rights under the Due Process Clause of the Fifth Amendment." In re Guantanamo Detainee Cases at *464.

[3] The AUMF authorizes the President to:

> [U]se all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons.

Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224 (2001).

The Detention Order authorizes the Secretary of Defense to detain anyone that the President has "reason to believe":

> (i) is or was a member of the organization known as al Qaeda;
> (ii) has engaged in, aided or abetted, or conspired to commit, acts of international terrorism, or acts in preparation therefor, that have caused, threatened to cause, or have as their aim to cause, injury or to adverse effects on the United States, its citizens, national security, foreign policy, or economy; or
> (iii) has knowingly harbored one or more individuals in subparagraphs (i) or (ii) . . .

Executive Order of November 13, 2001, Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism § 2(a)(1), 66 Fed. Reg. 57,833 (Nov. 13, 2001).

Respondents have determined that Petitioner is not an "enemy combatant," Opp. at 3, which term they define as "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners. This includes any person who has committed a belligerent act or has directly supported hostilities in aid of enemy armed forces." Memorandum of the Secretary of the Navy, "Order Establishing Combatant Status Review Tribunal," ¶ a, dated July 7, 2004.

4

(2004) ("To be clear, our opinion only finds legislative authority under the AUMF once it is sufficiently clear that the individual is, in fact, an enemy combatant."). Because neither the AUMF nor the President's Detention Order authorize the detention of innocent non-combatants, Respondents' assertion of "wind-up" authority to do the same must fail. Moreover, even if Respondents did possess the authority to detain Petitioner for a short period while arranging for his prompt release, that authority would long since have expired. See Rasul v. Bush, 542 U.S. 466, 488 (2004) ("Indefinite detention without trial or other proceeding presents altogether different considerations. It allows friends and foes alike to remain in detention. It suggests a weaker case of military necessity and much greater alignment with the traditional function of habeas corpus. Perhaps, where detainees are taken from a zone of hostilities, detention without proceedings or trial would be justified by military necessity for a matter of weeks; but as the period of detention stretches from months to years, the case for continued detention to meet military exigencies becomes weaker.") (Kennedy, J., concurring).

Nor is there any basis for delaying these proceedings based upon the consolidated cases captioned Kiyemba v. Bush. The narrow issue on appeal in this case is whether the Court properly issued an order requiring advance notice of any intended removal of Petitioner from Guantánamo so that it has an opportunity to address the lawfulness of any such proposed removal. See Opp. at 3 (noting that the issue on appeal in Kiyemba is "whether a court may place constraints on the government's ability to relinquish custody of a detainee and transfer him to another country . . ."). That Respondents would prefer to have the ability to transport Petitioner beyond the reach of this Court – in the dark of night without any prior notice – is irrelevant to the fact that his *current* detention is unlawful. He is thus entitled, now, to an order from this Court granting the writ of habeas corpus and declaring his detention unlawful.

5

**II.     Petitioner Is Entitled As A Matter Of Law To The Relief Requested**

   **A.     Petitioner is entitled to an order granting the writ of habeas corpus**

Based upon the undisputed facts before the Court, Petitioner is entitled as a matter of law to an order granting the writ of habeas corpus. Respondents concluded over 17 months ago that Petitioner is a non-combatant entitled to release. There is no basis in law or treaty for the prolonged imprisonment of innocent men like Petitioner, and the Court should so state. See Rasul, 542 U.S. at 483, ("§ 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantánamo Bay Naval Base."); 28 U.S.C. § 2241(c) (the writ of habeas corpus shall extend to prisoners "in custody in violation of the . . . treaties of the United States.") (emphasis added); see 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require").

The only basis the government has ever asserted for the indefinite detention of Petitioner is Respondents' purported "wind-up" authority. However, as Judge Robertson noted in Qassim, "[t]here is no basis for this claimed authority except the Executive's assertion of it." See Memorandum Order, dated August 19, 2005, at 3, Qassim v. Bush, No. 05-CV-0497 (JR); Rasul, 542 U.S. at 488 (recognizing that indefinite detention "suggests a weaker case of military necessity and much greater alignment with the traditional function of habeas corpus") (Kennedy, J., concurring); INS v. St. Cyr, 533 U.S. 289, 302-03 (2001); Brown v. Allen, 344 U.S. 443, 532 (1953) (Jackson, J., concurring), overruled on other grounds; Williams v. Taylor, 529 U.S. 362, 410-11 (2000); Ex Parte Burford, 7 U.S. 448, 453 (1806).[4]

---

4   Respondents' reliance upon Shaughnessy v. Mezei, 345 U.S. 206 (1953) ("Mezei") is also misplaced. See Opp. at 4. Unlike Petitioner here, the petitioner in Mezei appeared voluntarily at a United States port, and his presence on Ellis Island was "temporary harborage, an act of legislative grace" to avoid the hardship of being confined to a ship while his case was considered. Mezei 345 U.S. at 215.

6

By this motion, Petitioner merely seeks an order stating what all agree is required: that Petitioner, an innocent man, be released from military custody. That Respondents have thus far been unable or unwilling to find a suitable destination country is no reason for denying this relief.

### B.    Petitioner Is Entitled To Declaratory Relief

Putting aside the parties' disagreement over whether this Court can or should order Petitioner's release pursuant to 28 U.S.C. § 2241, it most certainly has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201. Respondents do not challenge this fact, nor could they.

As Judge Robertson recognized the "indefinite imprisonment at Guantanamo Bay [of non-enemy combatants] is unlawful." Qassim v. Bush, 407 F.Supp.2d 198, 201 (D.D.C. 2005). Respondents only response is that "[e]ven if the Court were to address the merits of petitioner's claims, and conclude that his continued detention at Guantanamo Bay were unlawful, his request for release, under any circumstances, would still have to be denied, because the *habeas corpus* statute affords no relief to an NLEC detainee such as petitioner here." Opp. at 4 (emphasis added). This position, in addition to being incorrect with respect to the application of the *habeas corpus* statute, is totally irrelevant to Petitioner's request for declaratory relief under 28 U.S.C. § 2201. Indeed, if "the Court were to address the merits of petitioner's claims, and conclude that his continued detention at Guantanamo Bay were unlawful," Opp. at 4, then it must grant the declaratory relief requested herein.

---

Indeed, the government recognized in Mezei that the petitioner was "free to depart from the United States to any country of his choice," id. at 220 (emphasis added), and in fact did leave Ellis Island and sailed to both France and Great Britain to seek entry into those countries; it was only after being denied entry there that he returned to the United States and petitioned for entry. See id. at 208-9, 219; see also id. at 209 ("Respondent personally applied for entry to about a dozen Latin American countries but all turned him down. So in June 1951 respondent advised the Immigration and Naturalization Service that he would exert no further efforts to depart.").

7

In light of Respondents' inability or unwillingness over the course of the past 17 months to locate a country suitable for Petitioner's resettlement, it is imperative that the Court grant, at the very least, this simple relief.  Respondents agree that Petitioner should be released, if only they could find a suitable country willing to take him.  It thus necessarily follows that if Petitioner himself can locate a suitable country for his resettlement, then Respondents must release him without delay.  It is beyond reasonable dispute that an order stating that Petitioner's indefinite detention is unlawful would aid Petitioner in this regard, by providing yet further evidence that his case is an exceptional one, worthy of another nation's attention.

C.     **The Court Should Schedule A Hearing To Address The Circumstances Under Which Petitioner Shall Be Released**

Although Petitioner believes he is entitled, as a matter of law, to an order granting the writ of habeas corpus and declaring his detention unlawful, he nevertheless recognizes that there may be some difficulties associated with locating a country suitable for his resettlement, and therefore requests that the Court schedule a hearing to address any such issues.

To be clear, both parties in this litigation claim to share the same goal:  to secure the prompt and safe release of Petitioner.  The question now before the Court is what role, if any, it should play in assisting in the parties' efforts to achieve this goal.  Petitioner respectfully submits that the Respondents should not be permitted to continue operating under a veil of secrecy, and that the Court should schedule a hearing to address – through mediation or otherwise – any means by which the Court or Petitioner could facilitate Respondents' purported efforts to locate a suitable home for Petitioner.  See 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require").  Fed. R. Civ. P. 57 ("The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar."); Local Civil Rule 7(f).

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court enter an Order 1) granting Petitioner's request for writ of habeas corpus, 2) declaring Petitioner's continued detention at Guantánamo unlawful and 3) scheduling a hearing on September 6, 2006, or as soon as possible thereafter, to address the circumstances under which Petitioner shall be released.

Dated: September 5, 2006

Respectfully submitted,

Counsel for Petitioner Zakirjan:

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____/s/_____
    Jonathan I. Blackman (NY3846)
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Of Counsel:
  Christopher P. Moore (NY4936)
  John Van Sickle (NY6487)
  Lia Monahon (NY6366)
  Patrick A. Sheldon (NY1598)

CENTER FOR CONSTITUTIONAL RIGHTS
Barbara Olshansky (NY0057)
Gitanjali S. Gutierrez (NY1234)
666 Broadway, 7th Floor
New York, New York 100012
Tel: (212) 614-6437
Fax: (212) 614-6499